1    MELODY A. KRAMER, SBN 169984
     KRAMER LAW OFFICE, INC.
2    5755 Oberlin Drive, Suite 301
3    San Diego, CA 92121
     Telephone (855) 835-5520
4    mak@kramerlawip.com

5
     PATRICIA A. SHACKELFORD, SBN 218647
6    Law Office of Patricia A. Shackelford
7    1991 Village Park Way, Suite #100
     Encinitas, CA 92024
8    Telephone (760) 942-2568
9    patricia.shackelford@pshackelfordlaw.com

10   Attorneys for Defendant
11   SORENSEN RESEARCH AND DEVELOPMENT TRUST

12
                    UNITED STATES DISTRICT COURT
13          FOR THE CENTRAL DISTRICT OF CALIFORNIA
14

15   HOMELAND HOUSEWARES, LLC.,     )  Case No. 11cv03720-GW JEMx
16   a California company,          )
                                    )
17                 Plaintiff/Appellee,  )  **DEFENDANT SORENSEN**
                                    )  **RESEARCH AND DEVELOPMENT**
18                                  )  **TRUST'S NOTICE OF APPEAL**
19   v.                             )
                                    )
20   SORENSEN RESEARCH AND          )
21   DEVELOPMENT TRUST,             )
                                    )
22                 Defendant/Appellant.  )
     _____)
23   and related counterclaim       )
24                                  )
                                    )
25                                  )
                                    )
26   _____)

27

28   Defendant Sorensen Research and                    11cv03720-GW JEMx
     Development Trust's Notice of Appeal        -1-

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:**

Notice is hereby given that Defendant/Appellant Sorensen Research and Development Trust in the above-named case hereby appeals to the United States Court of Appeals for the Federal Circuit from the following Orders/Rulings:

1)      Ruling on Markman Hearing (Docket #113, attached hereto as Exhibit "1") entered in this action on July 5, 2012;

2)      Order Granting Plaintiff Homeland Housewares, LLC's Motion For Summary Judgment of Non-Infringement U.S. Patent No. 6,599,460 and Denying Defendant's Motion for Reconsideration of Markman Ruling Re: Claim Construction of "Threshold Rate" (Docket #143, attached hereto as Exhibit "2") entered in this action on August 30, 2012, including the detailed final ruling underlying this Court Order (Docket #140, attached hereto as Exhibit "3") entered in this action on August 23, 2013; and

3)      Court Order Re: Defendants' Motion To Revise The Court's Order For Summary Judgment Of Non-Infringement Because It Was Procured Through Fraud (Docket #197, attached hereto as Exhibit "4") entered in this action on March 25, 2013.

DATED this April 19, 2013.

                              SORENSEN RESEARCH AND
                              DEVELOPMENT TRUST, Defendant

                              /s/ Patricia Shackelford

                              Patricia A. Shackelford
                              Melody A. Kramer
                              Attorneys for Defendant/Appellant

# EXHIBIT 1
EXHIBIT "1"

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3720-GW(JEMx) | Date | July 5, 2012 |
|----------|---------------------|------|--------------|

| Title | *Homeland Housewares, LLC v. Sorensen Research and Development Trust* |
|-------|----------------------------------------------------------------------|

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|-----------------|--------------|--|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|-----------------------------------|-----------------------------------|
| None Present | None Present |

**PROCEEDINGS:     (IN CHAMBERS): RULING ON MARKMAN HEARING**

Attached hereto is the Court's ruling on the Markman Hearing. The Court would adopt Homeland's proposed construction of the terms "threshold rate." The Court would adopt Sorensen's proposed construction of the terms "flow chambers," "thin wall," "exit/entrance positions," and "inscribed spheres."

A Status Conference is set for **July 19, 2012 at 8:30 a.m.** Counsel may appear telephonically provided that notice is given to the clerk by July 17, 2012.

EXHIBIT " 1 "

|  | : |  |
|--|---|--|
| | Initials of Preparer | JG |

_**Homeland Housewares v. Sorensen Research and Dev. Trust**_, Case No. CV-11-3720
Ruling on Markman Hearing

## I. Background

Plaintiff Homeland Housewares LLC ("Plaintiff" or "Homeland") filed suit against Sorensen Research and Development Trust ("Defendant" or "Sorensen") on April 29, 2011, seeking a declaratory judgment as to the invalidity and unenforceability of a patent held by Sorensen, U.S. Patent No. 6,599,460 (the "'460 Patent"), and a declaratory judgment of non-infringement of that patent. _See_ Compl., Docket No. 1. Homeland additionally seeks attorney's fees. Compl. ¶ 16. Sorensen, in its Answer, asserted a counterclaim of infringement of the '460 Patent. _See_ Docket No. 14.

Sorensen sent a cease and desist letter to Homeland on March 18, 2011, accusing Homeland of infringing the '460 Patent on account of Homeland's manufacture and sale of certain blenders (the "Accused Products") that, according to Sorensen, infringed upon a plastic injection molding method claimed by its '460 Patent. Compl. ¶ 9. Homeland's counsel promptly responded to the cease and desist letter denying any infringement and differentiating Homeland's product from the '460 Patent. Compl. ¶¶ 11-13. The '460 Patent claims a method of injection molding that prevents "gaseous voids" from developing in "thin wall" plastic products as they are molded; Homeland argues that the walls of its product are thick enough that it "has none of the characteristic problems of gaseous voids described in the '460 Patent." Compl. ¶ 15.

The '460 Patent teaches that gaseous voids can be avoided using the following process. Fluid plastic is injected into a mold cavity through what is known as a "gate". The fluid plastic travels through "flow chambers" and then spreads to "thin wall" sections between the flow chambers. The thickness of the thin wall sections increases in the direction of the flow. Importantly, the increase in thickness of the "thin wall" sections cannot surpass a "threshold rate" above which unwanted, problematic "gaseous voids" will form in at the thin wall cavity section.

The parties are now before the Court for a claim construction hearing.

## II. Legal Standard

The scope of a patent is delineated by its claims, namely the numbered paragraphs at the end of the patent's specification. _Markman v. Westview Instruments, Inc._, 517 U.S. 371, 373 (1996). Patent infringement analysis involves two steps: (1) claim construction; and (2) application of the properly construed claim to the accused product. _See TechSearch L.L.C. v. Intel Corp._, 286 F.3d 1360, 1369 (Fed. Cir. 2002). Stated otherwise: first, the scope of the claims are determined as a matter of law, and second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device. _See Teleflex, Inc. v. Ficosa North America Corp._, 299 F.3d 1313, 1323 (Fed. Cir. 2002).

Claim construction is an issue of law for the Court to decide. _See Markman v. Westview Instruments, Inc._, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc) (_Markman I_), _aff'd_, 517 U.S. 370 (1996). It is a procedural step intended to clarify the legal meaning of claim language in the

EXHIBIT "1"

context of a particular case so that a jury can make a simple factual determination as to infringement or invalidity. *See Markman*, 517 U.S. at 370, 384-85. Indeed, before a jury can determine if patents are invalid or if they have been infringed, the Court must determine the meaning and scope of the patent claims at suit through claim construction. *See Markman I*, 52 F.3d at 976; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-24 (Fed. Cir. 2005) (setting forth in detail the process and rules governing claims construction), *cert. denied sub. nom, AWH Corp v. Phillips*, 546 U.S. 1170 (2006). Only after claim construction can the jury compare the allegedly infringing device against the claims. *See Markman I*, 52 F.3d at 976. The Court's hearing on the parties' proposed claims construction is called a "Markman hearing."

In conducting a Markman hearing, the words of an asserted claim are looked to first and are to be given their ordinary meaning, unless a special meaning is clearly defined in the specification. *See Phillips*, 415 F.3d at 1312; *Markman I*, 52 F.3d at 979-80; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The meaning is that which would be understood by a person having ordinary skill in the art. *See Markman I*, 52 F.3d at 979. Some cases have implied that if the claim terms are clear and unambiguous as to their ordinary meaning one need look no farther; however, "the specification is always highly relevant to the claim construction analysis." *Vitronics*, 90 F.3d at 1582. "Claims must be read in light of the specification of which they are a part." *See Markman I*, 52 F.3d at 979. However, a limitation should not be read into the claim from the preferred embodiment. *See, e.g. Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). The Court may also consult the public record of the patent's prosecution history in construing the scope and meaning of the claim terms. *See Markman I*, 52 F.3d at 979-80. But, as with the specification, the prosecution history should not be used to enlarge, diminish, or vary the claim limitations. *See id.* In addition to the plain words of the patent claims, the specification and the prosecution history, the Court is authorized to consult extrinsic evidence, "including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F. 3d at 1317. That said, "[a]fter Phillips, there is no question that the intrinsic evidence is the most important source for claim construction." Edward D. Manzo, <u>Patent Claim Construction in the Federal Circuit</u> § 1:32 (2011 ed.).

## III. <u>Analysis</u>

### A. Identification of Disputed Terms

The parties have submitted a Joint Claim Construction Report ("JR")[1], opening briefs and respective replies in connection with the upcoming Markman hearing. Homeland requests that

---

[1]It appears as though Sorensen has not fully participated in the preparation of the JR as instructed by the Court in the April 9, 2012 minute order, where the parties were ordered to prepare a report with "1) identified terms, 2) each side's proposed definitions, 3) listed explanations in terms of importance, and 4) explanation why terms need to be interpreted and what impact on either the case or aspects of the construction." Docket No. 102. Sorensen's sections merely refer to the relevant sections of its opening and reply briefing. Sorensen did prepare a summary chart, and but it merely recites each side's proposed construction and cursorily summarizes Sorensen's arguments; Sorensen also does not dispute Homeland's accusation that "[Homeland] was unable to participate in the preparation of this summary chart as [Sorensen] did not provide it until after 8 pm the night before this brief was due." Docket No. 105 at 4.

EXHIBIT "1"

the Court construe seven terms in Claim 1 of the '460 Patent: 1) "thin wall"; 2) "thin wall cavity section"; 3) "flow chambers"; 4) "exit positions"; 5) "entrance positions"; 6) "inscribed-sphere dimensions; and 7) "threshold rate". Sorensen contends that only "threshold rate" requires judicial construction; the Court will consider the parties' arguments as to all seven terms.

        Claim 1 of the '460 patent states (with disputed terms bolded):

                1. A method of injection-molding a product that includes at least one **thin wall**, comprising the steps of:

                    (a) combining a plurality of mold parts to define a mold cavity for forming the product and at least one gate from which fluid plastic material may be injected into the mold cavity, wherein the mold cavity includes at least one **thin-wall cavity section** and at least two opposed **flow chambers** that adjoin opposite edges of the thin-wall cavity section for directing injected fluid plastic material from **exit positions** of the said at least two opposed flow chambers into corresponding **entrance positions** of the at least one thin-wall cavity section to thereby form at least one thin-wall portion of the product, wherein the at least one thin-wall cavity section includes at least one zone that is located between said at least two opposed flow chambers, and wherein within the at least one zone **inscribed-sphere dimensions** at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber; and

                    (b) injecting fluid plastic material from the gate into the mold cavity to form the product;

                wherein step (a) comprises combining mold parts that define a said mold cavity in which within said at least one zone of the at least one thin-wall cavity section the thickness of the at least one thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, with said increase being at less than a **threshold rate** to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone.

JR, Docket No. 105, at 2.


## B. Rule of definiteness

        Before the Court proceeds to evaluate the parties' competing interpretations of the disputed terms, the Court would address an issue common to many of their arguments: the appropriate standard and application of the law of definiteness. Homeland argues in briefing that many of the terms in the '460 Patent "cannot be construed because they are indefinite," since the terms do not have a precise mathematical definition but instead are relative, such as "thin" and "threshold rate." *See* Docket No. 63 at 3, 6, 14. Sorensen, of course, denies that the terms are indefinite, and also contests Homeland's argument on the grounds that Homeland has applied the

EXHIBIT "1"

wrong legal standard for determining definiteness. As a general matter, the Court would agree to some extent with Sorensen.

In order for a patent to properly "claim" an invention, the claims must be sufficiently definite. *See* 35 U.S.C. § 112 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention"). The burden is on party asserting invalidity to prove indefiniteness. 35 U.S.C. § 282 ("A patent shall be presumed valid"). The evidentiary burden on such a party is to show indefiniteness by means of clear and convincing evidence. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345 (Fed. Cir. 2007). The standard for determining whether a claim is impermissibly indefinite on account of the use of relative terms is set forth in a recent Federal Circuit case: "Claims using relative terms such as 'near' or 'adapted to' are insolubly ambiguous only if they provide no guidance to those skilled in the art as to the scope of that requirement." *Power-One, Inc. v. Artesyn Tech., Inc.* 599 F.3d 1343, 1348 (Fed. Cir. 2010).

Homeland argues that the "primary purpose" of the definiteness requirement is to "provide clear warning to others as to what constitutes infringement of the patent." Docket No. 63 at 4. However, a review of recent Federal Circuit caselaw discloses that in fact, "the test for indefiniteness does not turn on whether a potential infringer could determine infringement, but instead on whether the claim delineates to a [person of ordinary skill in the art] the bounds of the invention." Edward D. Manzo, <u>Patent Claim Construction in the Federal Circuit</u> § 4:2 (2011 ed.); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1371 (Fed. Cir. 2008) (disapproving any test where "claim definiteness requires that a potential infringer be able to determine if a process infringes"); *see also Invitrogen Corp v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("'The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention'") (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005)).

Homeland argues that if a claim's key term is "completely relative, having no precise meaning, then the claim would be indefinite ... it must have a definite meaning," and also assails terms as indefinite because their mathematical definition as applied to a particular embodiment of the patent "can only be determined empirically on a case-by-case basis." Docket No. 63 at 6-7, 14. Homeland's argument misses the mark. Time after time, courts have held patent terms to be sufficiently definite even if they do not provide mathematical specificity, but only are defined in relation to other parts of the patented invention or its environs. *See, e.g., Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45 (1923) ("Expressions quite as indefinite as 'high' and 'substantial,' in describing an invention or discovery, in patent specifications and claims, have been recognized by this court as sufficient"); *Invitrogen Corp. v. Biocrest Mfg., L.P.* 424 F.3d 1374, 1383 (Fed. Cir. 2005) (holding that "improved" is a sufficiently definite term); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007) (holding that "near" is a sufficiently definite term); *see also Andrew Corp. v. Gabriel Elec., Inc.*, F.2d 819, 821 (Fed. Cir. 1988) (holding that "close to," "substantially equal" and "closely approximate" are sufficiently definite terms).

Thus, the Court rejects Homeland's contention that relative terms, simply by virtue of being relative, are insufficiently definite to render the patent valid.

-4-

EXHIBIT "1"

## C. The Parties' proposed constructions of the disputed terms

*1. "Thin wall" and "thin wall cavity section"*

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| **thin wall** | a wall portion having a thickness of less than 1mm | a wall portion that is formed within a thin-wall cavity section of the mold cavity |
| **thin wall cavity section** | a section of the mold cavity that has a thickness of 1mm or less | a section of the mold cavity that includes one or more zones and adjoins to at least two opposed flow chambers |

Homeland and Sorensen appear to be speaking over each other, to a certain extent, as to whether it is necessary to construe "thin wall" separately from and in addition to "thin wall cavity section"; the key point as to that dispute is that neither party appears to argue that the term "thin wall" should be constructed differently if standing alone than in the context of the term "thin wall cavity section."[2] Thus, the Court would consider the construction of these two terms at once.

Sorensen contends that neither term requires any construction whatsoever, because Homeland "improperly seeks to impose a precise mathematical range of 1mm onto the term ["thin wall"], contrary to the context of the patent specification itself, deposition testimony of a co-inventor of the subject patent, as well as Homeland's own cited articles." JR, Docket No. 105 at 10. Sorensen additionally argues that the stand-alone term "thin wall" requires no construction because it is found only in the preamble to Claim 1, not in the body of the Claim. In both contexts (standing alone and embedded in "thin wall cavity section"), then, the parties disagree as to whether "thin wall" should be defined as a precise mathematical range of less than 1mm, as proposed by Homeland, or as a "term of degree that is inherently contextual" as proposed by Sorensen. JR, Docket No. 105, at 13.

The construction of the term "thin wall cavity section" is of great moment in this case; if the Court finds that Homeland has proposed the proper construction, Sorensen's argument that Homeland is infringing its patents will be largely eviscerated:

> It is Homeland's contention that the accused products are not "thin wall" products because they are approximately 3 to 4 times thicker than the standard definition of the thickest "thin wall" [*i.e.* 1 mm,

---

[2]According to Homeland, "Sorensen attempts to distinguish 'thin wall' as it appears in the preamble from its usage in the body of the claim (e.g. 'Thin wall cavity section')." JR, Docket No. 105 at 5. However, nowhere in the briefing or the JR can the Court find any arguments put forth by Sorensen that "thin wall" as used in the preamble (standing alone) should have a different definition than when the term is embedded in the phrase "thin wall cavity section" - in both contexts Sorensen resists Homeland's suggested construction of a mathematical range.

EXHIBIT "1"

according to Homeland]. Therefore, Homeland's products would not infringe the '460 patent for the simple reason that they are not "thin wall" products that suffer "gaseous voids," and thus there would be no reason to use the claimed method to prevent a problem that does not exist in the first place.

JR, Docket No. 105 at 9.

Homeland turns to extrinsic evidence, and points to articles by persons of ordinary skill in the art of plastic injection molding stating that a "thin wall" is generally defined as a wall of 1mm or less; Homeland presents four such articles. *See* Docket No. 63 at 7, 8 n.2; Trojan Decl., Docket No. 105, Exhs. 7, 8, 9, 10. Homeland also notes that the preferred embodiment of the patent defines the thin wall as 0.15mm, and also notes that its suggested interpretation, *i.e.* less than 1mm, is not inconsistent with Sorensen's proposed interpretation of the term "thin wall," provided the flow chambers are thicker than the less-than-1mm-thick thin wall. *See* Docket No. 64 at 3-4.

Sorensen argues that all of the intrinsic evidence available, such as the specification, make clear that the term "thin wall" is relative, and should not be interpreted to have a mathematically precise definition such as the one proposed by Homeland. *See* Docket No. 57 at 5. Sorensen presents its own interpretation: "A person of ordinary skill in the art of injection molding reading the patent would understand that the term 'thin wall' refers to the relative nature between a thin-wall cavity section and the relatively thicker walled cavity sections of the flow chambers." Docket No. 69 at 5. Sorensen then argues that at least two of the four articles presented by Homeland "explicitly acknowledge that thin wall is a relative term." Docket No. 69 at 3. As to the article by Guojun Xu, both parties are, in part, correct: "Thin wall injection molding ... is conventionally defined as molding parts that have a nominal wall thickness of 1 mm or less .... Thin wall is relative, however. It can also be named 'thin wall' as the flow length/thickness is above 100 or 150." Trojan Decl., Docket No. 105, Exh. 7 at 1. As to the article by Kurt Weiss, again, both parties can find some support for their interpretation of the term: "These days, 'thin wall' is generally defined by portable electronics parts having a wall thickness less than 1mm. For large automotive parts, 'thin' may mean 2mm." Trojan Decl., Docket No. 105, Exh. 8 at 1. Sorensen also cites various patents (unrelated to the suit) claiming thin-wall molding techniques that contain only relative definitions of "thin wall." Docket No. 69 at 4.[3]

In sum, whether a person of ordinary skill in the art of plastic injection molding would understand the bounds of the '460 Patent if the term "thin wall" has only a relative definition presents a close question. However, Sorensen has presented sufficient evidence to show that in

---

[3]Sorensen also presents deposition testimony of an inventor of the '460 Patent, Jens Ole Sorensen; Homeland, however, has presented caselaw indicating that the "inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008). While not all of the quoted testimony can fairly be said to touch upon Mr. Sorensen's "subjective intent," the remaining quoted sections presented by Sorensen is not dispositive or particularly helpful to deciding the issue in any event. *See, e.g.*, Docket No. 57 at 6 ("Q: Is there anywhere in the '460 Patent that defines thin-wall cavity section in relation to the thick-wall section? A: I think it's inherent in the whole patent.").

EXHIBIT "1"

some contexts, a term can be defined relatively and still be sufficiently definite that the patent is valid.[4]  In contrast, Homeland's argument fails because it assumes that any relative definition must by nature fail for indefiniteness.  Thus, the Court would adopt Sorensen's proposed construction of "thin wall," and that definition should also be used to construe "thin walled cavity section".[5]

### 2. *"Flow chambers"*

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| **flow chambers** | "Opposed flow chambers… for directing injected fluid plastic material" are channels, located on opposite sides of the thin wall cavity section, which are connected to the gate for "directing" injected fluid plastic material from the gate into the thin-wall cavity section. The flow chambers "direct" the flow of the fluid plastic material in that the plastic material must flow through the channels before spreading to the thin-wall cavity section. | sections of a mold cavity that adjoin to opposite edges of a thin-wall cavity section for at least directing injected fluid plastic material from exit positions into corresponding entrance positions located in the thin-wall cavity section, wherein in a zone of the thin-wall cavity section the inscribed-sphere dimensions of the exit positions are larger than the inscribed sphere dimensions of the corresponding entrance positions |

The construction of "flow chambers" is an important issue because Homeland contends that the Accused Products do not, in fact, have flow chambers, if that term is properly construed. Homeland says that flow chambers direct the flow of the plastic during the injection process, and as such, they must be attached to a "gate," which is the point where the plastic is injected into the mold.  Homeland avers that what Sorensen deems to be "flow chambers" in the Accused

---

[4]An interpretation could be adopted between the positions of the parties - *i.e.*, a definition that is both relative, in that it defines a wall as "thin" only in relation to the thickness of the other elements of the product, and also mathematically precise, such as limiting a "thin wall" for purposes of the '460 Patent to those where the ratio of cavity wall thickness to flow chamber is less than a certain number.  This is different from Homeland's suggestion because it does not consider the thinness of the "thin wall" in a vacuum.

[5]Homeland states in the Joint Report: "there is no material distinction between 'thin wall' and 'thin-wall cavity section' as discussed below, since if 'thin wall' is defined to be 1 mm or less, then 'thin-wall cavity section' means a section of the cavity that is 1 mm or less in thinness."  JR, Docket No. 105 at 7.

EXHIBIT "1"

Products, are in fact merely "ribs" that assist in the already-made Accused Product's operation in that they "create turbulence in the blending process .... Their function relates to how the device is used, not how it is made." JR, Docket No. 105 at 16.

Sorensen rejoins that a flow chamber does not need to be attached to a gate; a flow chamber merely has to "at least" direct the flow of the plastic from an exit position in one thin walled cavity section to the entrance position of another, where the exit position is larger than the entrance. Sorensen points out that the patent specification discusses an alternative embodiment where a flow chamber is not attached to a gate; therefore, intrinsic evidence suggests that the proper interpretation of a flow chamber would not include a requirement that it is attached to a gate. *See* Docket No. 69 at 9.

Homeland argues that the construction of "flow chambers" is also relevant to the validity of the patent in the following manner. If a flow chamber is not attached to a gate, then Homeland argues the flow chamber cannot work, and "the claim is invalid for lack of enablement under 35 U.S.C. § 112." JR, Docket No. 105 at 17. The reason Homeland says the flow chambers cannot function unless attached to a gate is that then "the fluid plastic would flow directly into the 'thin-wall cavity section' instead flowing [*sic*] though the 'flow chambers' thus defeating the intended purpose of the invention." Docket No. 64 at 9. Since a proper construction preserves the validity of the patent (*see Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1369 (Fed. Cir. 2002)), Homeland argues that "flow chamber" must be construed so as to be attached to a gate.

Sorensen emphasizes that it is Homeland's burden to show a lack of enablement by clear and convincing evidence and they have failed to present anything other than attorney arguments[6] as to enablement. Docket No. 69 at 9; *see Morton Intern., Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1469 (Fed. Cir. 1993). Sorensen asserts that the plain language of the specification indicates that a flow chamber is not always attached to a gate, and additionally points to the testimony of co-inventor Jens Ole Sorensen purportedly indicating that a flow chamber can function without a gate. *See* Docket No. 69 at 10. However, such testimony is far from clear as to the issue of whether a flow chamber can exist without being attached to a gate:

> Q: So in the case of the Magic Bullet, you can at least agree that the plastic fills the space between the ribs both from the gate between the ribs and also from flowing from one rib to the other, correct?
>
> A: Yes, but not everywhere between the flow channels - flow chambers do we get any plastic from the gate. At the bottom of the flow chambers, we get between - at the bottom between the flow channels we get some flow from the gate. Up higher we only get flow from the flow chambers.

---

[6]Homeland has also argued that the preferred embodiment of the '460 Patent states that the flow chamber must be attached to a gate. *See* Docket No. 63 at 9. However, the preferred embodiment cannot be used to limit the claim, thus such argument carries little force. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 ("it is improper to read limitations from a preferred embodiment described in the specification-even if it is the only embodiment-into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited").

EXHIBIT "1"

Docket No. 69 at 11.

Given that the patent specification expressly contemplates flow chambers unconnected to a gate, and that a patent specification "acts as a dictionary" for the terms of a patent, the Court would adopt Sorensen's interpretation of the term "flow chambers." *See Victronics Corp.*, 90 F.3d at 1582. While this finding would, it seems, preclude Homeland from arguing that the Accused Products do not contain flow chambers based only on the "ribs" being unattached to a gate, it would of course not prevent Homeland from asserting its enablement arguments at a different procedural juncture, so as to argue that the patent is invalid based on the adopted construction.[7]

3. *"Exit positions" and "entrance positions"*

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| at least two opposed flow chambers that adjoin opposite edges of the thin-wall cavity section for directing injected fluid plastic material from **exit positions** of the said at least two opposed flow chambers into corresponding **entrance positions** of the at least one thin-wall cavity section | **Exit positions** are discrete points in the flow chambers where the fluid plastic material exits the flow chambers and enters the thin-wall cavity section.<br><br>**Entrance positions** are discrete points in the thin-wall cavity section where the fluid plastic material enters from the flow chambers. | An **exit position** is a flow path for injected plastic that is situated in a flow chamber and leading to a corresponding entrance position that is situated in another section of the mold cavity.<br><br>An **entrance position** is a flow path for injected plastic that is situated in a thin-wall cavity section and leading from a corresponding exit position that is situated in different section of the mold cavity |

The main point of contention between the parties is whether an "exit position" and/or "entrance position" can consist of a "flow path," as advocated by Sorensen, or whether an exit/entrance position must be a discrete point within the flow chamber, *i.e.* the specific point at which the fluid plastic exits the flow chamber or enters the thin-walled cavity section, as

---

[7]At the Markman hearing, Homeland suggested that the Court adopt its construction of "flow chambers" excising the portion of it requiring the flow chamber to be attached to a gate, because Homeland's definition would be easier for a jury to comprehend. The Court would decline to do so, because any eventual jury will need to understand all of the terms and phrasing of the patent's claims in any event, and Sorensen's construction merely parrots the claim language.

**EXHIBIT "1"**

proposed by Homeland.

    Again, the construction of these terms will have a significant impact on the case as a whole. Homeland contends that the ribs in the Accused Products, which Sorensen argues are flow chambers, have no openings that could constitute "discrete points of exit" for the fluid plastic, and thus, do not infringe the '460 Patent. *See* Docket No. 105 at 20. Sorensen thus construes "exit position" to be simply a "path" leading to another section of the mold cavity, which definition could encompass the entire flow chamber. Similarly, Homeland asserts that an entrance position must be a discrete point in the thin walled cavity section, whereas Sorensen argues that the thin-walled cavity section as a whole can be an entrance position.

    Homeland seems to be correct in noting that Sorensen's construction could essentially equate exit and entrance positions with, respectively, flow chambers and thin-walled cavity sections, and thus would improperly read out some limitations in the claim. *See Callicrate v. Wadsworth Mfg, Inc.*, 427 F.3d 1361, 1369 (Fed. Cir. 2005). However, the patent's diagrams indicate that the entrance and exit positions are not specific points or holes, as Homeland appears to suggest, but instead merely sections along the thin walled cavity section (in the case of an entrance position) or flow chamber (in the case of an exit position). Moreover, Sorensen made clear at the Markman hearing that the fluid plastic exits the flow chambers and enters the thin walled cavity section all along the sides of these sections of the mold cavity, not at one specific point in each.

    An additional argument raised by Homeland is that the grammar of the claim supports their interpretation of the terms exit/entrance positions; they argue:

> The claim expressly recites 'exit positions' and 'entrance positions' in the plural, so there must be more than one exit and more than one entrance position .... Under Sorensen's construction there can be only one long exit position and one long entrance position, which clearly contradict the language of the claim.

Docket No. 64 at 5. The Court would not find this argument particularly helpful, as the language of Claim 1 belies Homeland's simplistic grammatical conclusions; it speaks of "directing injected fluid plastic material from **exit positions** of the said at least two opposed flow chambers into corresponding **entrance positions** of the at least one thin-wall cavity section." Homeland's argument fails to lend much support to their argument because the plural nature of the term is likely due to the fact that it corresponds to the "at least two" opposed flow chambers, which would necessarily lead to plural exit positions out of them and plural entrance positions into the thin walled chambers.

    Sorensen raises the argument that "designing 'discrete and distinct points' into a mold cavity requires that there be a steel mold part that surrounds the 'discrete and distinct points' prohibiting this portion of the mold cavity from being filled with plastic." Docket No. 69 at 14. This argument appears to mischaracterize Homeland's proposed construction; the Court does not understand Homeland to suggest that an entrance/exit point is an additional aperture within the thin walled cavity section or the flow chamber, but instead, a specific point in each where the fluid plastic exits or enters, as the case may be.

    In sum, given the overall workings of the patent and the diagrams thereof, the Court would adopt Sorensen's construction of "entrance/exit positions", since a person of ordinary skill

**EXHIBIT "1"**

in the art would not understand these terms to speak of discrete openings, but instead the lengths of the flow chambers and thin walled cavity sections through which the fluid plastic flows.

### 4. *"Inscribed sphere dimensions"*

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| ...and wherein within the at least one zone **inscribed-sphere dimensions at each entrance position** are smaller than **inscribed-sphere dimensions at the corresponding exit position** of the adjoining flow chamber; | The spherical diameter of each discrete point where the fluid plastic material enters the thin-wall cavity section is smaller than the spherical diameter of each corresponding discrete point where the fluid plastic exits the flow chamber. | An **inscribed-sphere dimension at an entrance position** is the diameter of the largest sphere that will fit into the mold cavity at the entrance position. An **inscribed-sphere dimension at an exit position** is the diameter of the largest sphere that will fit into the mold cavity at the entrance position. |

The parties' disagreement over these terms is largely just a restatement of the argument over the proper definitions of entrance/exit positions. Homeland argues:

> [T]he diameter of the exit opening is not synonymous with the width of the flow chambers (which is what Defendant's proposed construction would mean). Nor is the diameter of the entrance opening synonymous with the width of the thin wall cavity section. Sorensen has argued that the respective "inscribed-sphere dimensions" are calculated by measuring the flow chambers and the thin wall sections themselves. In other words, according to Sorensen, the spherical diameter at the exit position is just the thickness of the flow chamber, and the spherical diameter at the entrance position is just the thickness of the thin wall section. By this logic, the limitation – "inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber"—means only that the thin wall section is smaller (i.e. thinner) than the adjoining flow chamber .... Under Sorensen's construction the claim is incredibly broad because it would cover all products having a thin wall section that is smaller (i.e. thinner) than an adjoining flow chamber.

JR, Docket No. 105 at 25. This argument has some appeal; again, Sorensen's construction seems to read out the limitations of the "exit/entrance position" terms.

However, Sorensen directs the Court to the diagrams in the specification, where it does appear that the inscribed spheres are the largest spheres that can be drawn in the thin walled

-11-

cavity chambers and flow chambers. Docket No. 57 at 19. Sorensen also presents the testimony of Jens Ole Sorensen, which is (again) not entirely clear, but appears to support its construction since he tries to put the "inscribed sphere" term into layman's terms as follows: "[Y]ou can think of putting a small balloon into that position and blowing it up until it starts its changing shape, because the walls will change the shape of it." Docket No. 57 at 19. Docket No. 57 at 19.

      Homeland appears to argue in briefing that the term also fails for indefiniteness, but presents only cursory argument on the matter (*see* Docket No. 63 at 10) and does not provide any case citations, so the Court would not find that it have met its evidentiary burden; Homeland's indefiniteness argument really boils down to a reiteration of their proposed construction of exit/entrance positions:

> [S]ince the 'exit positions' and 'entrance positions' cannot be precisely determined, it is impossible to determine whether the 'inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber.' Therefore the claim is indefinite[.]

Docket No. 63 at 11 (quoting Claim 1 of the '460 Patent). While Sorensen seems plainly correct in noting that "an inscribed sphere is a readily understood mathematical concept," (Docket No. 69 at 17), the point remains that *where* these spheres are to be inscribed remains a thorny issue. Sorensen repeats again and again that it is perfectly simple to just inscribe the spheres "at a pair of corresponding exit and entrance positions" (*id.*), but as Homeland notes, that would render identical a) the maximum width of the thin walled cavity chambers and the inscribed sphere at the entrance position thereof, and b) the maximum width of the flow chamber and the inscribed sphere at the exit position thereof.

      Since the patent diagrams and the text of the claim makes clear that what is key about the inscribed spheres is that the sphere inscribed at the entrance point to the thin wall cavity section is smaller than that inscribed at the exit position of flow chamber, and since the Court has adopted Sorensen's construction of entrance and exit positions, the Court would similarly adopt Sorensen's construction of "inscribed spheres."

     *5. "Threshold rate"*

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| **threshold rate** | the rate of increase in the thickness of the thin wall section as empirically determined by conducting test strips at the time the mold is made in order to prevent gaseous voids. | the increase in the thickness of the thin-wall cavity section within a zone below which void-based irregularity formation between the adjoining flow chambers is prevented |

      The construction of the term "threshold rate" is another critical issue in this case. During the patent prosecution process, the '460 Patent was initially rejected as being obvious in light of

-12-

EXHIBIT "1"

two other, similar patents, the "Allen" and "Smith" Patents. *See* JR, Docket No. 105 at 31. The Allen patent taught that "thin walled" sections are necessary to prevent gaseous voids, and the Smith patent taught that the "thin walled" sections must increase in thickness in the direction of the flow of plastic. *See id.* However, what is purportedly new about the '460 Patent is that the increase in the thickness of the thin walls, which must increase in the direction of the flow of fluid plastic, must be at a certain rate, the "threshold rate," if gaseous voids are to be prevented. Indeed, Sorensen distinguished its application from the Allen and Smith patents by noting that "There is nothing in the applied references that suggest that void-based irregularities can be prevented ... by limiting the rate of the thin-wall-cavity-section-thickness increase in said general direction to less than a threshold rate." Trojan Decl., Exh 2; *see* Docket No. 63 at 12. In other words, in order for gaseous voids to be prevented in plastic injection molding technique, the Allen patent's key teaching was that the walls must be thin, the Smith patent's key teaching was that the thin sections should increase in thickness in the direction of the plastic, and the '460 Patent's key teaching is that such increase must not occur at more than a threshold rate.

Sorensen argues that the term "threshold rate" needs no more specific construction than the term's everyday meaning, and cites the dictionary definition of threshold as well as testimony where Jens Ole Sorensen states, "Threshold is a common English word and it is not defined, it is not used in any special sense in this patent." Docket No. 57 at 22. It explains that once the threshold rate "exceeds a certain mathematical value, which value depends on variables including mold cavity geometries and the type and amount of plastic used, void-based irregularities can form in that thin-wall cavity section." Docket No. 69 at 21.

Unlike in the dispute regarding the term "thin wall," Homeland here does not attempt to construct a relative term to have one precise, across the board mathematical meaning. Instead, Homeland argues that the "threshold rate" should be constructed as the rate "as determined by conducting test strips at the time the mold is made" such that gaseous voids do not form. *See* Docket No. 63 at 13. Homeland persuasively notes that the patent specification itself dictates that the threshold rate can only be determined by conducting such empirical tests. *Id.* Indeed, Sorensen also notes that the specification envisions that the threshold rate for a given product would be determined by conducting empirical tests as to that specific product. Docket No. 57 at 22.

Given the language of the specification, and Sorensen's admission that the "value" of the "threshold rate" for a given item would vary based on "mold cavity geometries and the type and amount of plastic used," it is hard to see how they can plausibly argue that the "threshold rate" of the Accused Products should not be construed so as to involve an empirical test to see *what that rate is*, in the case of the Accused Products. The Court would thus adopt Homeland's proposed construction.

Homeland neatly sums up the difficulty in construing this term when it argues: "The logic of the claim is circular: gaseous voids are prevented by increasing the thickness of the thin wall at less than a threshold rate, but the threshold rate itself can only be determined by repeated testing until gaseous voids are prevented." Docket No. 63 at 13. This is, in essence, a definiteness argument, since a person of ordinary skill in the art would not know what the threshold rate is until that person conducted testing on the particular product to see at what rate of increase gaseous voids are prevented; once that testing is complete, however, the person need

-13-

not have referred to a "threshold rate" at all, but has instead, in some senses, discovered for herself that rate.  If the threshold rate is just the rate of increase at which gaseous voids do not occur, then it is difficult to see how the '460 Patent is different from that of Smith; while Smith's patent did not speak of a threshold rate, any product lacking gaseous voids would (according to Sorensen's definition) have been made at below such a rate.[8]

## IV.  Conclusion

The Court would adopt Homeland's proposed construction of the terms "threshold rate". The Court would adopt Sorensen's proposed construction of the terms "flow chambers", "thin wall", "exit/entrance positions", and "inscribed spheres".

---

[8]The Court would note that these worries of circularity do not appear to be cured by Homeland's construction, as discussed above.

-14-

EXHIBIT "1"

**EXHIBIT 2**
EXHIBIT "2"

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMELAND HOUSEWARES, LLC, a California company, | CASE NO. CV 11-3720-GW(JEMx) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLC'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 and DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF MARKMAN RULING RE: CLAIM CONSTRUCTION OF "THRESHOLD RATE"** |
| v. | |
| SORENSEN RESEARCH AND DEVELOPMENT TRUST, | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS. | |
| | Hon. George H. Wu Courtroom 10 |
| | Hearing: August 23, 2012 at 8:30 a.m. |

-1-                                    Civ. Action No. 2:11-cv-03720-GW-JEMx

EXHIBIT "2"

These matters came before the Court on Plaintiff/Counter-defendant Homeland Housewares, LLC and Counter-defendant Capital Brands, LLP's (collectively, "Homeland") Renewed Motion for Summary Judgment of Non-infringement of U.S. Patent No. 6,599,460 (hereinafter "the '460 Patent"), and Defendant/Counter-claimant Sorensen R&D Trust's (hereinafter "Sorensen") Motion for Reconsideration of Markman Ruling re: Claim Construction of "Threshold Rate."

The Court, having considered all papers and oral arguments submitted in support of, and in opposition to, Homeland's Renewed Motion for Summary Judgment, and for good cause appearing, finds that Homeland has demonstrated there is no genuine issue of material fact as to the non-infringement of the '460 Patent.

The Court further having considered all papers and oral arguments submitted in support of, and in opposition to, Sorensen's Motion for Reconsideration, finds that Sorensen has failed to present newly discovered evidence, or otherwise demonstrate that the Court committed clear error or that the initial Markman construction of "threshold rate" was manifestly wrong.

**IT IS HEREBY ORDERED THAT:**

1.    Plaintiff Homeland's Renewed Motion for Summary Judgment on its First Count for Declaratory Judgment of Non-Infringement of the '460 Patent is

Civ. Action No. 2:11-cv-03720-GW-JEMx

EXHIBIT "2"

1   GRANTED.

2       2.      Defendant Sorensen's Counterclaim for Infringement of the '460

3   Patent is hereby DISMISSED WITH PREJUDICE.

4

5       3.      Defendant Sorensen's Motion for Reconsideration of Markman

6   Ruling re: Claim Construction of "Threshold Rate" is DENIED.

7

8

9   **IT IS SO ORDERED.**

10

11

12  Dated: August 30, 2012                   _George H. Wu_

13                                           _____
                                             Hon. George H. Wu
14                                           United States District Judge

15

16

17  Presented by:
    Trojan Law Offices
18

19
    /s/ R. Joseph Trojan
20  R. Joseph Trojan
    Dylan C. Dang
21  Attorneys for Plaintiff
    9250 Wilshire Blvd., Suite 325
22  Beverly Hills, CA 90212
    Telephone (310) 777-8399
23  Facsimile (310) 777-8348
24

25

26

27

28                                  -3-        Civ. Action No. 2:11-cv-03720-GW-JEMx

TROJAN LAW OFFICES
BEVERLY HILLS

EXHIBIT "2"

# EXHIBIT 3
EXHIBIT "3"

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3720-GW(JEMx) | Date | August 23, 2012 |
|----------|---------------------|------|------------------|
| Title | *Homeland Housewares, LLC v. Sorensen Research and Development Trust* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Laura Elias | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| R. Joseph Trojan | Joseph McAvoy |
| Dylan C. Dang | Patricia A. Shackelford |

**PROCEEDINGS:**   **PLAINTIFF/COUNTER DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 (filed 07/26/12);**

**DEFENDANT'S MOTION FOR RECONSIDERATION OF MARKMAN RULING RE CLAIM CONSTRUCTION OF "THRESHOLD RATE" (filed 07/16/12);**

**STATUS CONFERENCE**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's final ruling. The Court **GRANTS** Homeland's motion for summary judgment as to non-infringement. This ruling will also be dispositive of Sorensen's counterclaim for infringement. The case will move forward as to Homeland's invalidity/unenforceability declaratory judgment claim. Counsel for plaintiff will file a proposed order forthwith. Defendant's Motion for Reconsideration of Markman Ruling re Claim Construction of "Threshold Rate" is **DENIED**.

The status conference is continued to **August 30, 2012 at 8:30 a.m.** Parties may appear telephonically provided that counsel advise the clerk by August 28, 2012.

|  | : | 20 |
|---|---|---|

EXHIBIT "3"   Initials of Preparer    JG

***Homeland Housewares v. Sorensen Research and Dev. Trust***, Case No. CV 11-3720
Tentative Rulings on: (1) Defendant Sorensen's Motion for Reconsideration of Markman
Hearing and (2) Plaintiff Homeland Housewares' Motion for Summary Judgment & Defendant's
Rule 56(d) Motion

## I. Background

Plaintiff Homeland Housewares LLC ("Plaintiff" or "Homeland") filed suit against
Sorensen Research and Development Trust ("Defendant" or "Sorensen") on April 29, 2011,
seeking a declaratory judgment as to the invalidity and unenforceability of a patent held by
Sorensen, U.S. Patent No. 6,599,460 (the "'460 Patent"), and a declaratory judgment of non-
infringement of that patent. *See* Compl., Docket No. 1. Sorensen, in its Answer, asserted a
counterclaim of infringement of the '460 Patent. *See* Docket No. 14. Plaintiff manufactures and
sells food blenders called the "Magic Bullet" and the "Baby Bullet" (collectively the "Accused
Products") which are sold along with "an assortment of plastic cups and mugs." Docket No. 124
at 6.

The '460 Patent claims a method of injection molding that prevents "gaseous voids" from
developing in "thin wall" plastic products as they are molded. SUF, SDF ¶ 1.[1] It teaches that
gaseous voids can be avoided using the following process. Fluid plastic is injected into a mold
cavity through what is known as a gate. SUF ¶ 32. The fluid plastic is directed through "flow
chambers" and then spreads to "thin wall" sections between the flow chambers. SUF, SDF ¶ 4.
The thickness of the thin wall sections increases in the direction of the flow. *Id.* Importantly, the
rate of increase in thickness of the "thin wall" sections cannot surpass a "threshold rate" above
which unwanted, problematic "gaseous voids" will form. The "threshold rate" is to be
determined empirically by conducting test strips. SUF, SDF ¶ 17.

The parties are now before the Court for Defendant's motion for reconsideration of one of
the terms constructed at the Markman hearing held by this Court on May 7, 2012, as well as
Plaintiff's renewed motion for summary judgment and Defendant's Rule 56(d) request.

## II. Legal Standards

### A. Motion for Reconsideration

A motion for reconsideration is an "extraordinary remedy, to be used sparingly." *Kona
Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). Indeed,
"[m]otions for reconsideration are generally unwelcome." Schwarzer, Tashima, et al., <u>California
Practice Guide: Federal Civil Procedure Before Trial</u> (2011) § 12:158.1, at 12-60. Reconsidera-
tion is generally only appropriate where the Court is presented with newly-discovered evidence,
the Court "committed clear error or the initial decision was manifestly unjust," or where there is
an intervening change in controlling law. *See School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255,

---

[1]Plaintiff Homeland's statement of undisputed facts is found at Docket No. 118-3 and shall be referenced as
"SUF." Defendant Sorensen's statement of disputed facts is found at Docket No. 129-1, and shall be referenced as
"SDF."

EXHIBIT "3"

1263 (9th Cir. 1993). Local Rule 7-18 of the Central District of California imposes similar
requirements:

> A motion for reconsideration of the decision on any motion may be
> made only on the grounds of (a) a material difference in fact or law
> from that presented to the Court before such decision that in the
> exercise of reasonable diligence could not have been known to the
> party moving for reconsideration at the time of such decision, or
> (b) the emergence of new material facts or a change of law
> occurring after the time of such decision, or (c) a manifest showing
> of a failure to consider material facts presented to the Court before
> such decision. No motion for reconsideration shall in any manner
> repeat any oral or written argument made in support of or in
> opposition to the original motion.

C.D. Cal. L.R. 7-18.

### B. Summary Judgment

Summary judgment shall be granted when a movant "shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). In other words, summary judgment should be entered against a party "who fails to
make a showing sufficient to establish the existence of an element essential to that party's case,
and on which that party will bear the burden of proof at trial." *Parth v. Pomona Valley Hosp.
Med. Ctr.*, 630 F.3d 794, 798-99 (9th Cir. 2010). Further,

> [i]f the party moving for summary judgment meets its initial
> burden of identifying for the court the portions of the materials on
> file that it believes demonstrate the absence of any genuine issue of
> material fact, the nonmoving party may not rely on the mere
> allegations in the pleadings in order to preclude summary judgment
> [, but instead] must set forth, by affidavit or as otherwise provided
> in Rule 56, specific facts showing that there is a genuine issue for
> trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)
(internal citations and quotation marks omitted). At the summary judgment stage, the Court does
not make credibility determinations or weigh conflicting evidence, and views all evidence and
draws all inferences in the light most favorable to the non-moving party. *See id.* at 630-31 (citing
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

As applied in the context of a patent infringement claim, a mere disagreement between
experts is not sufficient to raise a triable issue of fact; rather, an expert's opinion must present
"sufficient detail for the court to determine whether that factual foundation would support a
finding of infringement under the claim construction adopted by the court, with all reasonable

EXHIBIT "3"

inferences drawn in favor of the non-movant." *Rambus Inc. v. Hynix Semiconductor Inc.*, 628 F. Supp. 2d 1114, 1122 (N.D. Cal. 2008) (quoting *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046-48 (Fed. Cir. 2000)).

### C. *Rule 56(d)*

In response to a summary judgment motion, a nonmoving party may obtain relief pursuant to Fed. R. Civ. P. 56(d) ("Rule 56(d)") if it "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." A party seeking relief under Rule 56(d) in the Ninth Circuit must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The party must also show that it "diligently pursued its previous discovery opportunities, and . . . demonstrate that allowing additional discovery would . . . preclude[ ] summary judgment." *Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 843 F. Supp. 2d 1018, 1027 (N.D. Cal. 2012).

### III. Analysis

#### A. *The Court Denies Defendant Sorensen's Motion for Reconsideration.*

Sorensen seeks reconsideration of the term "threshold rate" as constructed by this Court at the Markman hearing. The Court's analysis of why Homeland's construction of that term should be adopted was, in pertinent part, as follows:

> Sorensen argues that the term "threshold rate" needs no more specific construction than the term's everyday meaning . . . It explains that once the threshold rate "exceeds a certain mathematical value, which value depends on variables including mold cavity geometries and the type and amount of plastic used, void-based irregularities can form in that thin-wall cavity section." Docket No. 69 at 21.
>
> . . . Homeland argues that the "threshold rate" should be constructed as the rate "as determined by conducting test strips at the time the mold is made" such that gaseous voids do not form. *See* Docket No. 63 at 13. Homeland persuasively notes that the patent specification itself dictates that the threshold rate can only be determined by conducting such empirical tests. *Id.* Indeed, Sorensen also notes that the specification envisions that the threshold rate for a given product would be determined by conducting empirical tests as to that specific product. Docket No. 57 at 22.
>
> Given the language of the specification, and Sorensen's admission that the "value" of the "threshold rate" for a given item would vary based on "mold cavity geometries and the type and amount of plastic used," it is hard to see how they can plausibly

-3-

EXHIBIT "3"

argue that the "threshold rate" of the Accused Products should not be construed so as to involve an empirical test to see *what that rate is* . . . [.]

Markman Order, Docket No. 113 at 13. The Court had also discussed how the concept of a "threshold rate" appeared to be the novel aspect of the '460 Patent, as compared to two prior patents, the Smith patent and the Allen patent. Sorensen in its motion for reconsideration asserts that the Court has made two factual errors and two legal errors in its construction of the term "threshold rate." The Court would consider each in turn.

First, Sorensen argues that the Court erred in finding that the Allen and/or Smith patents taught anything at all regarding the prevention of gaseous voids. The Court determined in its Markman Order that "The Allen patent taught that 'thin walled' sections are necessary to prevent gaseous voids, and the Smith patent taught that the 'thin walled' sections must increase in thickness in the direction of the flow of plastic." *Id.* Sorensen argues that there are "no teachings whatsoever" in Allen or Smith regarding gaseous voids. Yet the "summary of the invention" section of the Allen patent refers to how the "thin panel section" must be positioned "so that there are no voids in the plastic." Allen, at column 2, lines 53-55 (Docket No. 110, Exh. B at 14). Sorensen does not explain away this reference. As for the Smith patent, the "summary of the invention" section states that "[a]s the thickness . . . increases, the flow of plastic will move uniformly." Smith, column 3, lines 46-48 (Docket No. 110, Exh. C at 25). No reconsideration of the construction of "threshold rate" is warranted based on the Court's analysis of the relevance of the Allen or Smith patents.

Second, Sorensen argues that the Court erred in interpreting the prosecution history of the '460 patent. The Court found that the Examiner had tentatively rejected the patent as obvious in light of the Allen and Smith patents, and found that fact supported the notion that threshold rate must involve some empirical testing, because the Examiner needed some grounds upon which it eventually determined that the '460 was non-obvious and thus allowable; as discussed above, without the component of empirical testing, "threshold rate" is a circular concept that would not have allowed the examiner to reach a finding of non-obviousness. Sorensen provides the Examiner's statement of reasons for allowance, after considering the potential obviousness in light of Smith and Allen, which was:

> The prior art does not teach or suggest the thickness of the thin wall section increasing in the direction of flow *at less than a threshold rate* to prevent injected fluid plastic directed into the zone from at any time surrounding any gaseous void within the zone . . . The declaration [submitted by the inventors] . . . is sufficient to overcome the rejection of claims 1-34 based upon Smith . . . The declaration shows that increase in thickness of the thin wall cavity is *not at a rate* to prevent injected fluid plastic directed into the zone from at any time surrounding any gaseous void within the zone.

-4-

EXHIBIT "3"

Docket No, 114 at 7. In other words, the Examiner eventually allowed the claims of the '460 because, unlike Smith, the '460 Patent teaches that the wall thickness increases at less than a threshold rate, whereas the Smith patent had not so taught. But then, the Court is back to its original conclusion: if what distinguishes the '460 patent is the threshold rate, then the threshold rate cannot simply be constructed as "whatever rate below which gaseous voids do not form," as that would be an entirely circular definition that would not have reasonably permitted the Examiner to change the tentative rejection to a final allowance decision.

Sorensen's third and fourth arguments (taken together) are that the Court improperly inserted a step of empirical testing into a claim that did not require it, since only the specification, not the claims, mentions empirical testing to determine the threshold rate. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (the claim, not the specification, sets the parameters of the patentee's right to exclude). Yet, again, there is no other way for the term to be constructed, because without the use of empirical testing to determine the threshold rate, in Homeland's words, "it is impossible to determine whether this claim limitation is met by [any] accused product." Docket No. 128 at 8. Sorensen has simply never responded adequately to this Court's finding that any construction of "threshold rate" that lacks a component of empirical testing would be entirely circular.

Sorensen analogizes to the boiling point of water, saying that just as the boiling point of water will vary based on altitude (actually based on barometric pressure), the threshold rate below which gaseous voids will not form will vary based on the particular product and mold cavity. *See* Docket No. 114 at 10. However, this example proves precisely the opposite point: unlike Sorensen's proposed construction of threshold rate, there is a *formula* by which the boiling point of water can be determined at each different altitude. The boiling point of water is not simply defined as "the threshold temperature above which water turns from liquid to vapor" - there is a mathematical formula according to which a person can know for sure whether or not, at any given altitude and any given temperature, the water will boil. In other words, the mere fact that a threshold value is variable does not mean it can only be defined in a circular manner - *i.e.*, "the value above which [the relevant event] occurs." On the contrary, just as in the case of boiling water, a variable threshold value can be meaningfully defined through a mathematical formula or by reference to the empirical testing necessary to determine the threshold value in a specific set of circumstances

In sum, the Court should deny Sorensen's motion for reconsideration as to the term "threshold rate."[2]

### B. The Court will grant Homeland's motion for summary judgment

Summary judgment of non-infringement requires a two-step analysis. First, the claims of the patent must be construed to determine their scope, as a question of law. *Pitney Bowes, Inc. v.*

---

[2]Sorensen complains that the Court, in its final Markman order, did not cite to the supplemental briefing it submitted, uninvited, during the period between the Markman hearing and the Court's issuance of the Markman order. The Court would find that first, the arguments presented therein are virtually identical to those raised in the motion for reconsideration, thus they have now been addressed, and second, that the supplemental briefing was improper because the Court had indicated that the matter had been taken under submission on the basis of the initial Markman briefs and argument, and had not invited supplemental briefing.

EXHIBIT "3"

*Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (internal citation omitted). Second, "a determination must be made as to whether the properly construed claims read on the accused device." *Id.* To find infringement, "the court must determine that every claim limitation is found in the accused device." *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 909 (Fed. Cir. 2005) (internal citations omitted). The determination of infringement is generally a question of fact. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). Since the ultimate burden of proving infringement rests with the patentee, an accused infringer may establish that summary judgment is proper "either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *see also Pixion v. Citrix Sys., Inc.*, No. C 09-03496 SI, 2012 U.S. Dist. LEXIS 113929, at *16 (N.D. Cal. Aug. 13, 2012).

Homeland argues that summary judgment in its favor is warranted because the Accused Products do not infringe on the '460 Patent. There are four claim limitations that Homeland argues are not found in the Accused Products: 1) the Accused Products do not suffer from the problem of "gaseous voids" because they are not "thin-walled"; (2) the Accused Products do not have "flow chambers"; (3) the Accused Products do not have "exit/entrance positions" or "inscribed sphere dimensions"; (4) the Accused Products do not have walls that increase in thickness at a rate less than a "threshold rate". The Court will discuss each in turn, before considering Sorensen's 56(d) motion.

As a general matter, Sorensen has nowhere in its papers identified which *components* of Plaintiff's products infringe the '460 Patent. Sorensen's Preliminary Infringement Contentions ("Contentions") list "Magic Bullet Hi-Speed Blender/Mixer System" and "Baby Bullet Baby Food Making System" as the Accused Products. *See* Decl. of R. Joseph Trojan ("Trojan Decl."), Docket No. 121, Exh. 8 at 2. Then, the Contentions present three drawings, allegedly depicting Homeland's products. Sorensen has not disclosed which component cup the drawings found in its Contentions claim to depict. Homeland, though, has ventured guesses as to which products allegedly infringe the '460 Patent, given the drawings. *See* Docket No. 124 at 8. It is on this shaky ground that the Court must tread in evaluating whether there is a genuine issue of material fact as to whether the Accused Products infringe upon the '460 Patent.

### 1. There is a genuine issue of material fact as to whether the Accused Products are "thin walled."

Homeland argues that since "gaseous voids" do not form in their products, "there would be no reason to employ the injection molding process claimed in the '460 patent to prevent a problem that does not exist." Docket No. 124 at 10. The evidence Homeland proffers in support of the fact that gaseous voids do not form in their products is a declaration by Mr. Joe Meyer (the "Meyer Declaration"), who is the Managing Director of the non-party Chinese company Capital Bay Ltd., which "supervises production and quality control of the two third-party Chinese factories" that manufacture the Accused Products. Meyer Decl., Docket No. 120, ¶ 1. He testifies that he has personal knowledge of "the injection molding process that is used to make the accused products" and that gaseous voids "have never been a problem in the accused products." *Id.* ¶¶ 1, 15. Additionally, Homeland argues that gaseous voids have never posed a

-6-

problem in manufacturing the Accused Products because the Accused Products do not have "thin walls" - instead, Homeland argues that its products feature thick walls which are two to three times thicker than what Homeland dubs the "standard" definition of "thin" - 1mm or less.

As noted by Sorensen, this Court rejected Homeland's construction of "thin" as 1mm at the recent Markman hearing. *See* Markman Order, Docket No. 113 at 5-6. Homeland appears to be trying to get around the Court's rejection of its construction by claiming that the walls simply must be thick, because if they were thin, then the problem of "gaseous voids" would have arisen during manufacturing. Yet neither side appears to argue that in *every* thin-walled product ever manufactured, the issue of gaseous voids *must* arise; the patent merely teaches one method of preventing the voids. Thus, Homeland has failed to show that there is no genuine issue of material fact as to whether the Accused Products contain "thin walls," because that question cannot be answered by consulting either the 1mm standard this Court already rejected, or, merely by pointing to the lack of gaseous voids. In other words, there is a genuine issue of material fact as to whether the Accused Products are "thin walled."

All that said, the Court would note that Sorensen has presented no evidence to counter Mr. Meyer's testimony that gaseous voids have never been a problem in manufacturing the Accused Products. Sorensen does, though, object to the above-quoted paragraphs of the Meyer Declaration, calling Mr. Meyer's testimony concerning why gaseous voids do not form (namely his conclusion that the walls are "thick enough" that they do not occur) a mere parroting of Homeland's rejected construction of "thin wall" and impermissible expert testimony by a lay witness. *See* Docket No. 129-2 at 5. The Court would not find that these objections constitute grounds to exclude Mr. Meyer's testimony that gaseous voids *simply were never a problem* in manufacturing the Accused Products, leaving aside *why* they were never a problem. Mr. Meyer, as head of the company supervising the manufacturing of the Accused Products, obviously has personal knowledge as to what problems arise on the factory floor. Thus, the Court would note as background for the remaining analysis that Sorensen has offered no evidence that gaseous voids, the problem the '460 Patent purports to solve, have ever been an issue in the manufacturing of the Accused Products, whereas Homeland has offered evidence that gaseous voids have never been a problem.[3]

## 2. There is no genuine dispute that the Accused Products lack flow chambers.

Homeland asserts that the Accused Products do not include "flow chambers," which this Court has constructed to mean (in pertinent part) "sections of a mold cavity that adjoin to opposite edges in a thin wall cavity section for at least directing injected fluid plastic material . . ." Markman Order, Docket No. 113 at 6-7. The Court rejected Homeland's proposed construction which would have required a flow chamber to be attached to a "gate" (*i.e.* the point where

---

[3]For instance, Sorensen has uncovered zero documents that show Homeland grappling with this problem, and Sorensen has not elicited testimony in depositions or otherwise from employees at Homeland with personal knowledge of the problem of gaseous voids ever having been encountered in the Accused Products.

-7-

EXHIBIT "3"

the fluid plastic is injected).[4]  *Id.*  Sorensen contends that the "ribs" (*i.e.* protrusions emanating vertically along the plastic cups to which the blender attaches) of the Accused Products are actually flow chambers; Homeland asserts that the ribs are there to "create turbulence in the blending process" and "have no function in the molding process," as Mr. Meyer testifies.  Meyer Decl., Docket No. 120, ¶ 16.

Homeland also presents the results (in photographic form) of two empirical tests which appear to show that the flow chambers do not direct the flow of plastic: a "dye test" and a "short shot test."  First, Homeland injected dye into the mold, and photographed the results.  Again, the Court has constructed "flow chamber" such that it must "direct[] injected fluid plastic material."  When dye is injected *into the gate* (the point where the plastic is normally injected), the photographs show that the dye scatters every which way, not into the ribs.  *See* Meyer Decl., Docket No. 120, Exh. 12.  If the ribs were flow chambers, argues Homeland, then the flow of the dye would have been directed by the ribs instead of scattering about willy-nilly.  Further, Homeland argues, if the ribs were flow chambers, then the dye would not only direct the flow, but would direct the flow into the (possibly thin) wall sections; in contrast, when the dye was injected directly *into the ribs* (as opposed to through the gate), the dye continued to flow along the rib, and did not spill out into the (possibly thin) wall sections.  *See* Meyer Decl., Docket No. 120, Exh. 12; Docket No. 124 at 12.

Homeland also presents the results of another test, called "short shot testing."  This test was conducted by Homeland allegedly *at the request of Sorensen* (Docket No. 124 at 14), and is a series of photographs taken during the formation of the product when made according to the same injection process as is used to make the Accused Products; in other words, the "short shots" are still photographs of unfinished Accused Products, taken during the molding process and showing what the Accused Products look like at different stages during their metamorphosis from liquid plastic to (for example) a Magic Bullet Blender cup.  *See* Meyer Decl., Docket No. 120, ¶ 9.[5]  These photographs show that the walls of the Accused Products form by the plastic flowing down at an even rate as to the ribs and the walls, away from the gate.  In other words, the walls of the cup appear to be forming evenly without regard for the location of the ribs.  If the ribs were directing the flow of the plastic, as the claim limitation requires, then (in Homeland's words) "there would be gaps in the wall sections where the plastic had not yet joined together."

---

[4]Sorensen argues that Homeland is now impermissibly resting upon its rejected construction, in arguing that the ribs are not flow chambers.  If Homeland had argued that the ribs are not flow chambers *solely* because they are not connected to the gate, then the Court would be persuaded by Sorensen's reasoning.  However, that is not Homeland's argument.  Homeland argues that leaving aside the issue of whether the ribs are attached to the gate or not, the photographs from the dye test and the short shot test show that the ribs do not function to direct the flow of the plastic.  Instead, the plastic flows evenly all around the cup's forming edge, and the location of the ribs is irrelevant to the molding of the cup.  The ribs function only to aid the blending process performed by the finished product, not aid in the molding process as the cup is formed.

[5]Sorensen's evidentiary objection that the short shot test is unauthenticated because it is only a single set of shots which Homeland allegedly did not identify "which of the two products it is, when and where they were made, by whom they were made, whether they were made with the same test or production molds, who verified whether they were made with the same injection process as used in production" (Docket No. 129-2 at 6) is denied; the Meyer Declaration addresses each of these issues.

EXHIBIT "3"

Docket No. 124 at 15.

In sum, Homeland has presented photographic evidence from two tests, the dye test and the short shot test, which appear to conclusively show that the Accused Products do not feature "flow chambers," because what Sorensen had argued were flow chambers are in fact merely ribs that assist in the blending process once the completed product is used, but which play no role whatsoever in the molding or manufacturing process. Unless Sorensen can present more than a scintilla of evidence that the ribs do in fact function as flow chambers (or otherwise show that the flow chambers taught by the '460 Patent are present in the Accused Products), then summary judgment in favor of Homeland is warranted.

Has Sorensen, then come up with any evidence that the ribs are in fact flow chambers, even a scintilla? It appears that the answer is no. Sorensen does not deny that it has conducted no testing whatsoever that could show how the Accused Products do in fact utilize flow chambers. Nor do they refer to any photographs of the Accused Products and illuminate for the Court where the flow chambers must be found. Instead, Sorensen argues that (1) the dye test is inaccurate because the viscosity of dye is different from that of plastic; (2) the short shot test does in fact show that the ribs direct the flow of plastic. Sorensen also raises evidentiary objections to both tests.

As to the dye test, Sorensen merely states conclusorily that dye and plastic do "not flow at the same rate or direction" and thus concludes that the dye test is not an accurate indicator of the flow of plastic. Crucially, Sorensen backs up this assertion only a declaration from inventor Jens Ole Sorensen, who testifies that "they [Homeland] have not mixed the plastic with the dye, so each substance would flow according to its own viscosity. Therefore, the dye and plastic would not flow at the same rate or direction as the other." Decl. of Jens Ole Sorensen ("Sorensen Decl."), Docket No. 130-2, ¶ 14. Yet Sorensen never ran its own tests showing dye (or anything) doing anything different, despite having had access to the physical samples used to create the photographs here. Indeed, when Homeland demanded that Sorensen "produce the documents of whatever it did that would support its infringement claim," Sorensen offered only "drawings that document its measurements and analysis of infringement . . . and additionally offered to make available the physical samples." SUF, SDF ¶ 42. In other words, Sorensen has only presented the three drawings found in the Contentions, as the sum total of documents evidencing testing they did to support the infringement claim; they have thus presented no evidence that the results of the dye and short shot tests are in genuine dispute.

Perhaps realizing that its infringement claim could not withstand summary judgment with merely this flimsy dispute as to the facts, Sorensen then offers evidentiary objections to the dye test, contending that Meyer is not an expert witness and thus cannot offer scientific or technical knowledge; even as an expert, Sorensen contends, Meyer's dye test should be excluded because it is not clear that his opinions are the product of reliable principles and methods. The Court would not agree. Meyer is offering his personal knowledge of a test he personally "directed," and regardless of whether the Court takes note of his conclusion that the photographs show that the ribs are not flow chambers for purposes of the '460 Patent (which may indeed be improper expert opinion testimony), the Court has no reason to exclude the photographic results of the dye test he personally conducted and no reason to decline to make common sense deductions from those photographs. The results of the dye test show that the flow of the *dye* was not directed by

-9-

EXHIBIT "3"

the ribs, this is not contested. Sorensen has offered less than a scintilla of evidence that dye would flow in a different direction than would plastic, in fact it has offered only the word of Jens Ole Sorensen without any further substantiation. Thus, the result of the dye test, that the ribs do not direct the flow of plastic, is not a matter of genuine dispute.

Proceeding to the next test, the short shot test, Sorensen raises similar arguments as those discussed above in an attempt to form a smoke screen around the fact that it has conducted zero experiments of its own that contradict the results of the simple tests put forward by Homeland. First, Sorensen attempts to argue that the short shot photographs do in fact show that the plastic flowed from the ribs into the wall sections, because one (and only one, out of many) of the short shots show an inverted circular line, with the ends of the line being located along a rib. However, Sorensen does explain how this inverted circular line indicates that the ribs direct the flow of plastic, nor does Sorensen attempt to explain away the fact that all of the other short shot samples do not feature this inverted circular line.

Thus, again, lacking any evidence to support its infringement claims and lacking any comprehensible argument or evidence contradicting Homeland's evidence of non-infringement, Sorensen resorts to evidentiary objections to the short shot test. Sorensen argues that the tests lack foundation, but the tests were conducted at Sorensen's behest (even if the instructions for the test were, it appears, not followed to the letter, *see* Sorensen Decl., Docket No. 130-2, ¶¶ 9-10), the short shots were produced to Sorensen in November 2011 (thus Sorensen had ample time to inspect the pictures and run its own, similar tests, if it so desired), and the samples themselves were inspected in person by Sorensen on November 7, 2011. *See* Supplemental Trojan Decl., Docket No. 135, ¶ 10. Moreover, the declaration of Joe Meyer suffices to authenticate the photographic results of the short shot test. *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) ("A document can be authenticated by the testimony of a witness with knowledge.").

In sum, Sorensen has presented no evidence[6] that the ribs (or any other feature of the Accused Products) are flow chambers, whereas Homeland has submitted argument and evidence that they are not flow chambers. Thus, there is no *genuine* dispute as to the fact that the Accused Products lack flow chambers. Therefore, there is no genuine dispute as to whether the Accused Products infringe the '460 Patent. Summary judgment would thus be granted in Homeland's favor.[7]

### 3. There is no genuine dispute as to the Accused Products' lack of exit/entrance positions and inscribed spheres.

Given that the Court would find it undisputed that the Accused Products lack flow chambers, it follows that the Accused Products also lack "exit positions" and "entrance positions," two key claim limitations, as the Court's construction of those terms (which adopted Sorensen's proposed construction) defines the exit/entrance positions by reference to the flow

---

[6]Jens Ole Sorensen, incredibly, even testified at his deposition that no testing has ever been performed to determine whether the plastic flowed "from the ribs" or "from the gate down between the ribs." Trojan Decl., Docket No. 121, Exh. 9.

[7]The Court will discuss the other arguments raised in the motion for summary judgment despite finding that the undisputed lack of "flow chambers" is ample grounds upon which the motion should be granted.

EXHIBIT "3"

chambers. Similarly, the "inscribed spheres" limiting the claims are to be inscribed at the exit/entrance positions, thus without exit/entrance positions, the Accused Products cannot contain inscribed spheres as the term is used in the '460 Patent.

Sorensen presents diagrams purporting to show where the exit/entrance positions are, and where the inscribed spheres should be drawn. Sorensen Decl., Docket No. 130-2, Exh. 2. However, those drawings all assume that the ribs are flow chambers, a contention this Court has now found is not a matter of genuine dispute. Where Homeland makes the logical argument that without flow chambers, there can be no entrance/exit positions and no inscribed spheres due to this Court's construction of the terms at the Markman hearing, Sorensen merely presents a drawing where it, itself, drew entrance/exit positions and inscribed spheres onto a drawing it itself made of one of the Accused Products. Obviously, Homeland has the better argument here, and summary judgment is warranted for the additional reason that along with flow chambers, there is no genuine dispute as to Accused Products' lack exit/entrance positions and inscribed spheres.

### 4. There is no genuine dispute as to whether the Accused Products feature walls that increase in thickness at less than a threshold rate.

Homeland next argues that the Accused Products do not have "thin wall cavity sections" that increase in thickness, away from the flow of the plastic, at less than a "threshold rate" above which gaseous voids will form. Homeland accurately observes that even if you leave aside the contested construction of "threshold rate," in order for a product to include this claim limitation, the walls would need to increase in thickness; Homeland's products, it argues, have walls of uniform, not increasing, thickness. Sorensen does not appear to argue that a product with walls of uniform thickness could infringe the '460 Patent.[8]

Homeland presents engineering drawings that show the specifications of the Accused Products (Meyer Decl., Docket No. 120, Exhs. 2-7, filed under seal), and then compares the specifications in those drawings to three actual samples of the Accused Products, by means of using an electronic caliper to discern the wall thickness of the samples. Meyer Decl., Docket No. 120, Exh. 9 (filed under seal). This process showed that the thickness of the walls of the product do not vary by more than 0.1mm, which Homeland argues is the tolerance (allowable limit of variation) of its plastic molded parts. *See id.*; Decl. of William J. Tobin, Docket No. 119, ¶ 19 & Exh. B.[9] These photographs and the engineering specifications are properly authenticated by the Meyer Declaration. Both the engineering drawings and the photographs of the caliper

---

[8] Such a contention, though, is not unimaginable. Walls of uniform thickness presumably increase in thickness at a rate of zero. Zero must be below any threshold rate. Thus it appears *logically* possible for a product with walls of uniform thickness to still increase in thickness at less than a threshold rate. Sorensen did not make this argument, however, and more importantly, an argument that walls of uniform thickness "increase in thickness" at a rate of zero would represent a strange interpretation of the words "increasing in thickness" at odds with the term's everyday meaning, and would impermissibly expand the realm of products excluded by the patent.

[9] The Court should find that Sorensen's objections to the expert testimony of William J. Tobin is largely moot as the only point relied upon therein by this Order is the fact that the "tolerance" of the accused products is 0.1mm; Sorensen does not challenge this specific fact (but instead argues that there is a variation in the Accused Products' wall thickness that exceeds this accepted tolerance).

-11-

EXHIBIT "3"

measurements were produced to Sorensen by October 2011. *See* Supplemental Trojan Decl., Docket No. 135-1, ¶¶ 8-9.

However, Sorensen produced to Homeland during discovery photographs that purport to depict one of the Accused Products, which show a variation of more than 0.1mm. *See* Trojan Decl., Docket No. 121, Exh. 17. Unlike Homeland's photographs, though, Sorensen's photographs are unauthenticated: none of the declarations Sorensen cites in its brief authenticate them. The photographs were submitted by Homeland as Exhibit 17 to the Trojan Declaration, and are identified by Homeland as "documents produced by Sorensen." Sorensen did not attach these photographs an exhibit to any of their own submitted declarations. Neither Sorensen, nor Paul Philip Brown (who aided Sorensen in research prior to the filing of the lawsuit, *see* Decl. of Melody A. Kramer, Docket No. 130-1, Exh. 4) nor Sorensen's counsel Melody Kramer has testified as to where or when the photographs were taken, or what the photographs depict. Thus, the photographs found at Exhibit 17 of the Trojan Declaration are unauthenticated, inadmissible, and cannot create an issue of genuine dispute as to the thickness of the walls of the Accused Products.

Sorensen also submitted drawings in its Contentions that depict a product with walls that increase in thickness. *See* Trojan Decl., Docket No. 121, Exh. 8. As for these drawings, Jens Ole Sorensen and Paul Philip Brown (who collected the data Sorensen used to make the drawings) testified that they did not record any measurements other than those displayed on the drawings themselves; there are no logs of which product the drawings depict, when the measurements were made, or how many measurements were taken. *See* Kramer Decl., Docket No. 130-1, Exhs. 3 & 4 (transcripts of Mr. Brown's deposition). All in all, again, Sorensen has failed to present even a scintilla of evidence to counter the weighty evidence put forward by Homeland, this time in regards to the question of whether the walls of the Accused Products are of uniform thickness.[10]

The Court is not weighing the credibility of the evidence put forth by both sides as to this matter, which would be inappropriate on summary judgment motion. Instead, Sorensen has put forward *no* admissible evidence indicating that the walls are *not* of uniform thickness, and given that Homeland has put forth authenticated photographic evidence of the Accused Products as well as the engineering specifications for the Accused Products, all indicating that the walls *are* of uniform thickness, the Court would find that there is no genuine dispute as to this issue. Therefore, it is not genuinely disputed that the walls do not increase in thickness at less than a threshold rate, since there is no evidence that they increase in thickness at all. Thus, the Accused

---

[10]One underdeveloped argument raised by Sorensen is that Jens Ole Sorensen states in his declaration that "[t]o get a proper measurement of wall thicknesses you should take the average across from the axis of two readings across from each other on the product." Sorensen Decl., Docket No. 130-2, ¶16. If Sorensen contends that Homeland's method of measuring wall thickness is invalid, and that accounts for the discrepancy between the testing, the Court would agree that summary judgment is not warranted as dueling experts would be required to show which method properly shows the wall thickness. Yet Sorensen does not fully flesh out this argument, instead resting on unauthenticated photographs that use *the same method as that used by Homeland*, and argues that the photographs establish a dispute of genuine fact. Indeed, Sorensen does not submit any photographs or data logs of any tests performed showing wall thickness of the Accused Products using Sorensen's own suggested averaging technique. Thus, the Court is not convinced that Sorensen has shown there is any method that could be used that would reach a different result from that reached by Homeland: the walls of the Accused Products are of uniform thickness.

**EXHIBIT "3"**

Products lack this claim limitation. Summary judgment is warranted based on the absence of an increase in thickness of the Accused Products' walls, then, as well.

Homeland also argues that summary judgment is warranted because no empirical testing was ever conducted to determine what the "threshold rate" of increase of wall thickness would be such that gaseous voids were never formed. Homeland asserts that no testing was ever done to determine the threshold rate for the Accused Products. Mr. Brown testifies that Sorensen also never determined the threshold rate for the Accused Products. Trojan Decl., Docket No. 121, Exh. 16 (transcript of Mr. Brown's deposition). Given that the Court constructed "threshold rate" as a rate that must be determined using test strips, and given that Homeland contends (and Sorensen does not deny) that no such tests were ever performed by Homeland (or anyone), summary judgment of non-infringement is warranted on this grounds as well. That said, this is merely an additional grounds for granting summary judgment, as is clear from the discussion *supra* as to flow chambers and walls that do not increase in thickness at less than a threshold rate.

In sum, the Court would GRANT Homeland's motion for summary judgment as to non-infringement.[11]

### C. The Court would deny Defendant's Rule 56(d) request for a deferred ruling on Plaintiff's summary judgment motion.

Sorensen argues, in less than two pages of its brief, that the Court should defer ruling on this renewed summary judgment motion because it "cannot present the full set of facts essential to justifying its opposition at this time" (Docket No. 129 at 9), in that Sorensen has not yet taken the deposition of Mr. Meyer or Mr. Tobin, Sorensen had not, prior to briefing its opposition: (1) taken Mr. Meyer's desposition; (2) taken Mr. Tobin's declaration; (3) taken a Rule 30(b)(6) deposition of Homeland Housewares, or (4) completed additional discovery related to the Court's construction of the term "threshold rate."

As to the depositions, Sorensen has not identified in its briefing any specific facts it hopes to elicit from these deponents that could defeat summary judgment here, let alone set forth those specific facts in affidavit form, as required. *See Family Home and Fin. Cent., Inc.*, 525 F.3d at 827 ("The requesting party must show: (1) it has set forth in affidavit form the *specific facts* it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.") (emphasis added). Morever, it appears that Sorensen has been far from diligent in noticing and taking these three depositions, each in different ways.

As for the deposition of non-party Mr. Meyer, a resident of China, Sorensen noticed the deposition on April 30, 2012. *See* Supplemental Trojan Decl., Docket No. 135, Exh. 3. However, Sorensen did not follow the requisite procedures for deposing a non-party foreign national, and also rejected Homeland's offer for his deposition to be taken by videoconference, citing admissibility concerns. *Id.* at Exh. 5. It appears that Sorensen demanded that Homeland transport Mr. Meyer to the United States for his deposition on its own dime, and Sorensen did

---

[11]Sorensen contends that Homeland's motion for summary judgment did not comply with the local rules because Homeland did not wait ten days after the parties' in-person meet-and-confer session. *See* C.D. Cal. L.R. 7-3. Homeland, though, notes persuasively that this is a *renewed* motion for summary judgment; any meet-and-confer session that occurred recently was extraneous to the session timely held on November 7, 2011 before the motion was originally filed in March 2012. *See* Docket No. 135 at 6.

EXHIBIT "3"

not take any steps necessary to take his deposition according to the Hague Convention protocols. *Id.* The Court would not find that Sorensen has been diligent in taking this deposition, given that it was aware of the challenges of deposing a non-party foreign national as early as four months ago, and has taken no steps towards a compromise of a videotaped deposition or meeting the requirements of conducting an in-person deposition.

As to the deposition of Mr. Tobin, Sorensen represents that it was waiting until the date of expert discovery cutoff and until Mr. Tobin's report was made final. The Court has some sympathy for this line of reasoning. However, Mr. Tobin was identified as a declarant in the original summary judgment motion Homeland filed in March 2012, and Homeland told Sorensen that he would be available between April 9 and May 18, 2012. *See* Suppl. Trojan Decl., Docket No. 135, Exh. 6. Sorensen did not serve him with a deposition notice until July 31, 2012, and a deposition date was set for August 17, 2012. *See* Suppl. Trojan Decl., Docket No. 135 ¶ 7. The Court would not find that Sorensen was sufficiently diligent in taking this deposition as would be necessary to justify a delay pursuant to Rule 56(d). It was only after the motion was refiled that Sorensen noticed his deposition; meanwhile, Sorensen had been aware for months that the motion was pending and would involve Tobin's testimony.

Lastly, as to the 30(b)(6) deposition, even though discovery has been open in this case since June 2011, Sorensen did not notice Homeland until July 31, 2012, after the filing of this summary judgment motion, noticing the deposition for August 17, 2012. *See* Suppl. Trojan Decl., Docket No. 135, Exh. 1; Kramer Decl., Docket No. 130-1, Exh. 2. This sort of last minute scramble to notice a deposition is completely incompatible with the level of diligence required of a party moving for relief under Rule 56(d). Even though Sorensen claims that it has not been able to take a 30(b)(6) deposition because of "a claimed emergency of the deponent," that does not excuse the late noticing of the deposition. *See* Kramer Decl., Docket No. 130-1, ¶6. In fact, even though discovery has been open for more than a year, Sorensen had taken zero depositions in this case before briefing its opposition to this motion. *See* Suppl. Trojan Decl., Docket No. 135, ¶ 2.

As to the Court's construction of "threshold rate," which Sorensen contends will necessitate "previously unanticipated discovery on facts relating to every detail of how the molds in question were made to determine what types of testing was done in the design process" (*see* Docket No. 129 at 9), this new discovery could not support a deferral of the summary judgment ruling, because the finding that there is no genuine issue of material fact as to whether the Accused Products have flow chambers (to take just one example of a claim limitation not found in the Accused Products) is completely irrelevant to the matter of the empirical testing that must be done to determine the threshold rate. Therefore, no discovery that Sorensen might take concerning empirical testing used to determine a "threshold rate" could change the result of this summary judgment ruling in Homeland's favor.

To be clear, while the Court rests largely on Sorensen's lack of diligence in discovery in denying the Rule 56(d) motion, the Court could just as equally rest on its lack of asserted specific facts that could aid its cause. Had Sorensen stated that it knew, for one reason or another, that the dye or short shot tests were fabricated, and could elicit that fact in discovery, that might present a different scenario. Had Sorensen stated that it could and would promptly run its own tests that would contradict the results of the dye or shot shot tests, that too might present a

-14-

EXHIBIT "3"

different scenario.  Instead, after more than a year of opportunities to take discovery and run tests, Sorensen has presented no evidence whatsoever showing that the Accused Products do in fact contain all the claim limitations, and has not even suggested what type of evidence it might present in that regard.  Relief under Rule 56(d) is not warranted here.

### III. Conclusion

The Court would GRANT Homeland's motion for summary judgment as to non-infringement.[12]  This ruling would also seem to be dispositive of Sorensen's counterclaim for infringement.  The case will still move forward as to Homeland's invalidity/unenforceability declaratory judgment claim.

---

[12]The Court would note that it has ignored the parties' dispute as to whether Sorensen is a "patent troll" and has disregarded all argument and evidentiary objections related to that issue; the Court has ruled on this motion without regard to other actions filed by either party or events that transpired therein. *See, e.g.*, Kramer Decl., Docket No. 130-1, ¶ 5.

-15-

EXHIBIT "3"

# EXHIBIT 4

EXHIBIT "4"

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-3720-GW(JEMx) | | Date | March 25, 2013 |
|---|---|---|---|---|

| Title | *Homeland Housewares, LLC v. Sorensen Research and Development Trust* |
|---|---|

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

None Present                                      None Present

**PROCEEDINGS:**        **(IN CHAMBERS): COURT ORDER RE:**

**DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO F.R.C.P. 11 (filed 02/14/13)**

**DEFENDANTS' MOTION TO REVISE THE COURT'S ORDER FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (DOC #140) BECAUSE IT WAS PROCURED THROUGH FRAUD (filed 02/21/13)**

Attached hereto is the Court's Final Rulings on Motion for Rule 11 Sanctions and Motion to Revise Court's Order of Summary Judgment of Non-Infringement Because It Was Procured Through Fraud. Defendants' motions are **DENIED**.

EXHIBIT "4"Initials of Preparer    JG

*Homeland Housewares, LLC v. Sorensen Research and Development Trust*, Case No. CV-11-3720l; Final Rulings on Motion for Rule 11 Sanctions and Motion to Revise Court's Order of Summary Judgment of Non-Infringement Because It Was Procured through Fraud

## I. Background

Plaintiff Homeland Housewares, LLC ("Plaintiff" or "Homeland") filed suit against Sorensen Research and Development Trust ("Defendant" or "Sorensen") on April 29, 2011, seeking a declaratory judgment of noninfringement, invalidity, and unenforceability of Sorensen's U.S. Patent No. 6,599,460 (the "'460 patent" or "'460"). *See* Compl., Docket No. 1. Sorensen counterclaimed for infringement. *See* Docket No. 34. Homeland manufactures and sells food blenders called the "Magic Bullet" and the "Baby Bullet" which are sold along with "an assortment of plastic cups and mugs." Docket No. 124 at 6. Sorensen alleged that those plastic cups are molded using an infringing process. *Id.* at 7.

The Court has considered the key issues regarding claim construction, infringement, and validity multiple times. The Court construed the disputed claims. Docket No. 113. The Court considered, and denied, Sorensen's motion to reconsider the construction of the term "threshold rate." Docket No. 140. The Court granted Homeland's motion for summary judgment of non-infringement. Docket No. 140. The Court denied Sorensen's motion to enter judgment in the case without addressing Homeland's invalidity counterclaims. Docket No. 151. The Court denied Homeland's motion for summary judgment of invalidity, and granted Sorensen's motion for cross-summary judgment on Homeland's invalidity defense. Docket No. 191.

Sorensen now moves for sanctions pursuant to Fed. R. Civ. P. 11 based on Homeland's repeated presentation to the Court of an allegedly fraudulent declaration, and presentation of misleading argument concerning the prosecution history of the '460 patent ("Rule 11 Mot."). Docket No. 182. Based on the same alleged misrepresentations, Sorensen also moves for "revision" of the Court's summary judgment of noninfringement ("Mot. to Revise"). Docket No. 186.

## II. Legal Standards

### A. Sanctions Pursuant to Fed. R. Civ. P. 11

"Rule 11 is 'aimed at curbing abuses of the judicial system.'" *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 542 (1991) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990)). Rule 11 provides that by filing a pleading or other paper, "an attorney . . . certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the paper complies with Rule 11's requirements. Fed. R. Civ. P. 11(b). Such requirements include that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law," Fed. R. Civ. P. 11(b)(2), and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b)(3). *See Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).

-1-

EXHIBIT "4"

Sanctions may be imposed under Rule 11 when a pleading "is frivolous, legally unreasonable, or without factual foundation." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986) (abrogated on other grounds in *Cooter,* 496 U.S. 384 (1990)); *see Security Farms v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1016 (9th Cir. 1997). There is no requirement of bad faith. *See Zaldivar*, 780 F.2d at 831. The Ninth Circuit has held that "Rule 11 sanctions should be applied if a competent attorney, after reasonable inquiry, would not have a good faith belief in the merit of a legal argument." *Amwest Mortg. Corp. v. Grady*, 925 F.2d 1162, 1164 (9th Cir. 1991).

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution" and "reserve[d] . . . for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344-45 (9th Cir. 1988).

### B. Motion for Reconsideration/Revision

Unless already the subject of a separate final judgment, any order of the Court "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). In the Central District of California, the vehicle for requesting such revision is a motion for reconsideration. Local Rule 7-18 governs motions for reconsideration:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

L.R. 7-18. A motion for reconsideration is an "extraordinary remedy, to be used sparingly." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). Indeed, "[m]otions for reconsideration are generally unwelcome." Schwarzer, Tashima, et al., *California Practice Guide: Federal Civil Procedure Before Trial* (2013) § 12:158.1. Reconsideration is generally only appropriate where the Court is presented with newly-discovered evidence, where the Court "committed clear error or the initial decision was manifestly unjust," or where there is an intervening change in controlling law. *See School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

## III. Analysis

### A. *The Court Denies Sorensen's Motion for Rule 11 Sanctions*

Sorensen's Rule 11 Motion is based on Homeland's filing of an allegedly fraudulent declaration by Joe Meyer, allegedly misleading arguments about the prosecution history of the

-2-

EXHIBIT "4"

'460 patent, and allegedly misleading filing of portions of the prosecution history. The Court addresses each in turn.

### 1. The Allegedly Fraudulent Meyer Declaration

In support of its successful motion for summary judgment of noninfringement, Homeland filed a declaration from Joe Meyer that provided the foundation for the results of "short shots" and "dye tests" that Homeland submitted in support of its motion. Docket 140 at 8-10. The Court held that the two tests demonstrated that the accused products did not have "flow chambers," which is a limitation of the asserted claims. *Id.* at 9. In accepting Homeland's evidence, the Court noted that Sorensen did not present even a scintilla of evidence demonstrating infringement, and that Sorensen admitted that it conducted no testing whatsoever to demonstrate that the accused products did have flow chambers. *Id.* at 9-10. Instead, Sorensen merely argued that Homeland's dye tests were inaccurate because the viscosity of the dye is different from that of the plastic, argued that the short shots in fact showed that the accused products had flow chambers, and raised evidentiary objections to the tests. *Id.* at 9-10.

Sorensen now argues that the Meyer declaration was fraudulent in six ways: (a) the dye in the dye tests was easily removable, and not fixed with the plastic; (b) Meyer did not personally perform the dye tests or have physical custody of them; (c) Homeland's counsel, not a person of skill in the art, formulated the methodology of the dye tests; (d) Homeland's expert referred to the dye tests as a "tool and die maker's trick;" (e) Meyer did not "direct the testing," since Plaintiff's counsel provided the instructions; and (f) Meyer's representations about the manufacturing parameters for the short shots were false. Rule 11 Mot. at 7-11. The Court finds that only the last issue has any merit. The Court addresses each in turn:

#### a. The Dye in the Dye Test Was Easily Removable

That the dye in the dye test was easily removable is irrelevant in the absence of any evidence that it was removed. A variation of this issue was already presented to the Court at summary judgment: Sorensen's opposition was in part based on its argument that the plastic was not mixed with the dye, and so was not probative. *See* Docket No. 140 at 9. And, Sorensen presented this exact same issue to the Court in its October 26, 2012 Notice of Intention to Not Depose Plaintiff Witness Joe Meyer. Docket No. 152 at 2 ("Chen Min tells David Hiu and Joe Meyer . . . this dye in cup is very easy to erase, the plastic and dye are not fix together"). Sorensen identifies no false representation that Homeland made concerning the removability of the dye. And Homeland has submitted a sworn declaration that dye shots have never been tampered with, manipulated or altered in any way. Trojan Decl. In Supp. of Homeland's Opp'n. To Rule 11 Mot., ¶ 6. The Court holds that this is not a Rule 11 issue.

#### b. Meyer Did Not Personally Perform the Dye Tests

Meyer never claimed to have personally performed the dye tests; his declaration stated that he had "personal knowledge of the injection molding process that is used to make the accused products" and that he "directed the testing that is described herein." Docket 120, ¶ 1. It is true that the Court's ruling, while correctly noting that Meyer directed the tests, in one place mistakenly stated that he personally conducted them. Docket 140 at 9. But that small, and read

-3-

in context, inconsequential error (nobody's perfect) was not the result of anything that Homeland did. And again, Sorensen presented this very same issue to the Court in its Notice of Intention to Not Depose Plaintiff Witness Joe Meyer. Docket No. 152 at 1 ("It has just been discovered that Joe Meyer did not personally conduct either the "dye tests" or create the "short shots" as Homeland has lead the Court and parties to believe."). The Court holds that this is not a Rule 11 issue.

### c. The Idea for the Dye Test Originated with Counsel

That the idea for the dye test came from counsel does not demonstrate any falsehood, since Meyer never claimed to have independently conceived of the tests. There is nothing sinister, as Sorensen argues, in counsel's statement that he "conceived of these color test shots as being the best way to put an end to the case." Rule 11 Mot. at 9. Presumably, most testing done in support of litigation is performed with the ultimate aim of "putting an end to the case." Further, Sorensen presented this very same issue to the Court in its Notice of Intention to Not Depose Plaintiff Witness Joe Meyer. Id. The Court holds that this is not a Rule 11 issue.

### d. The Dye Tests are a "Trick"

Sorensen's characterization of the dye tests as fraudulent because Homeland's expert referred to it as "a tool and die maker's trick" is a gross misinterpretation of the expert's statement, which merely explained that it would not be published in a scientific journal because it was a well known "trick of the trade" that nobody would be interested in publishing. Rule 11 Mot. at 9. Indeed, Sorensen's own expert admitted at deposition that he has seen dye testing used in the industry to "confirm . . . if material flows into a certain place or a certain direction." Trojan Decl. In Support of Homeland's Opp'n. To Rule 11 Mot., Ex. 3. at 55-5:15.[1] The Court holds that this is not a Rule 11 issue.

### e. Meyer's Claim that He Directed the Testing

Meyer's statement that he "directed the testing" is not false merely because the instructions for the testing came from counsel. Once again, Sorensen presented this exact issue to the Court in its Notice of Intention to Not Depose Plaintiff Witness Joe Meyer. The email traffic that Sorensen cites shows that Meyer was indeed the person who directed the factory floor workers to perform the testing. Kramer Decl. in Support of Rule 11 Mot., Docket 183-1 at 16-21. And Meyer has submitted a supplemental declaration explaining that he visited with the individual who ran the tests in person and spoke with him on the phone about the production of the short shots, and reviewed the results to ensure that they were produced appropriately. Meyer Decl. In Support of Homeland's Opp'n. to Rule 11 Mot., Docket 188-1. ¶¶ 5-7. The Court holds that this is not a Rule 11 issue.

---

[1] Sorensen argued at the hearing that the Court should not rely on Sorensen's expert's testimony on this point because the Court struck the portions of Sorensen's expert's report that fully explained and put into context his statements about the dye tests. But the Court is here considering the cited testimony to evaluate Sorensen's claim that Homeland committed a fraud on the Court. That is an extraordinary allegation, and Homeland is entitled to rely on record evidence to refute it. That Sorensen's expert's report might have created genuine issues of fact as to infringement if it had been timely submitted is a different question which the Court does not here consider.

EXHIBIT "4"

*f. Meyer's Representations About the Manufacturing Parameters of the Short Shots*

This issue is the only one in which Sorensen actually identifies a false statement. The Meyer declaration stated that "'short shots' were made according to the same injection molding process used to make the accused products (*i.e.* using the same parameters of injection pressure, injection speed, and injection time) as set forth below." Docket No. 120, ¶ 9. Meyer then provided the following table:

| | Number marked on cup | | | | | |
|---|---|---|---|---|---|---|
| | 40 | 45 | 50 | 55 | 60 | 70 |
| Injection Pressure (kg/N) | 40 | 45 | 50 | 55 | 60 | 70 |
| Injection Speed (cm3/s) | 40 | 45 | 45 | 45 | 50 | 50 |
| Injection time (second) | 2 | 2 | 2.5 | 3.5 | 3.5 | 4 |

*Id.* But, the recently disclosed emails submitted by Sorensen show that someone at the factory told Meyer that:

> The data for the normal injection of the tall cup is:
> Injection pressure, kg/N: 100-120
> Injection speed, cm3/[ ]s: 35
> Injection time, seconds: 4

Kramer Decl. Ex. 1 at HH000291. Meyer passed that information along to Homeland's counsel. *Id.* But, that information was not presented in the Meyer declaration, which instead recited that the short shots "were made according to the same injection molding process used to make the accused products (*i.e.* using the same parameters of injection pressure, injection speed, and injection time)." Docket No. 120, ¶ 9. In light of the email providing the normal injection parameters, the statement in the Meyer declaration is false.

But, it does not appear that anyone was mislead by that false statement. First, the table provided in the Meyer Declaration, on its face, shows different parameters for each of the short shots, so at most, only one of them could even have possibly have been made using the "same parameters of injection pressure, injection speed, and injection time" as the normal product molding process. Second, Sorensen was aware of this issue, and in its opposition to summary judgment, specifically objected to the fact that the short shots were not made according to the directions that Sorensen provided. Docket No. 140 at 10 (citing Sorensen Decl., Docket No. 130-2, ¶¶ 9-10). Sorensen asked Homeland to:

> Make a series of short shots samples in approximately 5 mm increments of flow length with all parameters being held constant during the production injection molding process as step d, above, including: same plastic material, same injection speed, same injection pressure, and same cooling time. The only correct change in making these short shots is injection time.

-5-

**EXHIBIT "4"**

Sorensen Decl., ¶ 9. Sorensen specifically complained that the short shots submitted by Homeland did not follow that process, and instead made short shots "using its own, largely undocumented, process." *Id.*, ¶ 10. In granting summary judgment, the Court noted that Sorensen declined to run its own tests to contradict Homeland's short shots, and thus had presented no evidence that the accused products have flow chambers. Docket No. 140 at 10.

Homeland notes, somewhat confusingly, that "to put to rest any doubts that Sorensen may have had concerning how the short shots were made, Homeland's counsel asked Mr. Meyer to confirm that the short shots were made according to the same parameters used to make the accused products," and that Meyer did so, as stated in his declaration. Homeland's Opp'n. to Rule 11 Mot., Docket 188 at 6. As discussed above, the "same parameters" statement appears to be the false portion of the Meyer declaration, so it is not clear why that should be reassuring.

Homeland further argues that:

> The short shots were made according to the same *process* used to make the Homeland products . . . . The short shots are, by definition, incomplete or abbreviated injections using the normal set up conditions . . . . The parameters . . . are truncated for the short shots because the short shots are incomplete moldings, but this does not change the process . . . . the parameters are smaller because the mold is not completely filled. But if the process were run to make a complete mold, the parameters would be the same.

Homeland's Opp'n. to Rule 11 Mot., Docket No. 188 at 14. That does not make much sense. Homeland is arguing that the process is the same, other than the parameters. But the parameters were exactly what was meant by "process" in the Meyer declaration, which stated that the "'short shots' were made according to the same injection molding process used to make the accused products (*i.e.* using the same parameters of injection pressure, injection speed, and injection time)." Docket No. 120 ¶ 9. The only part of the "process" that is the same in the short shots is that the same mold is used and plastic is injected. But, again, that is not what the Meyer declaration said. Homeland's attempted explanation here is unconvincing.

The Court wishes that Homeland's counsel had been more careful in preparing the Meyer declaration, and more candid, or coherent, in responding to the issue in the context of this motion. However, while the lapse is not praiseworthy, it did not deceive the Court. The Meyer declaration on its face showed that the short shots involved variations to all three parameters. Sorensen clearly understood that and objected to the difference between the way it wanted the short shots performed and the way Homeland performed them. And, the Court understood in granting summary judgment of noninfringement that the parameters were not precisely as Sorensen had prescribed. Docket No. 140 at 10.

Finally, Sorensen also argues that the Court was "hampered in addressing the falsity of Mr. Meyer's testimony" because Homeland allegedly misrepresented that Meyer lived abroad despite now living in New York. Docket No. 193 at 20. Sorensen offers as evidence a screen shot from a web service that provides the following "locations" for a Joseph Meyer, Age 67: Rhinecliff, NY, Port Ewen, NY, Beacon, NY, and Stuart, FL, as well as the fact that Meyer's most recent declaration was executed in New York. *Id.*, Suppl. Kramer Decl., Ex. 1, Docket

-6-

EXHIBIT "4"

193-3. But Meyer's declaration states that he retired in December 2012, so Sorensen has produced no evidence whatsoever that Homeland's prior representations concerning Meyer's residence were untrue. Docket No. 188-1. And, Sorensen *repeatedly* declined to depose Meyer. Docket No. 188 n.9.

### 2. The Allegedly Misleading Prosecution History

Sorensen argues that it was somehow misleading for Homeland to have noted that "during prosecution, the Patent Office rejected the claims [of the '460 patent] as being obvious in view of the Allen and Smith patents. Rule 11 Mot. at 12 (quoting Homeland's Mem. In Supp. of Mot. for Summary Judgement of Invalidity, Docket No. 158-2 at 10). Sorensen believes that it was a Rule 11 violation for Homeland to have only included that non-final rejection, without including the PTO's later, final finding that the patent was not obvious in view of Allen and Smith.

That is a bizarre argument. Of course the PTO eventually allowed the patent; if it had not, this case would not exist. The Court fully understands the prosecution history, including the addition of the threshold rate limitation that the applicant used to overcome the rejection over Allen and Smith, and discussed it extensively in the *Markman* Order, Docket No. 113, and in the Order Denying Sorensen's Motion for Reconsideration of *Markman* Ruling re Claim Construction of "Threshold Rate," Docket No. 140. This is now at least the third time Sorensen has raised the issue. Sorensen's argument that this is a Rule 11 violation is frivolous.[2]

### B. *The Court Denies Sorensen's Motion for Reconsideration or Revision*

Sorensen's Motion to Revise the Court's Order of Summary Judgment of Non-Infringement [Doc. #140] Because it Was Procured Through Fraud, Docket No. 186 ("Mot. to Revise") is based on the same attacks on the Meyer declaration that Sorensen made in its Rule 11 Motion. Sorensen requests that the Court "revise and vacate the Court's order of summary adjudication of non-infringement (Doc. #140) and, at a minimum, allow Sorensen the opportunity to complete discovery and present its case against Homeland for infringement." *Id.* at 2.

For the reasons discussed above, the Court has entirely rejected five out of the six bases on which Sorensen attacks the Meyer declaration.[3] As to the sixth – the question of whether the short shots were made by "the same process" as the accused products – the Court has explained above how the inaccuracy in the description did not affect the result reached. Further, the Court nowhere relied on any distinction between short shots in which only injection time was varied,

---

[2] The Court also notes that Sorensen's reliance on the fact that Homeland's counsel was sanctioned for a Rule 11 violation *20 years ago* highlights the weakness of its position. Docket No. 182 at 19-20.

[3] Sorensen argued at the hearing that counsel's conception of the dye tests runs afoul of *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008). *Sundance* held that it was improper to admit the testimony of a patent attorney who was not a person of skill in the art. In arguing that *Sundance* applies here, Sorensen ignores that counsel did not testify; all the testimony on the dye tests came from Mr. Meyer and Plaintiff's expert, Mr. Tobin.

EXHIBIT "4"

and those in which injection time, pressure, and speed were all varied.[4]

Sorensen also argues that it is entitled to discovery on the basis that the Court rejected the Rule 56(d) motion stating, "Had Sorensen stated that it knew, for one reason or another, that the dye or short shot tests were fabricated, and could elicit that fact in discovery, that might present a different scenario [on the Court's Rule 56(d) motion ruling]." Docket No. 186 at 4-5. But a more complete quotation of the Court's opinion is:

> To be clear, while the Court rests largely on Sorensen's lack of diligence in discovery in denying the Rule 56(d) motion, the court could just as equally rest on its lack of asserted specific facts that could aid its cause. Had Sorensen stated that it knew, for one reason or another, that the dye or short shot tests were fabricated, and could elicit that fact in discovery, that might present a different scenario. Had Sorensen stated that it could and would promptly run its own tests that would contradict the results of the dye or short shot test, that too might present a different scenario. Instead, after more than a year of opportunities to take discovery and run tests, Sorensen has presented no evidence whatsoever showing that the Accused Products do in fact contain all the claim limitations, and has not even suggested what type of evidence it might present in that regard.

Docket No. 140 at 14-15. Read in context, the Court relied on Sorensen's lack of diligence and failure to assert specific facts as required by Fed. R. Civ. P. 56(d). There is still no evidence that the tests were fabricated, and still no independent testing by Sorensen.

Sorensen is still unable to point to any affirmative evidence of infringement, so there is no basis to reach a different conclusion as to infringement. In granting summary judgment of noninfringement, the Court repeatedly held that Homeland offered evidence, which the Court was "not weighing the credibility of . . . which would be inappropriate on summary judgement motion," and that Sorensen put forward *no* evidence that the Accused Products met the limitations. Docket No. 140 at 10, 12. Once again, Sorensen relies on argument where facts – here, *new* facts – are required.

At the hearing on this motion, Sorensen argued that the reason it did not produce evidence in opposition to summary judgment was that it only had "seven days to respond" to Homeland's motion for summary judgment of noninfringement. In so arguing, Sorensen ignores that it in fact had months – not days – to develop evidence showing genuine issues that could have prevented summary judgment of noninfringement. Homeland first filed its motion on March 21, 2012. Docket No. 76. But the Court took it off calendar, Docket No. 95, and Homeland refiled it on July 26, 2012. Docket No. 118. Further, discovery had been open since

---

[4] Further, Sorensen's argument that the change in injection pressure and speed matter here undercuts Sorenson's entire theory of the '460 patent. Sorensen believes, and asserts, that increasing the thickness at less than a threshold rate controls whether gaseous voids will form in thin-wall injection molding. Docket No. 164 at 18-22 ("The '460 patent makes no reference to the speed at which fluid plastic is injected into a mold cavity."). But by arguing that injection speed and pressure materially affect the behavior of the plastic formation, Sorensen endorses the theory put forth by Homeland's expert, Dr. Tobin, who stated that it is fact those parameters, not the rate of increase in thickness of the thin wall portion, that control void formation. Docket No. 160 at 9-10.

-8-

EXHIBIT "4"

July 2011. Docket No. 140 at 14. Sorensen also argues at the hearing that it was unfair to expect it to develop expert testimony when it had "just gotten" the Court's claim construction ruling. The Court issued its claim construction order on July 5, 2012. Docket No. 113. Even if Sorensen was somehow justified in not lifting a finger to establish infringement until after the Court's claim construction ruling, which it was not, it still had about a month after that ruling before its opposition to summary judgment was due. Sorensen still provides no adequate excuse for not having come forward with evidence of infringement in response to Homeland's motion for summary judgment of noninfringement.

### C. *The Court Denies Sorensen's Request to Strike*

Sorensen requests – sort of – that the Court strike the declarations of Joseph Trojan, Chen Min, and Joe Meyer submitted by Homeland in opposition to Sorensen's Rule 11 Motion, arguing that they constitute an attempt to inappropriately pack the record for appeal with material the Court did not have before it when ruling on the underlying issues: the same rationale that led the Court to strike portions of Osswald's expert report. Docket No. 194-1; *see Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077-78 (9th Cir. 1988) (proper to strike from record on appeal papers that were filed in district court after judgment from which appeal was taken). Sorensen's request is only "sort of" because it actually requests different treatment of the declarations for purposes of each of the pending motions. Regarding the Rule 11 Motion, Sorensen "requests that the Court strictly limit any use of these three declarations as further evidence of falsity of the challenged pleadings, but for no other purpose." Docket No. 194-1 at 2. The Court would indeed only consider the declarations for that purpose. Regarding the Motion to Revise, Sorensen "requests the Court to strike all of the declarations as being after-the-fact evidence submitted on the issue of infringement offered without permission of the Court." *Id*. The Court need not do so, because, as Sorensen states, "the factual setting overlaps between the [Motion to Revise] and the co-pending [Rule 11 Motion], these two motions were not combined because Fed.R.Civ.P. Rule 11(c)(2) requires that they be separate." Docket No. 194 at 3. The Court has only considered them to evaluate the propriety of Homeland's earlier submissions, and not to bolster the Court's prior orders. Further, as Homeland only filed the declarations once, as attachments to Docket No. 188, it is not even clear how the Court could, as Sorensen requests, consider them in one context and "strike" them in another.

Even if the Court could grant the relief Sorensen seeks, it would not do so. The situation here is very different than that presented by Sorensen's submission of the entire Osswald report. In opposing invalidity, Sorensen submitted evidence that was only relevant to noninfringement: an issue the Court had already decided. Docket No. 191. Here, Sorensen moved for Rule 11 sanctions, accusing Homeland's counsel of fraud via the submission of the Meyer declaration. The signed declarations directly address the very basis of Sorensen's motion.

Sorensen also argues that the declarations raise additional complications because Chen Min appears to be a Chinese National working in mainland China. Docket No. 194-1 at 5-7. In particular, Sorensen discusses the difficulty in deposing a Chinese citizen in China, and argues that said difficulty should trigger the application 35 U.S.C. § 295, which provides:

EXHIBIT "4"

In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds –

(1) that a substantial likelihood exists that the product was made by the patented process, and

(2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine,

the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

But Sorensen has completely failed to produce evidence that there is "a substantial likelihood" that the accused products are "made from a process patented in the United States." The Court has repeatedly noted Sorensen's failure to produce any such evidence. *See, e.g.*, Docket No. 140 at 15 (Sorensen again has "presented no evidence whatsoever showing that the Accused Products do in fact contain all the claim limitations, and has not even suggested what type of evidence it might present in that regard.").

## IV. Conclusion

For the above reasons, the Court DENIES Sorensen's Motion for Rule 11 Sanctions and Motion to Revise Court's Order of Summary Judgment of Non-Infringement Because It Was Procured through Fraud.

-10-

EXHIBIT "4"

1

**PROOF OF SERVICE**

2

3    I, Patricia A. Shackelford, declare:  I am and was at the time of this service

4  working within the County of San Diego, California.  I am over the age of 18 and

5  not a party to the within action.  My business address is the Law Office of Patricia

6  A. Shackelford, 1991 Village Park Way, Suite #100, Encinitas, California 92024.

7
        On April 19, 2013 I served the following document:

8

9    **DEFENDANT SORENSEN RESEARCH AND DEVELOPMENT**
              **TRUST'S NOTICE OF APPEAL**

10

11

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| R. Joseph Trojan<br>Dylan Dang<br>TROJAN LAW OFFICES<br>9250 Wilshire Blvd., Ste. 325<br>Beverly Hills, CA 90212<br>Telephone: 310-777-8399<br>trojan@trojanlawoffices.com | Attorneys for Plaintiff<br>/Appellee Homeland<br>Housewares, LLC. | Email - Pleadings<br>Filed with the Court<br>via ECF |

12

13

14

15

16

17

18

19

20    ☐ (Personal Service) I caused to be personally served in a sealed envelope
          hand-delivered to the office of counsel during regular business hours.

21

22    ☐ (Federal Express) I deposited or caused to be deposited today with Federal

23        Express in a sealed envelope containing a true copy of the foregoing
          documents with fees fully prepaid addressed to the above noted addressee

24        for overnight delivery.

25

26    ☐ (Facsimile) I caused a true copy of the foregoing documents to be

27        transmitted by facsimile machine to the above noted addressees.  The
          facsimile transmissions were reported as complete and without error.

28    Defendant Sorensen Research and                                11cv03720-GW JEMx
      Development Trust's Notice of Appeal          -3-

1

2    ☐   (Email) I emailed a true copy of the foregoing documents to an email
3        address represented to be the correct email address for the above noted
         addressee.
4

5    ☒   (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I
         electronically filed this document via the CM/ECF system for the United
6        States District Court for the Central District of California.

7

8    ☐   (U.S. Mail) I mailed a true copy of the foregoing documents to a mail
         address represented to be the correct mail address for the above noted
9        addressee.

10

11       I declare that the foregoing is true and correct, and that this declaration was
     executed on April 19, 2013, in Encinitas, California.
12

13                                       /s/ Patricia A. Shackelford

14                                       _____

                                         Patricia A. Shackelford
15                                       Attorney for Defendant/Appellant

16

17

18

19

20

21

22

23

24

25

26

27

28   Defendant Sorensen Research and                                    11cv03720-GW JEMx
     Development Trust's Notice of Appeal          -4-

(JEMx),AO120,APPEAL,DISCOVERY,MANADR,PROTORD

# UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-03720-GW-JEM
### Internal Use Only

Homeland Housewares, LLC v. Sorensen Research and
Development Trust
Assigned to: Judge George H. Wu
Referred to: Magistrate Judge John E. McDermott
Related Case: 2:13-cv-00938-GW-JEM
Cause: 35:271 Patent Infringement

Date Filed: 04/29/2011
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**Homeland Housewares, LLC**
*a California company*

represented by **R Joseph Trojan**
Trojan Law Offices
9250 Wilshire Boulevard Suite 325
Beverly Hills, CA 90212
310-777-8399
Fax: 310-777-8348
Email: trojan@trojanlawoffices.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Sorensen Research and Development
Trust**

represented by **Melody A Kramer**
Kramer Law Office Inc
11622 El Camino Real Suite 100
San Diego, CA 92130
858-764-2452
Fax: 855-835-5520
Email: mak@kramerlawip.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Joseph McAvoy**
Kramer Law Office Inc
Of Counsel
11622 El Camino Real Suite 100
San Diego, CA 92130
855-835-5520
Fax: 888-812-1323
Email: jjm@mcavoylaw.com
*ATTORNEY TO BE NOTICED*

**Patricia Ann Shackelford**
Kramer Law Office Inc
Of Counsel
11622 El Camino Real Suite 100
San Diego, CA 92130
855-764-2452
Email: pashackelford@yahoo.com
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Hastie2market LLC**
*a California company*

represented by  **R Joseph Trojan**
Trojan Law Offices
9250 Wilshire Boulevard Suite 325
Beverly Hills, CA 90212
310-777-8399
Fax: 310-777-8348
Email: trojan@trojanlawoffices.com
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**C-Squared TV Inc**
*a Nevada company*

represented by  **R Joseph Trojan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Infomercial Consulting Corporation**

**Counter Defendant**

**Brentwood Corporate Services Inc**
*a California Corporation*

**Counter Defendant**

**Baby Bullet LLC**
*a California company*

represented by  **R Joseph Trojan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sorensen Research and Development Trust**

represented by  **Melody A Kramer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia Ann Shackelford**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Capital Brands LLC**      represented by    **R Joseph Trojan**
                                      (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Does**
*1-10*                             represented by    **R Joseph Trojan**
                                        (See above for address)
                                      *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Homeland Housewares, LLC**      represented by    **R Joseph Trojan**
*a California company*                                  (See above for address)
                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/29/2011 | 1 | COMPLAINT against Defendant Sorensen Research and Development Trust. Case assigned to Judge George H Wu for all further proceedings. Discovery referred to Magistrate Judge John E. McDermott. (Filing fee $ 350 PAID.) Jury Demanded., filed by Plaintiff Homeland Housewares, LLC.(et) (ds). (Entered: 05/02/2011) |
| 04/29/2011 | | 21 DAY Summons Issued re Complaint - (Discovery) ) 1 as to Defendant Sorensen Research and Development Trust. (et) (Entered: 05/02/2011) |
| 04/29/2011 | 2 | NOTICE of Interested Parties filed by Plaintiff Homeland Housewares, LLC. (et) (ds). (Entered: 05/02/2011) |
| 04/29/2011 | 3 | NOTICE of Related Case(s) filed by Plaintiff Homeland Housewares, LLC. Related Case(s): CV 11-02246 SJO. (et) (ds). (Entered: 05/02/2011) |
| 04/29/2011 | 4 | REPORT ON THE FILING OF AN ACTION Regarding a Patent or a Trademark (Initial Notification) filed by Homeland Housewares, LLC. (et) (Entered: 05/02/2011) |
| 04/29/2011 | 5 | NOTICE TO PARTIES OF ADR PROGRAM filed. (et) (Entered: 05/02/2011) |
| 05/03/2011 | 🔒 | (Court only) PREPARED ORDER RE TRANSFER Pursuant to General Order 08-05 (Related Case) by Clerk; related to CV 11-02246 SJO(DTBx). (rn) (Entered: 05/03/2011) |
| 05/06/2011 | 6 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 08-05 (Related Case) filed. Transfer of case declined by Judge S. James Otero, for the reasons set forth on this order. Related Case No. CV 11-02246 SJO(DTBx) (rn) (Entered: 05/06/2011) |
| 05/06/2011 | 7 | Standing Order Re Final Pre-Trial Conferences for Civil Jury Trials Before Judge George H. Wu by Judge George H Wu, (pj) (Entered: 05/06/2011) |
| 05/20/2011 | 8 | PROOF OF SERVICE Executed by Plaintiff Homeland Housewares, LLC, upon Defendant Sorensen Research and Development Trust served on 5/4/2011, answer due 5/25/2011. Service of the Summons and Complaint were executed upon Melody Kramer in compliance with Federal Rules of Civil |

| | | |
|---|---|---|
| | | Procedure by personal service. Original Summons NOT returned. (Attachments: # 1 Exhibit 1)(Trojan, R) (Entered: 05/20/2011) |
| 05/24/2011 | 9 | ANSWER to Complaint - (Discovery), Complaint - (Discovery) 1 with JURY DEMAND filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 05/24/2011) |
| 05/24/2011 | 10 | Notice of Interested Parties filed by Defendant Sorensen Research and Development Trust, identifying Sorensen Research and Development Trust, Homeland Housewares, LLC. (Kramer, Melody) (Entered: 05/24/2011) |
| 05/24/2011 | 11 | AMENDED Notice of Interested Parties filed by Defendant Sorensen Research and Development Trust, identifying Sorensen Research and Development Trust, Homeland Housewares, LLC, Capital Brands, LLC. (Kramer, Melody) (Entered: 05/24/2011) |
| 05/31/2011 | 12 | STANDING ORDER Re Final Pre-Trial Conferences for Civil Jury Trials BeforeJudge George H. Wu. You are instructed to read and to follow (unless otherwise superseded herein) the Central District of California Local Rules (henceforth "Local Rules") 16-1 through 16-15 regarding pre-trial requirements. SEE ATTACHED ORDER FOR DETAILS. (rs) (Entered: 06/01/2011) |
| 06/02/2011 | 13 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Answer to Complaint AND COUNTERCLAIM(Discovery) 9 . The following error(s) was found: Other error(s) with document(s) are specified below. Other error(s) with document(s): Pursuant General Order 10-07 Initiating documents * are NOT to be e-filed, but Manually filed with Civil Intake Section and e-mail a conformed copy to(CivilIntakeCourtDocs-LA@cacd.uscourts.gov).. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (pj) (Entered: 06/02/2011) |
| 06/02/2011 | 14 | ANSWER to Complaint 1 AND COUNTERCLAIM against Homeland Housewares, LLC, Capital Brands LLC, Does 1-10 filed by Defendant Sorensen Research and Development Trust. (lom) (pj). (Additional attachment(s) added on 6/10/2011: # 1 Summons Issued) (lom). (Entered: 06/03/2011) |
| 06/02/2011 | | 21 DAY Summons Issued re Answer to Complaint and Counterclaim 14 as to Coiunter Defendants Capital Brands LLC, Homeland Housewares, LLC. (lom) (Entered: 06/10/2011) |
| 06/07/2011 | 15 | REPLY filed by Counter Defendants Capital Brands LLC, Homeland Housewares, LLC, Plaintiff Homeland Housewares, LLC to Answer to Complaint (Discovery), Counterclaim 14 (Trojan, R) (Entered: 06/07/2011) |
| 06/13/2011 | 16 | NOTICE OF MOTION AND First MOTION to Continue Scheduling Conference from July 11, 2011 to July 18, 2011 Re: Order, Set/Reset Hearing,, 12 filed by Defendant Sorensen Research and Development Trust. Motion set for hearing on 6/27/2011 at 08:30 AM before Judge George H Wu. (Attachments: # 1 Declaration Melody A. Kramer, # 2 Proposed Order) (Kramer, Melody) (Entered: 06/13/2011) |

| 06/15/2011 | 17 | ORDER CONTINUING SCHEDULING CONFERENCE by Judge George H Wu. Scheduling Conference in this matter shall be rescheduled from July 11, 2011 at 8:30 a.m. until July 18, 2011 at 8:30 a.m. (bp) (Entered: 06/17/2011) |
| --- | --- | --- |
| 06/21/2011 | 18 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial 4-10 days, filed by Counter Defendants Capital Brands LLC, Homeland Housewares, LLC, Plaintiff Homeland Housewares, LLC.. (Trojan, R) (Entered: 06/21/2011) |
| 06/21/2011 | 19 | APPLICATION for Protective Order filed by Plaintiffs Capital Brands LLC, Homeland Housewares, LLC. (Trojan, R) (Entered: 06/21/2011) |
| 06/22/2011 | 20 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: APPLICATION for Protective Order 19 . The following error(s) was found: Case number is incorrect or missing.Proposed Document was not submitted as a separate attachment. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (es) (Entered: 06/22/2011) |
| 06/22/2011 | 21 | ORDER by Clerk of Court Counsel is instructed to re-file the Application for Protective Order and attach the Proposed Stipulated Order as an attachment to the main document (Application) pending ruling of the court. RE: Notice of Deficiency in Electronically Filed Documents (G-112), 20 (es) (Entered: 06/22/2011) |
| 06/27/2011 | 22 | STIPULATION for Protective Order filed by Plaintiff Capital Brands LLC, Homeland Housewares, LLC. (Attachments: # 1 Proposed Order PROTECTIVE ORDER)(Trojan, R) (Entered: 06/27/2011) |
| 06/27/2011 | 23 | JOINT ADR PROGRAM QUESTIONNAIRE filed by Counter Defendants Capital Brands LLC, Homeland Housewares, LLC, Plaintiff Homeland Housewares, LLC.(Trojan, R) (Entered: 06/27/2011) |
| 06/27/2011 | 🔒 | (Court only) ***Motions terminated: APPLICATION for Protective Order 19 . Termed as moot, documents were re-filed. (san) (Entered: 07/21/2011) |
| 06/28/2011 | 24 | NOTICE filed by Counterclaimant Sorensen Research and Development Trust. *Newly Discovered Accused Products* (Kramer, Melody) (Entered: 06/28/2011) |
| 06/30/2011 | 25 | PROTECTIVE ORDER by Magistrate Judge John E. McDermott. PURSUANT TO STIPULATION, IT IS SO ORDERED. 22 (es) (Entered: 07/01/2011) |
| 07/18/2011 | 28 | MINUTES: SCHEDULING CONFERENCE - by telephone: Court and counsel confer re scheduling. Defendants will file a new proposed schedule by July 19, 2011. Any objections by plaintiff will be filed by July 20, 2011. The Scheduling Conference is continued to July 21, 2011 at 8:30 a.m. Parties may appear telephonically provided that notice is given to the clerk by July 20, 2011 by Judge George H Wu. Court Reporter: Wil Wilcox. (ir) (Entered: 07/19/2011) |
| 07/19/2011 | 26 | SUPPLEMENT to Joint Report Rule 26(f) Discovery Plan 18 filed by Defendant Sorensen Research and Development Trust, Counter Claimant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 07/19/2011) |

| 07/19/2011 | 27 | OF SERVICE filed by plaintiff Sorensen Research and Development Trust, re Supplement (non-motion) 26 served on 7/19/11. (Kramer, Melody) (Entered: 07/19/2011) |
|---|---|---|
| 07/20/2011 | 29 | OBJECTIONS to Supplement (non-motion) 26 filed by Counter Defendants Capital Brands LLC, Homeland Housewares, LLC, Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 07/20/2011) |
| 07/21/2011 | 30 | MINUTES OF Scheduling Conference held before Judge George H Wu, Deadline to amend the pleadings to add/serve new parties August 5, 2011; Preliminary Invalidity Contentions August 26, 2011;Disclosure of Asserted Claims and Pre liminary InfringementContentions August 26, 2011; Simultaneously Identify Claim Terms to be Construed September 26, 2011; Joint Claim Construction Chart and Prehearing Statement October 21, 2011; Prehearing Statement hearing October 31, 2011 at 8:30 a.m. Further Scheduling Conference set for 10/31/2011 08:30 AM before Judge George H Wu. Parties will file a joint proposed schedule by October 21, 2011. Court Reporter: Pat Cueno. (pj) (Entered: 07/25/2011) |
| 08/05/2011 | 31 | AMENDED DOCUMENT filed by Defendant Sorensen Research and Development Trust, Counter Claimant Sorensen Research and Development Trust. *Defendant's Second Amended Counterclaim* (Kramer, Melody) ***STRICKEN PURSUANT TO RESPONSE BY THE COURT FILED ON 8/10/2011*** Modified on 8/10/2011 (jag). (Entered: 08/05/2011) |
| 08/10/2011 | 32 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Amended Document (Non-Motion) 31 . The following error(s) was found: Pursuant to General Order 10-07 Initiating Documents are NOT to be e-filed, but manually filed with the Civil Intake Section and e-mail a conformed copy to CivilIntakeCourtDocs-LA@cacd.uscourts.gov.. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (jag) (Entered: 08/10/2011) |
| 08/10/2011 | 33 | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN ELECTRONICALLY FILED DOCUMENTS by Judge George H Wu The document is stricken. Counsel will manually file the Second Amended Counterclaim within 24 hours of receipt of this response. RE: Amended Document (Non-Motion) 31 (jag) (Entered: 08/10/2011) |
| 08/10/2011 | 34 | SECOND AMENDED COUNTERCLAIM against Counter Defendants Capital Brands LLC, Homeland Housewares, LLC, Hastie2market LLC, C-Squared TV Inc, Infomercial Consulting Corporation, Brentwood Corporate Services Inc, Baby Bullet LLC amending Counterclaim 14 , filed by Counter Claimant Sorensen Research and Development Trust. (jp) (Additional attachment(s) added on 8/16/2011: # 1 21 Days summons Issued on Second Amended Counterclaims) (jp). (Entered: 08/11/2011) |
| 08/10/2011 | | 21 DAY Summons Issued re Amended Counterclaim, 34 as to Counter Defendants Baby Bullet LLC, Brentwood Corporate Services Inc, C-Squared TV Inc, Capital Brands LLC, Hastie2market LLC, Homeland Housewares, LLC, Infomercial Consulting Corporation. (jp) (Entered: 08/11/2011) |

| 09/19/2011 | 35 | NOTICE (Notice of Change of Telephone Number for Defendant's Counsel) filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 09/19/2011) |
|---|---|---|
| 09/20/2011 | 36 | *COUNTER-DEFENDANTS* ANSWER to Amended Counterclaim, 34 filed by PLAINTIFFS Baby Bullet LLC, C-Squared TV Inc, Capital Brands LLC, Does, Hastie2market LLC, Homeland Housewares, LLC.(Trojan, R) (Entered: 09/20/2011) |
| 10/20/2011 | 37 | NOTICE OF MOTION AND Joint MOTION to Continue Scheduling Conference from October 31, 2011 to November 7, 2011 Re: Scheduling Conference, Set/Reset Deadlines/Hearings,,,, 30 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Declaration Melody A. Kramer)(Kramer, Melody) (Entered: 10/20/2011) |
| 10/21/2011 | 38 | STATEMENT JOINT HEARING STATEMENT, PROPOSED SCHEDULE, AND CLAIM CONSTRUCTION CHART filed by Plaintiff Homeland Housewares, LLC re: Scheduling Conference, Set/Reset Deadlines/Hearings,,,, 30 . (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Trojan, R) (Entered: 10/21/2011) |
| 10/21/2011 | 39 | NOTICE OF LODGING filed *in Support of Jt Claim Construction Chart* re Statement, 38 (Kramer, Melody) (Entered: 10/21/2011) |
| 10/21/2011 | 40 | DECLARATION of DYLAN C. DANG re Statement, 38 *IN SUPPORT OF PLAINTIFFS LODGING OF EXTRINSIC EVIDENCE RE: JOINT CLAIM CONSTRUCTION* filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit 1 to DECLARATION OF DYLAN C. DANG IN SUPPORT OF PLAINTIFFS LODGING OF EXTRINSIC EVIDENCE RE: JOINT CLAIM CONSTRUCTION, # 2 Exhibit 2 to DECLARATION OF DYLAN C. DANG IN SUPPORT OF PLAINTIFFS LODGING OF EXTRINSIC EVIDENCE RE: JOINT CLAIM CONSTRUCTION, # 3 Exhibit 3 to DECLARATION OF DYLAN C. DANG IN SUPPORT OF PLAINTIFFS LODGING OF EXTRINSIC EVIDENCE RE: JOINT CLAIM CONSTRUCTION)(Trojan, R) (Entered: 10/21/2011) |
| 10/25/2011 | 41 | ORDER by Judge George H Wu: 1. The Prehearing Statement and Scheduling Conference in this matter shall be rescheduled from October 31, 2011 at 8:30 a.m. to November 7, 2011 at8:30 a.m. 37 . (pj) (Entered: 10/25/2011) |
| 10/28/2011 | 42 | NOTICE of Change of address by Melody A Kramer attorney for Defendant Sorensen Research and Development Trust. Changing attorneys address to 11622 El Camino Real, Suite #100, San Diego, CA 92130. Filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 10/28/2011) |
| 11/07/2011 | 43 | MINUTES OF PRE-HEARING STATEMENT HEARINGSCHEDULING CONFERENCE held before Judge George H Wu, Court hears oral argument. The Court adopts the Proposed Discovery Schedule attached as Exhibit B tothe Joint Hearing Statement, Proposed Schedule, and Claim Construction Chart, filed on October 21,2011, except the following:Pretrial Conference May 31, 2012 at 8:30 a.m.Jury Trial June 12, 2012 at 9:00 a.m. The Claim Construction hearing will remain set for April 2, 2012 at 8:30 a.m.The parties will also confer regarding an Attorney Settlement Officer for all settlement proceedings. Each |

| | | |
|---|---|---|
| | | side will have until November 15, 2011 to name two settlement officers. A status conference on this issue is set for November 17, 2011 at 8:30 a.m. Parties may appear telephonically provided that notice is given to the clerk by November 15, 2011. Parties are reminded to file their Notice ofSettlement Procedure Selection Form ADR-1 and proposed order forthwith. Court Reporter: Deborah Gackle. (pj) (Entered: 11/09/2011) |
| 11/15/2011 | 44 | NOTICE filed by Defendant Sorensen Research and Development Trust. *Notice of Proposed Mediators* (Kramer, Melody) (Entered: 11/15/2011) |
| 11/15/2011 | 45 | OBJECTIONS to Notice (Other) 44 filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 11/15/2011) |
| 11/15/2011 | 46 | OBJECTIONS to Notice (Other) 44 filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 11/15/2011) |
| 11/16/2011 | 47 | NOTICE AND REQUEST of Settlement Procedure Selection (Sp3); parties request to appear before a retired judicial officer or other dispute resolution body for mediation type settlement proceedings. Filed by Plaintiff Homeland Housewares, LLC (Attachments: # 1 Proposed Order re Settlement Procedure Selection: Request and Notice)(Trojan, R) (Entered: 11/16/2011) |
| 11/17/2011 | 49 | MINUTES OF TELEPHONIC Status Conference held before Judge George H Wu:, ORDER by Judge George H Wu Les Weinstein is assigned as the mediator in this matter. A Post-Mediation Status Conference is set for February 6, 2012 at 8:30 a.m. Parties can mediate up to and including February 3, 2012. Court Reporter: Nichole Rhynard. (pj) (Entered: 11/22/2011) |
| 11/18/2011 | 48 | ORDER by Judge George H Wu: Granted the NOTICE AND REQUEST of Settlement Procedure Selection (Sp3) requiring the parties to appear before a retired judicial officer or other private or non-profit dispute resolution body 47 . (jp) (Entered: 11/21/2011) |
| 11/29/2011 | 50 | EX PARTE APPLICATION for Hearing Telephonic Hearing filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Proposed Order RE: PLAINTIFF HOMELAND HOUSEWARES, LLCS EX PARTE APPLICATION FOR TELEPHONIC HEARING WITH MAGISTRATE TO COMPEL DEFENDANT TO PROVIDE AN FRCP 30(b)(6) WITNESS FOR DEPOSITION, # 2 Declaration OF DYLAN C. DANG IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS EX PARTE APPLICATION FOR A TELEPHONIC HEARING WITH MAGISTRATE JUDGE TO COMPEL DEFENDANT TO PROVIDE AN FRCP 30(b)(6) WITNESS FOR DEPOSITION, # 3 Exhibit 1 to Dang Decl., # 4 Exhibit 2 to Dang Decl., # 5 Exhibit 3 to Dang Decl., # 6 Exhibit 4 to Dang Decl., # 7 Exhibit 5 to Dang Decl., # 8 Exhibit 6 to Dang Decl., # 9 Exhibit 7 to Dang Decl., # 10 Exhibit 8 to Dang Decl., # 11 Exhibit 9 to Dang Decl., # 12 Exhibit 10 to Dang Decl., # 13 Exhibit 11 to Dang Decl.)(Trojan, R) (Entered: 11/29/2011) |
| 11/30/2011 | 51 | Opposition to Plaintiff's Ex Parte Applic for Telephonic Hrg re FRCP 30(b)(6) witness re: EX PARTE APPLICATION for Hearing Telephonic Hearing 50 filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 11/30/2011) |

| | | |
|---|---|---|
| 12/02/2011 | 52 | MINUTES (IN CHAMBERS): ORDER RE PLAINTIFF HOMELAND HOUSEWARES, LLC'S EX PARTE APPLICATION FOR TELEPHONIC HEARING WITH MAGISTRATE TO COMPEL DEFENDANT TO PROVIDE AN FRCP 30(b)(6) WITNESS FOR DEPOSITION by Magistrate Judge John E. McDermott denying 50 Ex Parte Application for Hearing. Homeland Housewares, LLC's Ex Parte Application for Telephonic Hearing to Compel Defendants to Provide and FRCP 30(b)(6) Witness for Deposition is DENIED. [See Order for further details.] (san) (Entered: 12/02/2011) |
| 01/26/2012 | 53 | NOTICE filed by Defendant Sorensen Research and Development Trust. *Notice of Entry of Appearance of John J. McAvoy* (Kramer, Melody) (Entered: 01/26/2012) |
| 01/26/2012 | 🔒 | (Court only) ***Attorney John Joseph McAvoy for Sorensen Research and Development Trust added. (ak) (Entered: 01/31/2012) |
| 02/06/2012 | 54 | MINUTES OF POST-MEDIATION Status Conference held before Judge George H Wu: The Court hears from counsel. The Court grants Defendants request to submit its reply regarding theClaim Construction hearing by March 6, 2012. The Claims Construction Hearing remains set for April 2, 2012 at 8:30 a.m. Court Reporter: Pat Cuneo. (pj) (Entered: 02/06/2012) |
| 02/21/2012 | 55 | NOTICE of Manual Filing filed by Counter Defendants Baby Bullet LLC, Homeland Housewares, LLC, Plaintiff Homeland Housewares, LLC of PLAINTIFF HOMELAND HOUSEWARES, LLCS APPLICATION TO FILE UNDER SEAL PLAINTIFFS OPENING CLAIM CONSTRUCTION BRIEF AND EXHIBITS 5 & 6 TO THE DECLARATION OF R. JOSEPH TROJAN IN SUPPORT THEREOF; [PROPOSED] ORDER GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLCS APPLICATION TO FILE UNDER SEAL PLAINTIFFS OPENING CLAIM CONSTRUCTION BRIEF AND EXHIBITS 5 & 6 TO THE DECLARATION OF R. JOSEPH TROJAN IN SUPPORT THEREOF; PLAINTIFFS OPENING CLAIM CONSTRUCTION BRIEF; and EXHIBITS 5 & 6 TO THE DECLARATION OF R. JOSEPH TROJAN IN SUPPORT THEREOF. (Trojan, R) (Entered: 02/21/2012) |
| 02/21/2012 | 56 | DECLARATION of R. Joseph Trojan filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit 1 to Decl. of Trojan, # 2 Exhibit 2 to Decl. of Trojan, # 3 Exhibit 3 to Decl. of Trojan, # 4 Exhibit 4 to Decl. of Trojan, # 5 Exhibit 5 to Decl. of Trojan (Filed under seal manually), # 6 Exhibit 6 to Decl. of Trojan(Filed under seal manually), # 7 Exhibit 7 to Decl. of Trojan, # 8 Exhibit 8 to Decl. of Trojan, # 9 Exhibit 9 to Decl. of Trojan)(Trojan, R) (Entered: 02/21/2012) |
| 02/21/2012 | 57 | BRIEF filed by Defendant Sorensen Research and Development Trust. *Defendant's Opening Claim Construction Brief Re: U.S. Patent No. 6,599,460* (Attachments: # 1 Notice of Lodgment in Support of Defendant's Opening Claim Construction Brief)(Kramer, Melody) (Entered: 02/21/2012) |
| 02/21/2012 | 58 | APPLICATION to to file UNDER SEAL Plaintiff's Opening Claim Construction Brief and Exhibits 5 and 6 filed by Plaintiff and Counter-Defendants Capital Brands LLC, Homeland Housewares, LLC. Lodged Proposed Order. (pj) (Entered: 02/23/2012) |

| 02/23/2012 | 59 | NOTICE filed by Defendant Sorensen Research and Development Trust. *Defendant's Notice of Motion to Compel Further Responses to Discovery* (Attachments: # 1 Supplement Joint Stipulation Regarding Defendant Sorensen's Motion to COmpel Pursuant to L.R. 37-2)(Kramer, Melody) (Entered: 02/23/2012) |
| 02/24/2012 | 61 | ORDER by Judge George H Wu: granting 58 Application to file UNDER SEAL Plaintiff's Opening Claim Construction Brief and Exhibits 5 and 6 to the Declaration of R. Joseph Trojan in support thereof (pj) (Entered: 02/28/2012) |
| 02/24/2012 | 🔒 62 | SEALED DOCUMENT- EXHIBITS 5 & 6 to Declaration of R. Joseph Trojan in Support of Plaintiff Homeland Housewares, LLC's Opening Claim Construction Brief. (mat) (Entered: 02/28/2012) |
| 02/24/2012 | 🔒 63 | SEALED DOCUMENT- PLAINTIFF HOMELAND HOUSEWARES, LLC'S OPENING CLAIM CONSTRUCTION BRIEF. (mat) (Entered: 02/28/2012) |
| 02/27/2012 | 60 | NOTICE OF MOTION AND Corrected MOTION to Compel Plaintiff's Further Responses to Discovery filed by Defendant Sorensen Research and Development Trust. Motion set for hearing on 3/20/2012 at 10:00 AM before Magistrate Judge John E. McDermott. (Attachments: # 1 Supplement)(Kramer, Melody) 59 Modified on 3/13/2012 (san). (Entered: 02/27/2012) |
| 02/28/2012 | 64 | REPLY filed by Plaintiff Homeland Housewares, LLC to Brief (non-motion non-appeal), Brief (non-motion non-appeal) 57 (Trojan, R) (Entered: 02/28/2012) |
| 03/01/2012 | 65 | NOTICE OF MOTION AND MOTION to Compel FURTHER RESPONSES TO PLAINTIFFS FIRST AND SECOND SETS OF DISCOVERY REQUESTS filed by Plaintiff Homeland Housewares, LLC. Motion set for hearing on 3/27/2012 at 10:00 AM before Magistrate Judge John E. McDermott. (Trojan, R) (Entered: 03/01/2012) |
| 03/01/2012 | 66 | JOINT STIPULATION to MOTION to Compel FURTHER RESPONSES TO PLAINTIFFS FIRST AND SECOND SETS OF DISCOVERY REQUESTS 65 filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 03/01/2012) |
| 03/01/2012 | 67 | DECLARATION of Dylan C. Dang in support of MOTION to Compel FURTHER RESPONSES TO PLAINTIFFS FIRST AND SECOND SETS OF DISCOVERY REQUESTS 65 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23)(Trojan, R) (Entered: 03/01/2012) |
| 03/02/2012 | 68 | NOTICE OF LODGING filed *PROPOSED ORDER RE: JOINT STIPULATION REGARDING PLAINTIFFS MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFFS FIRST AND SECOND SETS OF DISCOVERY REQUESTS PER L.R. 37* re MOTION to Compel FURTHER RESPONSES TO PLAINTIFFS FIRST AND SECOND SETS OF DISCOVERY REQUESTS 65 (Attachments: # 1 Proposed Order GRANTING JOINT STIPULATION |

| | | REGARDING PLAINTIFFS MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFFS FIRST AND SECOND SETS OF DISCOVERY REQUESTS PER L.R. 37)(Trojan, R) (Entered: 03/02/2012) |
|---|---|---|
| 03/06/2012 | 69 | BRIEF filed by Defendant Sorensen Research and Development Trust. *Defendant's Responsive Claim Construction Brief Re: U.S. Patent No. 6,599,460* (Attachments: # 1 Exhibit Supplemental Notice of Lodgment in Support of Defendant's Responsive Brief)(Kramer, Melody) (Entered: 03/06/2012) |
| 03/13/2012 | 70 | ORDER VACATING HEARING RE DEFENDANT'S CORRECTED MOTION TO COMPEL PLAINTIFF'S FURTHER RESPONSES TO DISCOVERY SENT FOR MARCH 20, 20120 by Magistrate Judge John E. McDermott, re Corrected MOTION to Compel Plaintiff's Further Responses to Discovery 60 , 59 . The hearing set for March 20, 2012 re Defendant's Corrected Motion to Compel Plaintiff's Further Responses to Discovery is hereby vacated. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The matter will be taken under advisement, and the parties will be notified of the Court's decision in writing. (san) (Entered: 03/14/2012) |
| 03/15/2012 | 71 | AMENDED DOCUMENT filed by Defendant Sorensen Research and Development Trust. *Defendant's CORRECTED Responsive Claim Construction Brief Re: U.S. Patent 6,599,460* (Kramer, Melody) (Entered: 03/15/2012) |
| 03/15/2012 | 72 | MINUTE ORDER IN CHAMBERS by Magistrate Judge John E. McDermott re: Corrected MOTION to Compel Plaintiff's Further Responses to Discovery 60 . Defendant Sorensen Research and Development Trust ("Sorensen")'s Motion to Compel additional discovery responses is DENIED without prejudice. After Sorensen delivered its portion of the Joint Stipulation, Plaintiff Homeland Housewares, LLC ("Homeland") served supplemental responses that it claims moots the Motion and even Sorensen admits the responses go some way in responding to the discovery requests in question. [See Order for further details.] (san) (Entered: 03/15/2012) |
| 03/15/2012 | 73 | MINUTE ORDER IN CHAMBERS by Magistrate Judge John E. McDermott: re MOTION to Compel FURTHER RESPONSES TO PLAINTIFFS FIRST AND SECOND SETS OF DISCOVERY REQUESTS 65 . The hearing set for March 27, 2012 re Plaintiff Homeland Housewares, LLC's Motion to Compel Further Responses to Plaintiff's First and Second Sets of Discovery Requests is hereby vacated. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The matter will be taken under advisement, and the parties will be notified of the Court's decision in writing. (san) (Entered: 03/15/2012) |
| 03/15/2012 | 74 | ORDER RE PLAINTIFF HOMELAND HOUSEWARES, LLC'S MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S FIRST AND SECOND SETS OF DISCOVERY REQUESTS by Magistrate Judge John E. McDermott denying 65 Motion to Compel. The Court DENIES the Motion except as noted below. In each instance, there are disputes between the parties as to essential |

| | | |
|---|---|---|
| | | terms that make any response beyond the ones provided all but impossible. [See Order for details.] (san) (Entered: 03/15/2012) |
| 03/19/2012 | | TEXT ONLY ENTRY (IN CHAMBERS) by Judge George H Wu; Pursuant to the request of counsel, the time to appear on the Claim Construction hearing, presently set for April 2, 2012, has changed from 8:30 a.m. to 1:30 p.m. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY.(jag) TEXT ONLY ENTRY (Entered: 03/19/2012) |
| 03/20/2012 | 🔒 | (Court only) ***Motions terminated: First MOTION to Continue Scheduling Conference from July 11, 2011 to July 18, 2011 Re: Order, Set/Reset Hearing,, 12 First MOTION to Continue Scheduling Conference from July 11, 2011 to July 18, 2011 Re: Order, Set/Reset Hearing,, 12 16 . (jag) (Entered: 03/20/2012) |
| 03/20/2012 | 75 | NOTICE of Manual Filing filed by Plaintiff Homeland Housewares, LLC of Exhs. 4, 9, 16, and 17 to TROJAN DECL.; and Exhs.1-7 and 10-11 to MEYER DECL. IN SUPPORT OF PLAINTIFF HOMELAND's MSJ; PLAINTIFF HOMELANDS MEMORANDUM IN SUPPORT OF ITS SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460. (Trojan, R) (Entered: 03/20/2012) |
| 03/21/2012 | 76 | NOTICE OF MOTION AND MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 filed by Plaintiff Homeland Housewares, LLC. Motion set for hearing on 4/23/2012 at 08:30 AM before Judge George H Wu. (Attachments: # 1 Proposed Order GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLCS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460)(Trojan, R) (Entered: 03/21/2012) |
| 03/21/2012 | 77 | STATEMENT of UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW RE: PLAINTIFFS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 03/21/2012) |
| 03/21/2012 | 78 | DECLARATION of R. Joseph Trojan in support of MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit 1 to Trojan Decl., # 2 Exhibit 2 to Trojan Decl., # 3 Exhibit 3 to Trojan Decl., # 4 Exhibit 4 to Trojan Decl. (filed under seal), # 5 Exhibit 5 to Trojan Decl., # 6 Exhibit 6 to Trojan Decl., # 7 Exhibit 7 to Trojan Decl., # 8 Exhibit 8 to Trojan Decl., # 9 Exhibit 9 to Trojan Decl. (filed under seal), # 10 Exhibit 10 to Trojan Decl., # 11 Exhibit 11 to Trojan Decl., # 12 Exhibit 12 to Trojan Decl., # 13 Exhibit 13 to Trojan Decl., # 14 Exhibit 14 to Trojan Decl., # 15 Exhibit 15 to Trojan Decl., # 16 Exhibit 16 to Trojan Decl. (filed under seal), # 17 Exhibit 17 to Trojan Decl. (filed under seal), # 18 Exhibit 18 to Trojan Decl., # 19 Exhibit 19 to Trojan Decl.)(Trojan, R) (Entered: 03/21/2012) |
| 03/21/2012 | 79 | DECLARATION of JOE MEYER in support of MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit 1 to Meyer Decl. (Filed under seal), # 2 Exhibit 2 to Meyer Decl. (Filed under seal), |

| | | |
|---|---|---|
| | | # 3 Exhibit 3 to Meyer Decl. (Filed under seal), # 4 Exhibit 4 to Meyer Decl. (Filed under seal), # 5 Exhibit 5 to Meyer Decl. (Filed under seal), # 6 Exhibit 6 to Meyer Decl. (Filed under seal), # 7 Exhibit 7 to Meyer Decl. (Filed under seal), # 8 Exhibit 8 to Meyer Decl., # 9 Exhibit 9 to Meyer Decl., # 10 Exhibit 10 to Meyer Decl.(Filed under seal), # 11 Exhibit 11 to Meyer Decl.(Filed under seal), # 12 Exhibit 12 to Meyer Decl.)(Trojan, R) (Entered: 03/21/2012) |
| 03/21/2012 | 80 | MEMORANDUM in Support of MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 03/21/2012) |
| 03/21/2012 | 81 | DECLARATION of William J. Tobin and his Expert Report in support of MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit A to Tobin Decl., # 2 Exhibit B to Tobin Decl.) (Trojan, R) (Entered: 03/21/2012) |
| 03/21/2012 | 82 | EX PARTE APPLICATION to Strike Plaintiff's Motion For Summary Judgment re MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Declaration, # 2 Proposed Order) (Kramer, Melody) (Entered: 03/21/2012) |
| 03/21/2012 | 88 | APPLICATION to file UNDER SEAL confidential documents in support of plaintiff's motion for summary judgment of non-infringement of U.S. patent no. 6,599,460 filed by Plaintiff Capital Brands LLC, Homeland Housewares, LLC. Lodged Proposed Order. (pj) (Entered: 03/23/2012) |
| 03/22/2012 | 83 | NOTICE OF MOTION AND MOTION to Compel THE CONTINUATION OF THE DEPOSITION OF PAUL BROWN *PURSUANT TO L.R. 37-2.4* filed by Plaintiff Homeland Housewares, LLC. Motion set for hearing on 4/24/2012 at 10:00 AM before Magistrate Judge John E. McDermott. (Attachments: # 1 Proposed Order GRANTING HOMELAND HOUSEWARES, LLCS MOTION TO COMPEL THE CONTINUATION OF THE DEPOSITION OF PAUL BROWN, PURSUANT TO L.R. 37-2.4)(Trojan, R) (Entered: 03/22/2012) |
| 03/22/2012 | 84 | DECLARATION of Dylan Dang in support of MOTION to Compel THE CONTINUATION OF THE DEPOSITION OF PAUL BROWN *PURSUANT TO L.R. 37-2.4* 83 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit 3 to Decl. of Dylan Dang, # 2 Exhibit 4 to Decl. of Dylan Dang)(Trojan, R) (Entered: 03/22/2012) |
| 03/22/2012 | 85 | JOINT STIPULATION to MOTION to Compel THE CONTINUATION OF THE DEPOSITION OF PAUL BROWN *PURSUANT TO L.R. 37-2.4* 83 filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 03/22/2012) |
| 03/22/2012 | 86 | REPLY in opposition EX PARTE APPLICATION to Strike Plaintiff's Motion For Summary Judgment re MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 EX PARTE APPLICATION to Strike Plaintiff's Motion For Summary Judgment re MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 82 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Declaration OF DYLAN C. DANG IN SUPPORT OF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS EX |

| | | | |
|---|---|---|---|
| | | | PARTE APPLICATION FOR AN ORDER STRIKING PLAINTIFFS MOTION FOR SUMMARY JUDGMENT, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5)(Trojan, R) (Entered: 03/22/2012) |
| 03/22/2012 | | 87 | REPLY Reply in Support EX PARTE APPLICATION to Strike Plaintiff's Motion For Summary Judgment re MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 EX PARTE APPLICATION to Strike Plaintiff's Motion For Summary Judgment re MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 82 *Reply to Opposition* filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 03/22/2012) |
| 03/25/2012 | 🔒 | 98 | SEALED DOCUMENT- CONFIDENTIAL EXHIBITS 1-7 and 10-11 to Declaration of Joe Meyer in Support of Plaintiff Homeland Housewares, LLC's MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460. (mat) (Entered: 03/30/2012) |
| 03/26/2012 | | 89 | DENIED BY ORDER OF THE COURT by Judge George H Wu: proposed order re defendants Ex Parte Application to Striking plaintiffs motion for summary judgment 82 (pj) (Entered: 03/26/2012) |
| 03/26/2012 | | 90 | NOTICE OF MOTION AND MOTION to Compel Additional Discovery Responses filed by Defendant Sorensen Research and Development Trust. Motion set for hearing on 4/17/2012 at 10:00 AM before Magistrate Judge John E. McDermott. (Attachments: # 1 Supplement Joint Stipulation Regarding Defendant Sorensen's Motion to Compel Pursuant to Court Order at Doc. #72, # 2 Supplement Joint Stipulation Regarding Defendant Sorensen's Motion to Compel Pursuant to L.R. 37-2)(Kramer, Melody) (Entered: 03/26/2012) |
| 03/26/2012 | | 93 | ORDER PLAINTIFF HOMELAND HOUSEWARES LLC'S APPLICATION TO FILE UNDER SEAL CONFIDENTIAL DOCUMENTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 by Judge George H Wu 88 (pj) (Entered: 03/28/2012) |
| 03/26/2012 | 🔒 | 97 | SEALED DOCUMENT- PLAINTIFF HOMELAND HOUSEWARES, LLC's MEMORANDUM of Points and Authorities for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460. (mat) (Entered: 03/30/2012) |
| 03/26/2012 | 🔒 | 99 | SEALED DOCUMENT- CONFIDENTIAL EXHIBITS 4, 9, 16, and 17 to Declaration of R. Joseph Trojan in Support of Plaintiff Homeland Housewares, LLC's MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460. (Attachments: Part 2, Part 3, Part 4)(mat) (Entered: 03/30/2012) |
| 03/27/2012 | | 91 | EX PARTE APPLICATION to Continue Claim Construction Hearing and Other Case Related Deadlines filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Declaration Declaration of John J. McAvoy in Support of Application to Continue Claim Construction Hearing and All Other Case Related Deadlines, # 2 Proposed Order Proposed Order) (Kramer, Melody) (Entered: 03/27/2012) |

| 03/28/2012 | 92 | OPPOSITION re: EX PARTE APPLICATION to Continue Claim Construction Hearing and Other Case Related Deadlines 91 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Declaration OF R. JOSEPH TROJAN IN SUPPORT OF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS EX PARTE APPLICATION FOR CONTINUANCE OF CLAIM CONSTRUCTION HEARING AND ALL OTHER CASE-RELATED DEADLINES, # 2 Exhibit 1 to Decl. of TROJAN)(Trojan, R) (Entered: 03/28/2012) |
|---|---|---|
| 03/28/2012 | 94 | MINUTE (IN CHAMBERS) ORDER VACATING HEARING RE DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S FURTHER RESPONSES TO DISCOVERY PURSUANT TO COURT ORDER AT DOC #72 SET FOR APRIL 17, 2012 (Docket No. 90) by Magistrate Judge John E. McDermott. The hearing set for April 17, 2012 re Defendant's Motion to Compel Plaintiff's Further Responses to Court Order at Doc #72 is hereby vacated. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The matter will be taken under advisement, and the parties will be notified of the Court's decision in writing. 72 90 (gr) (Entered: 03/28/2012) |
| 03/28/2012 | 95 | MINUTES (IN CHAMBERS): ORDER by Judge George H Wu: The Court has received Defendants Ex Parte Application for Continuance of ClaimConstruction Hearing and All Other Case-related Deadlines, filed on March 27, 2012. Defendants ex parte application is GRANTED IN PART. All deadlines and hearing dates referenced in page two of the proposed order (Docket No. 91-2) are vacated and TAKEN OFF-CALENDAR.A Scheduling Conference is set for April 9, 2012 at 8:30 a.m. A stipulation re new dates willbe filed by April 5, 2012. If parties cannot agree on dates, then each side will submit one document with suggested dates included. Additionally, parties may appear telephonically provided that notice is given to the clerk by April 5, 2012. 91 (pj) (Entered: 03/28/2012) |
| 03/28/2012 | 🔒 | (Court only) ***Terminated all deadlines and hearings. (pj) (Entered: 03/28/2012) |
| 03/28/2012 | 96 | MINUTES (IN CHAMBERS): ORDER RE DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S FURTHER RESPONSES TO DISCOVERY PURSUANT TO COURT ORDER AT DOC #72 by Magistrate Judge John E. McDermott 60 , 90 . On March 15, 2012, the Court entered an order denying without prejudice Defendant Sorensen Research and Development Trust's Motion to Compel additional discovery responses from Plaintiff Homeland Housewares, LLC. The Court held, tentatively, that Sorensen had not adequately demonstrated that Homeland's supplemental responses were unresponsive. Because the Court was not clear from the papers why the supplemental responses were not sufficiently responsive, it granted Sorensen another opportunity to pursue its Motion. The Court also made clear that it expected the parties to meet and confer before filing a supplemental Joint Stipulation. Sorensen's Motion to Compel as to Interrogatory No. 23 is GRANTED and Homeland is to produce the remaining sales information from the period April 29, 2005 to January 1, 2006 within 10 days from this Order. [See Order for further details.] (san) (Entered: 03/28/2012) |

| 04/05/2012 | 100 | PLAINTIFF HOMELAND HOUSEWARES, LLCS PROPOSED CASE SCHEDULE OF NEW DATES PURSUANT TO COURTS MARCH 28, 2012 ORDER filed by Plaintiff Homeland Housewares, LLC re: Order on Ex Parte Application to Continue,, 95 (Trojan, R) (Entered: 04/05/2012) |
|---|---|---|
| 04/05/2012 | 101 | *Defendant's Proposal for New Deadlines* (McAvoy, John) (Entered: 04/05/2012) |
| 04/09/2012 | 102 | MINUTES OF Scheduling Conference held before Judge George H Wu: Court and counsel confer re claim construction hearing. Parties will file a document with both sidespositions on items that the parties are claiming to be construed by April 26, 2012. The following will be included: 1. Identified terms; 2. Each side proposed definitions; 3. Listed explanations in terms of importance; and 4. Explanations why terms need to be interpreted and what impact on either the case or other aspects of the construction. The Markman hearing is set for May 7, 2012 at 8:30 a.m. A Joint Scheduling Report as to other deadlines and hearings will be filed by noon on May 4, 2012. Court Reporter: Pat Cuneo. (jre) (Entered: 04/10/2012) |
| 04/16/2012 | 103 | MINUTE ORDER IN CHAMBERS by Magistrate Judge John E. McDermott: re: MOTION to Compel THE CONTINUATION OF THE DEPOSITION OF PAUL BROWN 83 . The hearing set for April 24, 2012 re Plaintiff's Motion to Compel the Continuation of the Deposition of Paul Brown is hereby vacated. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The matter will be taken under advisement, and the parties will be notified of the Court's decision in writing. (san) (Entered: 04/16/2012) |
| 04/16/2012 | 104 | (IN CHAMBERS): ORDER DENYING PLAINTIFF'S MOTION TO COMPEL THE CONTINUATION OF THE DEPOSITION OF PAUL BROWN by Magistrate Judge John E. McDermott denying 83 Motion to Compel. Declaratory Plaintiff Homeland Housewares, LLC ("Homeland") seeks to compel Paul Brown to answer deposition questions that he was instructed not to answer by counsel for Defendant Sorensen Research and Development Trust ("Sorensen"). Brown is the co-inventor of U.S. Patent No. 6,599,460 (the '460 patent), which Homeland's products allegedly infringe. Brown also conducted testing in support of Sorensen's patent infringement allegations. Homeland's Motion to Compel is DENIED. [See Order for details.] (san) (Entered: 04/16/2012) |
| 04/26/2012 | 105 | BRIEF filed by Plaintiff Baby Bullet LLC, Capital Brands LLC, Homeland Housewares, LLC. *JOINT CLAIM CONSTRUCTION REPORT* (Attachments: # 1 Declaration R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPENING CLAIM CONSTRUCTION BRIEF, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 7, # 7 Exhibit 8, # 8 Exhibit 9, # 9 Exhibit 10)(Trojan, R) (Entered: 04/26/2012) |
| 04/27/2012 | 106 | NOTICE Notice of Inaccurate Joint Filing [Doc. #105] filed by Defendant Sorensen Research and Development Trust. (McAvoy, John) (Entered: 04/27/2012) |
| 05/02/2012 | 107 | Joint Scheduling Report filed by Defendant Sorensen Research and Development Trust (McAvoy, John) (Entered: 05/02/2012) |

| 05/07/2012 | 108 | MINUTES OF Markman Hearing held before Judge George H Wu: The Court's Tentative Thoughts re Markman Hearing, is circulated and attached hereto. Court hears a tutorial and oral argument. For reasons indicated on the record, the Markman Hearing is TAKEN UNDER SUBMISSION. A non-appearance status conference is set for May 24, 2012. Court to issue interpretation ruling.Court Reporter: Wil Wilcox. (jre) (Entered: 05/08/2012) |
| --- | --- | --- |
| 05/16/2012 | 109 | Defendant Sorensen's Supplemental Briefing of Claim Construction of "Threshold Rate" BRIEF filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Declaration Declaration of Jens Ole Sorensen in Support of Sorensen's Supplemental Briefing on Claim Construction of "Threshold Rate")(McAvoy, John) (Entered: 05/16/2012) |
| 05/16/2012 | 110 | NOTICE OF LODGING filed *Notice of Lodgment in Support of Sorensen's Supplemental Briefing of Claim Construction of "Threshold Rate"* re Brief (non-motion non-appeal), Brief (non-motion non-appeal) 109 (McAvoy, John) (Entered: 05/16/2012) |
| 05/17/2012 | 111 | REPLY filed by Plaintiff Homeland Housewares, LLC to Brief (non-motion non-appeal), Brief (non-motion non-appeal) 109 *Homeland's Reply to Sorensen's Supplemental Briefing of Claim Construction of "Threshold Rate"* (Trojan, R) (Entered: 05/17/2012) |
| 05/18/2012 | 112 | REPLY filed by Counter Claimant Sorensen Research and Development Trust to Brief (non-motion non-appeal), Brief (non-motion non-appeal) 109 , Notice of Lodging 110 , Reply (non-motion), Reply (non-motion) 111 , Markman Hearing, 108 (Kramer, Melody) (Entered: 05/18/2012) |
| 07/05/2012 | 113 | MINUTE ORDER (IN CHAMBERS)RULING ON MARKMAN HEARING by Judge George H Wu. Attached hereto is the Court's ruling. The Court would adopt Homeland's proposed construction of the terms"threshold rate." The Court would adopt Sorensen's proposed construction of the terms "flow chambers," "thin wall," "exit/entrance positions," and "inscribed spheres." A Status Conference is set for 7/19/2012 at 08:30 A.M. Counsel may appear telephonically provided that notice is given to the clerk by 7/17/2012. (ys) (Entered: 07/11/2012) |
| 07/16/2012 | 114 | NOTICE OF MOTION AND MOTION for Reconsideration *of Markman Ruling Re: Claim Construction of "Threshold Rate"* filed by Defendant Sorensen Research and Development Trust. Motion set for hearing on 8/23/2012 at 08:30 AM before Judge George H Wu. (Attachments: # 1 Memorandum Memorandum of Points and Authorities in Support of Defendant Sorensen's Motion for Reconsideration of Markman Ruling Re: Claim Construction of "Threshold Rate")(McAvoy, John) (Entered: 07/16/2012) |
| 07/16/2012 | 115 | NOTICE OF LODGING filed *By Defendant Sorensen Research and Development Trust* re MOTION for Reconsideration *of Markman Ruling Re: Claim Construction of "Threshold Rate"* 114 (Attachments: # 1 Declaration Declaration of Jens Ole Sorensen in, # 2 Proposed Order Proposed Order Re: Defendant Sorensen's Motion for Reconsideration of Markman Ruling Re: Claim Construction of "Threshold Rate")(McAvoy, John) (Entered: 07/16/2012) |

| | | |
|---|---|---|
| 07/18/2012 | 116 | TEXT ONLY ENTRY (IN CHAMBERS): by Judge George H Wu; The Court, on its own motion, continues the Status Conference, previously set for 07/19/2012 to 8/23/2012 08:30 AM before Judge George H Wu. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY.(jag) TEXT ONLY ENTRY (Entered: 07/18/2012) |
| 07/26/2012 | 117 | NOTICE of Manual Filing filed by Plaintiff Homeland Housewares, LLC of Application to file Under Seal; proposed order; Exhs. 4, 9, 16, and 17 to TROJAN DECL.; and Exhs.1-7 and 10-11 to MEYER DECL. IN SUPPORT OF PLTF HOMELAND's RENEWED MSJ; PLAINTIFF HOMELANDS MEMORANDUM IN SUPPORT OF ITS SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460. (Trojan, R) (Entered: 07/26/2012) |
| 07/26/2012 | 118 | NOTICE OF MOTION AND MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 filed by Plaintiff Homeland Housewares, LLC. Motion set for hearing on 8/23/2012 at 08:30 AM before Judge George H Wu. (Attachments: # 1 Proposed Order GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLCS RENEWED MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460, # 2 Memorandum (redacted) of POINTS AND AUTHORITIES FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460, # 3 PLAINTIFF HOMELAND HOUSEWARES, LLCS STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW RE: PLAINTIFFS RENEWED MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460)(Trojan, R) (Entered: 07/26/2012) |
| 07/26/2012 | 119 | DECLARATION of WILLIAM J. TOBIN in support of MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 118 *and Expert Report* filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Trojan, R) (Entered: 07/26/2012) |
| 07/26/2012 | 120 | DECLARATION of JOE MEYER in support of MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 118 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Trojan, R) (Entered: 07/26/2012) |
| 07/26/2012 | 121 | DECLARATION of R. Joseph Trojan in support of MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 118 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19)(Trojan, R) (Entered: 07/26/2012) |
| 07/26/2012 | 122 | APPLICATION to file under seal confidential documents in support of Plaintiff's Renewed Motion for Summary Judgment of of Non-Infringement of U.S. Patent No. 6,599,460 filed by Plaintiffs and counter-defendants Capital Brands LLC, Homeland Housewares, LLC. (lom) (Entered: 07/30/2012) |

| 07/26/2012 | 🔒 125 | SEALED DOCUMENT- PLAINTIFF HOMELAND HOUSEWARES, LLC'S APPLICATION to File Under Seal Confidential Documents in Support of Plaintiff's Renewed Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,599,460. (mat) (Entered: 07/30/2012) |
|---|---|---|
| 07/29/2012 | 123 | ORDER by Judge George H Wu: granting 122 Application to file documents under seal in Support of Plaintiff's Renewed Motion for Summary Judgment: Exhibits 4, 9, 16, and 17 to the Declaration of R. Joseph Trojan; Exhibits 1-7 and 10-11 to the Declaraion of Joe Meyer; and, Homeland's Memorandum. (lom) (Entered: 07/30/2012) |
| 07/29/2012 | 🔒 124 | SEALED DOCUMENT- PLAINTIFF HOMELAND HOUSEWARES, LLC'S MEMORANDUM of Points and Authorities in Support of Plaintiff's Renewed Motion for Summary Judgment of NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460. (mat) (Entered: 07/30/2012) |
| 07/29/2012 | 🔒 126 | SEALED DOCUMENT- CONFIDENTIAL EXHIBITS 1-7 and 10-11 to Declaration of Joe Meyer in Support of Plaintiff Homeland Housewares, LLC's MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460. (Attachments: Part 2, Part 3, Part 4, Part 5)(mat) (Entered: 07/30/2012) |
| 07/29/2012 | 🔒 127 | SEALED DOCUMENT- CONFIDENTIAL EXHIBITS 4, 9, 16, and 17 to Declaration of R. Joseph Trojan in Support of Plaintiff Homeland Housewares, LLC's Motion for Summary Judgment of NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460. (Attachments: Part 2, Part 3, Part 4, Part 5, Part 6, Part 7, Part 8, Part 9)(mat) Modified on 7/31/2012 (mat). (Entered: 07/31/2012) |
| 08/02/2012 | 128 | OPPOSITION to MOTION for Reconsideration *of Markman Ruling Re: Claim Construction of "Threshold Rate"* 114 filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 08/02/2012) |
| 08/02/2012 | 129 | MEMORANDUM in Opposition *Plaintiff's Renewed Motion for Summary Judgment of Non-Infringement of Patent No. 6,599460* filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Defendant's Response to Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law Re: Plaintiff's Renewed Motion for Summary Judgment of Non-Infringement of Patent No. 6,599,460, # 2 Defendant's Evidentiary Ojections to Evidence OFfered by Plaintiff in Support of Plaintiff's Renewed Motion for Summary Judgment of Non-Infringement)(Kramer, Melody) (Entered: 08/02/2012) |
| 08/02/2012 | 130 | STATEMENT of Defendant's Statement of Genuine Disputes in Support of Opposition to Plaintiff's Renewed Motion for Summary Judgment of Non-Infringement MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 118 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Declaration Declaration of Melody A. Kramer in Opposition to Plaintiff's Renewed Motion for Summary Judgment of Non-Infringement, # 2 Declaration Declaration of Ole Sorensen in Opposition to Plaintiff's Renewed Motion for Summary Judgment of Non-Infringement, # 3 Declaration Declaration of John J. McAvoy in Opposition to Plaintiff's Renewed Motion for Summary Judgment |

| | | of Non-Infringement)(Kramer, Melody) (Entered: 08/02/2012) |
|---|---|---|
| 08/02/2012 | [131](#) | SUPPLEMENT *Request for Judicial Notice in Support of Opposition to Plaintiff's Renewed Motion For Summary Judgment of Non-Infringement* filed by Defendant Sorensen Research and Development Trust. (Attachments: # [1](#) Supplement Proof of Service Defendants Opposition To Plaintiffs Renewed Motion For Summary Judgment Of Non-Infringement Of U.S. Patent No. 6,599,460; Defendants Evidentiary Objections To Evidence Offered By Plaintiff; Defendants Response To Plaintiffs Statement Of Uncontroverted Facts And Conclusions Of Law; Defendants Statement Of Genuine Disputes; Declaration Of Melody A. Kramer; Declaration Of Jens Ole Sorensen: Declaration Of John J. Mcavoy; and Defendants Request For Judicial Notice In Support Of Opposition To Plaintiffs Renewed Motion For Summary Judgment Of Non-Infringement)(Kramer, Melody) (Entered: 08/02/2012) |
| 08/06/2012 | [132](#) | DEFENDANT'S NOTICE AND REQUEST TO CROSS EXAMINE DECLARANTS TO PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT OR ORDER DECLARATIONS TO BE DISREGARDED re MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 [118](#) filed by Defendant Sorensen Research and Development Trust. (Attachments: # [1](#) Proposed Order)(Kramer, Melody) (Entered: 08/06/2012) |
| 08/08/2012 | [133](#) | MINUTE ORDER IN CHAMBERS by Judge George H Wu: DENYING Defendant's Request to Cross-Examine Declarants [132](#) . SEE DOCUMENT FOR DETAILS. (jag) (Entered: 08/08/2012) |
| 08/08/2012 | [134](#) | AMENDED MINUTES held before Judge George H Wu re [133](#) . (jag) (Entered: 08/08/2012) |
| 08/09/2012 | 🔒 | (Court only) ***Motions terminated: APPLICATION to Seal [125](#) . (jag) (Entered: 08/09/2012) |
| 08/09/2012 | [135](#) | REPLY in support of MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 [118](#) filed by Plaintiff Homeland Housewares, LLC. (Attachments: # [1](#) Declaration (Supplemental) OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS RENEWED MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460, # [2](#) Declaration 1 to SUPPLEMENTAL DECLARATION OF R. JOSEPH TROJAN, # [3](#) Exhibit 2 to SUPPLEMENTAL DECLARATION OF R. JOSEPH TROJAN, # [4](#) Exhibit 3 to SUPPLEMENTAL DECLARATION OF R. JOSEPH TROJAN, # [5](#) Exhibit 4 to SUPPLEMENTAL DECLARATION OF R. JOSEPH TROJAN, # [6](#) Exhibit 5 to SUPPLEMENTAL DECLARATION OF R. JOSEPH TROJAN, # [7](#) Exhibit 6 to SUPPLEMENTAL DECLARATION OF R. JOSEPH TROJAN)(Trojan, R) (Entered: 08/09/2012) |
| 08/09/2012 | [136](#) | OBJECTIONS to Statement (Motion related), Statement (Motion related), Statement (Motion related), Statement (Motion related) [130](#) *EVIDENTIARY OBJECTIONS RE: DEFENDANTS OPPOSITION TO PLAINTIFFS RENEWED MOTION FOR SUMMARY JUDGMENT* filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 08/09/2012) |

| 08/09/2012 | 137 | NOTICE OF ERRATA filed by Plaintiff Homeland Housewares, LLC. correcting Reply (Motion related), Reply (Motion related), Reply (Motion related), Reply (Motion related) 135 (Attachments: # 1 Declaration (Supplemental) OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS RENEWED MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460) (Trojan, R) (Entered: 08/09/2012) |
|---|---|---|
| 08/09/2012 | 138 | REPLY Reply *Defendant Sorensens Reply To Plaintiffs Opposition To Motion For Reconsideration of Markman Ruling Re Claim Construction Of Threshold Rate* filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 08/09/2012) |
| 08/16/2012 | 139 | NOTICE of Appearance filed by attorney Melody A Kramer on behalf of Defendant Sorensen Research and Development Trust (Kramer, Melody) (Entered: 08/16/2012) |
| 08/16/2012 | 🔒 | (Court only) ***Attorney Patricia Ann Shackelford for Sorensen Research and Development Trust added. (lt) (Entered: 08/20/2012) |
| 08/23/2012 | 140 | MINUTES: Plaintiff/Counter Defendants' Renewed Motion for Summary Judgment on Non-Infringement of U.S. Patent No. 6,599,460 118 ; Defendant's Motion for Reconsideration of Markman Ruling re Claim Construction of "Threshold Rate" 114 ; Status Conference: Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's final ruling. The Court GRANTS Homeland's motion for summary judgment as to non-infringement. This ruling will also be dispositive of Sorensen's counterclaim for infringement. The case will move forward as to Homeland's invalidity/unenforceability declaration judgment claim. Counsel for plaintiff will file a proposed order forthwith. Defendant's Motion for Reconsideration of Markman Ruling re Claim Construction of "Threshold Rate" is DENIED. The status conference is continued to 8/30/12 at 8:30 a.m. Parties may appear telephonically provided that counsel advise the clerk by 8/28/12 by Judge George H Wu. Court Reporter: Laura Elias. (ir) (Entered: 08/24/2012) |
| 08/28/2012 | 141 | APPLICATION for Order for GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLCS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 and DENYING DEFENDANTS MOTION FOR RECONSIDERATION OF MARKMAN RULING RE: CLAIM CONSTRUCTION OF THRESHOLD RATE filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 08/28/2012) |
| 08/30/2012 | 142 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: APPLICATION for Order for GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLCS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 and DENYING DEFENDANTS MOTION FOR RECONSIDERATION OF MARKMAN RULING RE: CLAIM CONSTRUCTION OF THRESHOLD 141 . The following error(s) was found: Incorrect event selected.Proposed Document was not submitted as a separate attachment.Title page is missing. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. |

| | | |
|---|---|---|
| | | You need not take any action in response to this notice unless and until the court directs you to do so. (pj) (Entered: 08/30/2012) |
| 08/30/2012 | 🔒 | (Court only) ***Motions terminated: APPLICATION for Order for GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLCS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 and DENYING DEFENDANTS MOTION FOR RECONSIDERATION OF MARKMAN RULING RE: CLAIM CONSTRUCTION OF THRESHOLD 141 . (pj) (Entered: 08/30/2012) |
| 08/30/2012 | 143 | ORDER GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLCS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENTOF U.S. PATENT NO. 6,599,460 and DENYING DEFENDANTS MOTION FOR RECONSIDERATION OF MARKMAN RULING RE: CLAIM CONSTRUCTION OF THRESHOLD RATE by Judge George H Wu: denying 114 Motion for Reconsideration re MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 118 (pj) (Entered: 08/30/2012) |
| 08/30/2012 | 144 | MINUTES OF Telephonic Status Conference held before Judge George H Wu: Court and counsel confer re proposed order filed on August 28, 2012. Court signs the order.Parties will confer re scheduling and any remaining issues. Joint Report will be filed by noon on September 4, 2012. The status conference is continued to September 6, 2012 at 8:30 a.m. Counsel may appear telephonically provided that notice is given to the clerk by September 4, 2012. Court Reporter: Wil Wilcox. (pj) (Entered: 08/31/2012) |
| 09/04/2012 | 145 | JOINT REPORT PER COURT ORDER FROM AUGUST 30, 2012 STATUS CONFERENCE REPORT filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 09/04/2012) |
| 09/06/2012 | 146 | MINUTES: STATUS CONFERENCE: Court and counsel confer. Defendant's motion to dismiss will be filed and set for hearing on October 18, 2012 at 8:30 a.m. The Court will allow discovery issues within the motion to dismiss by Judge George H Wu Court Reporter: Theresa Lanza. (ir) (Main Document 146 replaced on 10/3/2012) (im). Modified on 10/3/2012 (im). (Entered: 09/10/2012) |
| 09/17/2012 | 147 | NOTICE OF MOTION AND MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) filed by Defendant Sorensen Research and Development Trust. Motion set for hearing on 10/18/2012 at 08:30 AM before Judge George H Wu. (Attachments: # 1 Memorandum Memorandum of Points and Authorities in SUpport of Defendant's Motion to DIsmiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b), # 2 Proposed Order)(Kramer, Melody) (Entered: 09/17/2012) |
| 09/17/2012 | 148 | DECLARATION of Melody A. Kramer In Support of Defendant's Motion to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of |

| | | |
|---|---|---|
| | | Non-Infringement Under FRCP 54(b) MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) 147 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4, # 5 Exhibit Exhibit 5, # 6 Exhibit Exhibit 6, # 7 Exhibit Exhibit 7, # 8 Exhibit Exhibit 8, # 9 Exhibit Exhibit 9, # 10 Exhibit Exhibit 10, # 11 Exhibit Exhibit 11)(Kramer, Melody) (Entered: 09/17/2012) |
| 09/27/2012 | 149 | MEMORANDUM in Opposition to MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) 147 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Declaration OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANT SORENSEN R&D TRUSTS MOTION TO DISMISS DECLARATORY CLAIM FOR PATENT INVALIDITY AND UNENFORCEABILITY OR, IN THE ALTERNATIVE, FOR ENTRY OF FINAL JUDGMENT OF NON-INFRINGEMENT UNDER FRCP 54(b), # 2 Exhibit 1, # 3 Exhibit 2)(Trojan, R) (Entered: 09/27/2012) |
| 10/04/2012 | 150 | REPLY Reply in Support of Motion to Dismiss MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) 147 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Declaration Supplemental Declaration of Melody A. Kramer in Support of Motion to Dismiss)(Kramer, Melody) (Entered: 10/04/2012) |
| 10/18/2012 | 151 | MINUTES OF DEFENDANT'S MOTION TO DISMISS DECLARATORY CLAIM FOR PATENT INVALIDITY AND UNENFORCEABILITY OR, IN THE ALTERNATIVE, FOR ENTRY OF FINAL JUDGMENT OF NONINFRINGEMENT UNDER FRCP 54(b) (filed 09/17/12) 147 Motion Hearing held before Judge George H Wu:, Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's final ruling, except for the Hong Kong deposition scheduling. The Court GRANTS IN PART/DENIES IN PART the above entitled motion. The matter is continued to November 8, 2012 at 8:30 a.m. Defendants objection brief will be filed by October 26, 2012; and Plaintiffs response will be filed by November 2, 2012. Court Reporter: Wil Wilcox. (pj) (Entered: 10/22/2012) |

| | | |
|---|---|---|
| 10/26/2012 | 152 | NOTICE filed by Defendant Sorensen Research and Development Trust. *Defendants Notice of Intention To Not Depose Plaintiff Witness Joe Meyer* (Attachments: # 1 Declaration Declaration of Melody Kramer in Support of Defendants Notice of Intention To Not Depose Plaintiff Witness Joe Meyer) (Kramer, Melody) (Entered: 10/26/2012) |
| 11/01/2012 | 153 | RESPONSE filed by Plaintiff Homeland Housewares, LLCto Notice (Other), Notice (Other) 152 (Trojan, R) (Entered: 11/01/2012) |
| 11/05/2012 | 🔒 | (Court only) ***Motions terminated: MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) MOTION to Dismiss Declaratory Claim For Patent Invalidity and Unenforceability or, in the Alternative, For Entry of Final Judgment of Non-Infringement Under FRCP 54(b) 147 . Motion ruled on October 18, 2012 - Docket No. 151. (jag) (Entered: 11/05/2012) |
| 11/05/2012 | 154 | MINUTE ORDER IN CHAMBERS by Judge George H Wu: The hearing set for November 8, 2012 on Defendant Sorensen Research and Development Trust's objections to the admissibility of its proposed deposition of Hong Kong resident Joe Meyer isVACATED as moot in light of Defendant's Notice of Intention to Not Depose Plaintiff Witness Joe Meyer, Docket No. 152. (jag) (Entered: 11/05/2012) |
| 11/19/2012 | 155 | Joint STIPULATION to Reschedule Briefing and Hearing Schedule filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Proposed Order)(Kramer, Melody) (Entered: 11/19/2012) |
| 11/26/2012 | 156 | ORDER MODIFICATION OF BRIEFING AND HEARINGSCHEDULE by Judge George H Wu, re Stipulation to Reschedule 155 Homeland deposition of Sorensen validity expert Dec 6, 2012Homelands Motion for Summary Judgment of Invalidity due Dec 14, 2012; Sorensens Opposition Jan 11, 2013;Homelands Reply Jan 25, 2013;Hearing on Homelands Motion for SummaryJudgment of Invalidity Feb 7, 2013 at 8:30 a.m. (pj) (Entered: 11/27/2012) |
| 12/14/2012 | 157 | NOTICE of Manual Filing filed by Plaintiff Homeland Housewares, LLC of PLAINTIFF HOMELAND HOUSEWARES, LLCS APPLICATION TO FILE UNDER SEAL EXHIBITS 2, 6, AND 7 TO THE DECLARATION OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFFS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,599,460; proposed order; and EXHIBITS 2, 6, AND 7 TO THE DECLARATION OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFFS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,599,460. (Trojan, R) (Entered: 12/14/2012) |
| 12/14/2012 | 158 | NOTICE OF MOTION AND MOTION for Summary Judgment as to INVALIDITY OF U.S. PATENT NO. 6,599,460 filed by Plaintiff Homeland Housewares, LLC. Motion set for hearing on 2/7/2013 at 08:30 AM before Judge George H Wu. (Attachments: # 1 Proposed Order GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLCS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,599,460, |

| | | |
|---|---|---|
| | | # 2 Memorandum OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,599,460, # 3 PLAINTIFF HOMELAND HOUSEWARES, LLCS STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW RE: PLAINTIFFS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,599,460)(Trojan, R) (Entered: 12/14/2012) |
| 12/14/2012 | 159 | DECLARATION of R. Joseph Trojan in support of MOTION for Summary Judgment as to INVALIDITY OF U.S. PATENT NO. 6,599,460 158 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9)(Trojan, R) (Entered: 12/14/2012) |
| 12/14/2012 | 160 | DECLARATION of William J. Tobin in support of MOTION for Summary Judgment as to INVALIDITY OF U.S. PATENT NO. 6,599,460 158 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Trojan, R) (Entered: 12/14/2012) |
| 12/14/2012 | 161 | APPLICATION to File Under Seal Exhibits 2, 6, and 7 to the Declaration of R. Joseph Trojan in support of Plaintiff's Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,599,460 filed by Plaintiff Homeland Housewares, LLC., Counter Defendants Capital Brands LLC. Lodged Proposed Order. (jp) (Entered: 12/17/2012) |
| 12/18/2012 | 162 | ORDER GRANTING Plaintiff's Application to File Under Seal Exhibits 2, 6, and 7 to the Declaration of R. Joseph Trojan in support of Plaintiff's Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,599,460 161 by Judge George H Wu. (jp) (Entered: 12/20/2012) |
| 12/18/2012 | 🔒 163 | SEALED DOCUMENT- EXHIBITS 2, 6, and 7 to the Declaration of R. Joseph Trojan in Support of Plaintiff's Motion for Summary Judgmentof INVALIDITY OF U.S. PATENT NO. 6,599,460. (Attachments: Part 2)(mat) (Entered: 12/20/2012) |
| 01/11/2013 | 164 | MEMORANDUM in Opposition to MOTION for Summary Judgment as to INVALIDITY OF U.S. PATENT NO. 6,599,460 158 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Memorandum Defendant's Statement of Genuine Disputes and Identification of Lack of Supporting Evidence Re: Plaintiff's Motion for Summary Judgment of Invalidity, # 2 Declaration Declaration and Expert Report of Tim A. Osswald in Support of Opposition to Motion for Summary Judgement of Invalidity, # 3 Declaration Declaration of Ole Sorensen in Support of Opposition to Motion for Summary Judgement of Invalidity, # 4 Supplement Request for Judicial Notice) (Kramer, Melody) (Entered: 01/11/2013) |
| 01/11/2013 | 165 | DECLARATION of Melody A. Kramer In Opposition to Defendant's Motion for Summary Judgment of Invalidity MOTION for Summary Judgment as to INVALIDITY OF U.S. PATENT NO. 6,599,460 158 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Kramer, Melody) (Entered: 01/11/2013) |

| | | |
|---|---|---|
| 01/17/2013 | 166 | DECLARATION of Melody A. Kramer Corrected Declaration Of Melody A. Kramer In Support Of Defendants Opposition To Plaintiff Homeland Housewares, Llcs Motion For Summary Judgment Of Invalidity Of U.S. Patent No. 6,599,460 MOTION for Summary Judgment as to INVALIDITY OF U.S. PATENT NO. 6,599,460 158 filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 01/17/2013) |
| 01/24/2013 | 167 | NOTICE OF MOTION AND Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 filed by Defendant Sorensen Research and Development Trust. Motion set for hearing on 2/28/2013 at 08:30 AM before Judge George H. Wu. (Attachments: # 1 Memorandum Memorandum Of Points And Authorities In Support of Defendants Cross Motion For Summary Judgment of Validity of U.S. Patent No. 6,599,460, # 2 Supplement Separate Statement of Undisputed Facts and Contentions of Law, # 3 Declaration Declaration and Expert Report of Dr. Tim A. Osswald, Ph.D., # 4 Declaration Declaration of Jens Ole Sorensen, # 5 Supplement Request for Judicial Notice, # 6 Proposed Order)(Kramer, Melody) (Entered: 01/24/2013) |
| 01/24/2013 | 168 | DECLARATION of Melody A. Kramer In Support of Defendants Cross Motion for Summary Judgment of Validity of U.S. Patent No. 6,599,460 Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Kramer, Melody) (Entered: 01/24/2013) |
| 01/24/2013 | 169 | EXHIBIT Exhbit 6_Part 1 to Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 *Exhibit 6 (part 1) of Declaration of Melody A. Kramer In Support of Defendants Cross Motion for Summary Judgment of Validity of U.S. Patent No. 6,599,460* filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 01/24/2013) |
| 01/24/2013 | 170 | EXHIBIT Exhibit 6 (Part 2) to Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 *Exhibit 6 (Part 2) to Declaration of Melody A. Kramer In Support of Defendants Cross Motion for Summary Judgment of Validity of U.S. Patent No. 6,599,460* filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 01/24/2013) |
| 01/24/2013 | 171 | EXHIBIT Exhibit 6 (Part 3) to Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 *Exhibit (Part 3) to Declaration of Melody A. Kramer In Support of Defendants Cross Motion for Summary Judgment of Validity of U.S. Patent No. 6,599,460* filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 01/24/2013) |
| 01/24/2013 | 172 | EXHIBIT Exhibit 6 (Part 4) to Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 *Exhibit 6 (Part 4) to Declaration of Melody A. Kramer In Support of Defendants Cross Motion for Summary Judgment of Validity of U.S. Patent No. 6,599,460* filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 01/24/2013) |
| 01/24/2013 | 173 | EXHIBIT 7 - 13 to Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 *Exhibit 7 to Declaration of Melody A. Kramer* filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Exhibit 8 to Declaration of Melody A. Kramer, # 2 Exhibit 9 |

| | | |
|---|---|---|
| | | to Declaration of Melody A. Kramer, # 3 Exhibit 10 to Declaration of Melody A. Kramer, # 4 Exhibit 11 to Declaration of Melody A. Kramer, # 5 Exhibit 12 to Declaration of Melody A. Kramer, # 6 Exhibit 13to Declaration of Melody A. Kramer)(Kramer, Melody) (Entered: 01/24/2013) |
| 01/25/2013 | 174 | REPLY in support of MOTION for Summary Judgment as to INVALIDITY OF U.S. PATENT NO. 6,599,460 158 filed by Plaintiff Homeland Housewares, LLC. (Trojan, R) (Entered: 01/25/2013) |
| 01/25/2013 | 175 | REQUEST to Strike Portions of MEMORANDUM in Opposition to Motion,, 164 *Declaration and Expert Report Regarding Validity of U.S. Patent No. 6,599,460 of Dr. Tim A. Osswald at Dkt #164-2* filed by Plaintiff Homeland Housewares, LLC. Request set for hearing on 2/7/2013 at 08:30 AM before Judge George H. Wu. (Trojan, R) (Entered: 01/25/2013) |
| 01/25/2013 | 176 | SCHEDULING NOTICE TEXT ONLY ENTRY - IN CHAMBERS by Judge George H. Wu. On the Court's own motion, the Motion for Summary Judgment 158 and Request to Strike 175 hearings are continued to February 28, 2013 at 8:30 AM. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY.(kti) TEXT ONLY ENTRY (Entered: 01/25/2013) |
| 02/07/2013 | 177 | Opposition to Plaintiff's Request to Strike Evidence re: Request to Strike, Request for Relief,, 175 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Declaration Declaration of Melody A. Kramer in Support of Opposition to Motion to Strike)(Kramer, Melody) (Entered: 02/07/2013) |
| 02/07/2013 | 178 | OPPOSITION to Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 filed by Plaintiff Homeland Housewares, LLC, Counter Defendant Homeland Housewares, LLC. (Attachments: # 1 Declaration and Expert Report of William J. Tobin, # 2 Exhibit A, # 3 Exhibit B)(Trojan, R) (Entered: 02/07/2013) |
| 02/07/2013 | 179 | STATEMENT of GENUINE DISPUTES OF MATERIAL FACT IN SUPPORT OF PLAINTIFFS OPPOSITION TO DEFENDANTS CROSS-MOTION FOR SUMMARY JUDGMENT OF VALIDITY OF U.S. PATENT NO. 6,599,460 Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 filed by Plaintiff Homeland Housewares, LLC, Counter Defendant Homeland Housewares, LLC. (Trojan, R) (Entered: 02/07/2013) |
| 02/07/2013 | 180 | REQUEST to Strike portions of the Declaration and Expert Report Regarding Validity of U.S. Patent No. 6,599,460 of Dr. Tim A. Osswald at Dkt #167-3 (and corresponding portions at Dkt #170 (Exh. 6) and Dkt #171) submitted by Defendant Sorensen Exhibit to Motion, 170 , Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 , Exhibit to Motion, 171 filed by Plaintiff Homeland Housewares, LLC. Request set for hearing on 2/28/2013 at 08:30 AM before Judge George H. Wu. (Trojan, R) (Entered: 02/07/2013) |
| 02/08/2013 | 181 | REPLY filed by Plaintiff Homeland Housewares, LLC, Counter Defendant Homeland Housewares, LLC to Objection/Opposition (Motion related), Objection/Opposition (Motion related) 177 (Attachments: # 1 Declaration OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS REPLY TO DEFENDANTS OPPOSITION TO |

| | | PLAINTIFFS REQUEST TO STRIKE EVIDENCE, # 2 Exhibit 1, # 3 Exhibit 2)(Trojan, R) (Entered: 02/08/2013) |
|---|---|---|
| 02/14/2013 | 182 | NOTICE OF MOTION AND MOTION for Sanctions Pursuant to Fed.R.Civ.P. Rule 11 filed by Defendant Sorensen Research and Development Trust. Motion set for hearing on 3/21/2013 at 08:30 AM before Judge George H. Wu. (Attachments: # 1 Memorandum Points and Authorities in Support of Motion for Sanctions Pursuant to Fed.R.Civ.P. Rule 11, # 2 Proposed Order)(Kramer, Melody) (Entered: 02/14/2013) |
| 02/14/2013 | 183 | DECLARATION of Melody A. Kramer In Support of Defendant's Motion for Sanctions Pursuant to Fed.R.Civ.P. Rule 11 MOTION for Sanctions Pursuant to Fed.R.Civ.P. Rule 11 182 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Kramer, Melody) (Entered: 02/14/2013) |
| 02/14/2013 | 184 | Opposition Opposition re: Request to Strike, Request for Relief,,,,,,,,,, 180 *Opposition to Plaintiff Homeland Housewares, LLC 2nd Request to Strike Evidence Submitted by Defendant in Support of Its Cross-Motion for Summary Judgment of Validity of U.S. Patent No. 6,599,460* filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 02/14/2013) |
| 02/14/2013 | 185 | RESPONSE IN SUPPORT of Cross MOTION for Summary Judgment as to As to Validity of U.S. Patent No. 6,599,460 167 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Declaration Melody A. Kramer, # 2 Supplement Request to Strike Argument Re: Withdrawn Invalidity Contention ("Thin Wall"))(Kramer, Melody) (Entered: 02/14/2013) |
| 02/21/2013 | 186 | NOTICE OF MOTION AND MOTION for Reconsideration *to Revise Court's Order of Summary Judgment of Non-Infringement [Doc. #140] Because It Was Procured Through Fraud* filed by Defendant Sorensen Research and Development Trust. Motion set for hearing on 3/21/2013 at 08:30 AM before Judge George H. Wu. (Attachments: # 1 Memorandum Points & Authorities in Support of Defendant's Motion to Revise Court's Order of Summary Judgment of Non-Infringement [Doc. #140] Because It Was Procured Through Fraud, # 2 Proposed Order)(Kramer, Melody) (Entered: 02/21/2013) |
| 02/21/2013 | 187 | DECLARATION of Melody A. Kramer in Support of Defendant's Motion to Revise Court's Order of Summary Judgment of Non-Infringement [Doc. #140] Because It Was Procured Through Fraud MOTION for Reconsideration *to Revise Court's Order of Summary Judgment of Non-Infringement [Doc. #140] Because It Was Procured Through Fraud* 186 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Kramer, Melody) (Entered: 02/21/2013) |
| 02/27/2013 | 188 | OPPOSITION in opposition to re: MOTION for Sanctions Pursuant to Fed.R.Civ.P. Rule 11 182 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Declaration OF JOE MEYER IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. RULE 11, # 2 Declaration of Chen Min IN SUPPORT OF PLAINTIFF HOMELAND |

| | | |
|---|---|---|
| | | HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. RULE 11, # 3 Declaration of R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. RULE 11, # 4 Exhibit 1 to DECLARATION OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. RULE 11, # 5 Exhibit 2 to DECLARATION OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. RULE 11, # 6 Exhibit 3 to DECLARATION OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. RULE 11, # 7 Exhibit 4 to DECLARATION OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. RULE 11, # 8 Exhibit 5 to DECLARATION OF R. JOSEPH TROJAN IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. RULE 11)(Trojan, R) (Entered: 02/27/2013) |
| 02/28/2013 | 189 | Opposition in opposition to re: MOTION for Reconsideration *to Revise Court's Order of Summary Judgment of Non-Infringement [Doc. #140] Because It Was Procured Through Fraud* 186 filed by Plaintiff Homeland Housewares, LLC. (Attachments: # 1 Declaration OF DYLAN C. DANG IN SUPPORT OF PLAINTIFF HOMELAND HOUSEWARES, LLCS OPPOSITION TO DEFENDANTS MOTION TO REVISE THE COURTS ORDER OF SUMMARY JUDGMENT OF NON INFRINGEMENT)(Trojan, R) (Entered: 02/28/2013) |
| 02/28/2013 | 190 | MINUTES OF Plaintiff/Counter Defendants Motion for Summary Judgment of Invalidity of US Patent No. 6,599,460 (filed 12/14/12) 158 ; Defendant's Cross-Motion for Summary Judgment of Validity of US Patent No. 6,599,460 (filed 01/24/13) 167 ; Plaintiff/Counter Defendants Request to Strike Evidence Submitted by Defendant in support of its Opposition to Plaintiff's Motion for Summary Judgment of Invalidity of US Patent No. 6,599,460 (Filed 01/25/13) 175 before Judge George H. Wu: The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the above-entitled motions are TAKEN UNDER SUBMISSION. Court to issue ruling. Court Reporter: Cindy Nirenberg. (jp) (Entered: 03/01/2013) |
| 03/01/2013 | 191 | MINUTES (IN CHAMBERS): ORDER COURT ORDER RE: PLAINTIFF/COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,599,460 (filed 12/14/12); DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT OFVALIDITY OF U.S. PATENT NO. 6,599,460 (filed 01/24/13); PLAINTIFF/COUNTER-DEFENDANTS' REQUEST TO STRIKE EVIDENCE SUBMITTED BY DEFENDANT IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,599,460 (Filed 01/25/13) by Judge George H. Wu: The Tentative issued on February 28, 2013, is adopted as the Courts final ruling. |

| | | |
|---|---|---|
| | | The Courtwould deny Homeland's motion for summary judgment of invalidity, and grant summary judgment infavor of Sorensen that Homeland has not produced sufficient evidence to proceed with its invaliditycounterclaims. The Court would strike the Osswald Report, Dkt. Nos.164-2 and 167-3, and order Sorensen to file a copy of the Osswald Report with paragraphs 5(a)-(b), 28-31, 34-43, and 65-66 redacted. 158 167 175 (pj) (Entered: 03/01/2013) |
| 03/05/2013 | 192 | NOTICE Notice of Filing of Redacted Declaration and Expert Report of Dr. Tim Osswald filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Declaration Redacted Declaration and Expert Report of Dr. Tim Osswald)(Kramer, Melody) (Entered: 03/05/2013) |
| 03/07/2013 | 193 | RESPONSE IN SUPPORT of MOTION for Sanctions Pursuant to Fed.R.Civ.P. Rule 11 182 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Supplement Defendant's Request to Strike or Exclude Improperly Submitted New Evidence, # 2 Declaration Supplemental Declaration of Melody A. Kramer, # 3 Exhibit 1 to Kramer Declaration, # 4 Exhibit 2 to Kramer Declaration, # 5 Exhibit 3 to Kramer Declaration, # 6 Exhibit 4 to Kramer Declaration, # 7 Exhibit 5 to Kramer Declaration)(Kramer, Melody) (Entered: 03/07/2013) |
| 03/07/2013 | 194 | RESPONSE IN SUPPORT of MOTION for Reconsideration *to Revise Court's Order of Summary Judgment of Non-Infringement [Doc. #140] Because It Was Procured Through Fraud* 186 filed by Defendant Sorensen Research and Development Trust. (Attachments: # 1 Supplement Request to Strike or Exclude Improperly Submitted New Evidence, # 2 Declaration Supplemental Declaration of Melody A. Kramer, # 3 Exhibit 1 to Kramer Declaration, # 4 Exhibit 2 to Kramer Declaration, # 5 Exhibit 3 to Kramer Declaration, # 6 Exhibit 4 to Kramer Declaration, # 7 Exhibit 5 to Kramer Declaration)(Kramer, Melody) (Entered: 03/07/2013) |
| 03/21/2013 | 196 | MINUTES OF DEFENDANTS' MOTION FOR SANCTIONS (filed 02/14/13)DEFENDANTS' MOTION TO REVISE THE COURT'S ORDER FORSUMMARY JUDGMENT OF.NON-INFRINGEMENT (DOC #140) BECAUSE,SE IT WAS PROCURED THROUGH FRAUD (filed FILED 2/21/2013 182 M 186 held before Judge George H. Wu: The Court's Tentative Ruling is circulated and attached hereto.. Court hears oral argument. For reasons stated on the record, the above-entitled motions are TAKEN UNDER SUBMISSION. A nonappearance status conference is set forMarch28, 2013. Court to issue ruling. Court Reporter: Pat Cuneo. (pj) (Entered: 03/22/2013) |
| 03/22/2013 | 🔒 | (Court only) ***Motions terminated: MOTION for Summary Judgment as to NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 76 . (jag) (Entered: 03/22/2013) |
| 03/22/2013 | 195 | TRANSCRIPT ORDER as to Plaintiff Homeland Housewares, LLC Court Reporter. Court will contact Michiko Speier at speier@trojanlawoffices.com with any questions regarding this order. Transcript portion requested: Other: DEFENDANTS MOTION TO REVISE THE COURTS ORDER OF SUMMARY JUDGMENT OF NON INFRINGEMENT and DEFENDANTS MOTION FOR SANCTIONS PURSUANT TO FED.R.CIV.P. RULE 11: 3/21/13. Transcript preparation will not begin until payment has been satisfied with the court reporter/recorder. (Trojan, R) (Entered: 03/22/2013) |

| 03/25/2013 | 197 | MINUTES (IN CHAMBERS): ORDER by Judge George H. Wu: denying 182 Motion for Sanctions; denying 186 Motion for Reconsideration (see document for details) (jag) (Entered: 03/25/2013) |
| 04/19/2013 | 198 | NOTICE of Change of address by Melody A Kramer attorney for Defendant Sorensen Research and Development Trust. Changing attorneys address to Change of Address for Melody A. Kramer - 5755 Oberlin Dr., Suite #301, San Diego, CA 92121. Filed by Defendant Sorensen Research and Development Trust. (Kramer, Melody) (Entered: 04/19/2013) |
| 04/19/2013 | 199 | NOTICE of Change of address by Patricia Ann Shackelford attorney for Defendant Sorensen Research and Development Trust. Changing attorneys address to 1991 Village Park Way, Suite #100, Encinas, CA 92024. Filed by Defendant Sorensen Research and Development Trust. (Shackelford, Patricia) (Entered: 04/19/2013) |
| 04/19/2013 | 200 | NOTICE OF APPEAL to the Federal Circuit filed by Defendant Sorensen Research and Development Trust. Appeal of Order on Motion for Reconsideration, Order on Motion for Summary Judgment, Motion Hearing, Status Conference, Set/Reset Deadlines/Hearings,,,,,,,,,,,,,,,,,,,, 140 , Order on Motion for Reconsideration, 143 , Order on Motion for Sanctions, Order on Motion for Reconsideration 197 , Minutes of In Chambers Order/Directive - no proceeding held, Set/Reset Deadlines/Hearings,,,, 113 (Appeal fee of $455 receipt number 0973-11987807 paid.) (Shackelford, Patricia) (Entered: 04/19/2013) |
| 04/22/2013 | | TRANSMISSION of the Notice of Appeal, Docket Sheet, Judgment and or order e-mailed to the US Court of Appeals for the Federal Circuit re: Notice of Appeal to Federal Circuit Court of Appeals, 200 (car) (Entered: 04/22/2013) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 11-3720-GW(JEMx) | Date | March 25, 2013 |
| Title | *Homeland Housewares, LLC v. Sorensen Research and Development Trust* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **(IN CHAMBERS): COURT ORDER RE:**

**DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO F.R.C.P. 11 (filed 02/14/13)**

**DEFENDANTS' MOTION TO REVISE THE COURT'S ORDER FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (DOC #140) BECAUSE IT WAS PROCURED THROUGH FRAUD (filed 02/21/13)**

    Attached hereto is the Court's Final Rulings on Motion for Rule 11 Sanctions and Motion to Revise Court's Order of Summary Judgment of Non-Infringement Because It Was Procured Through Fraud. Defendants' motions are **DENIED.**

Initials of Preparer    JG

*Homeland Housewares, LLC v. Sorensen Research and Development Trust*, Case No. CV-11-3720l; Final Rulings on Motion for Rule 11 Sanctions and Motion to Revise Court's Order of Summary Judgment of Non-Infringement Because It Was Procured through Fraud

## I. Background

Plaintiff Homeland Housewares, LLC ("Plaintiff" or "Homeland") filed suit against Sorensen Research and Development Trust ("Defendant" or "Sorensen") on April 29, 2011, seeking a declaratory judgment of noninfringement, invalidity, and unenforceability of Sorensen's U.S. Patent No. 6,599,460 (the "'460 patent" or "'460"). *See* Compl., Docket No. 1. Sorensen counterclaimed for infringement. *See* Docket No. 34. Homeland manufactures and sells food blenders called the "Magic Bullet" and the "Baby Bullet" which are sold along with "an assortment of plastic cups and mugs." Docket No. 124 at 6. Sorensen alleged that those plastic cups are molded using an infringing process. *Id.* at 7.

The Court has considered the key issues regarding claim construction, infringement, and validity multiple times. The Court construed the disputed claims. Docket No. 113. The Court considered, and denied, Sorensen's motion to reconsider the construction of the term "threshold rate." Docket No. 140. The Court granted Homeland's motion for summary judgment of non-infringement. Docket No. 140. The Court denied Sorensen's motion to enter judgment in the case without addressing Homeland's invalidity counterclaims. Docket No. 151. The Court denied Homeland's motion for summary judgment of invalidity, and granted Sorensen's motion for cross-summary judgment on Homeland's invalidity defense. Docket No. 191.

Sorensen now moves for sanctions pursuant to Fed. R. Civ. P. 11 based on Homeland's repeated presentation to the Court of an allegedly fraudulent declaration, and presentation of misleading argument concerning the prosecution history of the '460 patent ("Rule 11 Mot."). Docket No. 182. Based on the same alleged misrepresentations, Sorensen also moves for "revision" of the Court's summary judgment of noninfringement ("Mot. to Revise"). Docket No. 186.

## II. Legal Standards

### A. Sanctions Pursuant to Fed. R. Civ. P. 11

"Rule 11 is 'aimed at curbing abuses of the judicial system.'" *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 542 (1991) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990)). Rule 11 provides that by filing a pleading or other paper, "an attorney . . . certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the paper complies with Rule 11's requirements. Fed. R. Civ. P. 11(b). Such requirements include that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law," Fed. R. Civ. P. 11(b)(2), and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b)(3). *See Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).

-1-

Sanctions may be imposed under Rule 11 when a pleading "is frivolous, legally unreasonable, or without factual foundation." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986) (abrogated on other grounds in *Cooter*, 496 U.S. 384 (1990)); *see Security Farms v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1016 (9th Cir. 1997). There is no requirement of bad faith. *See Zaldivar*, 780 F.2d at 831. The Ninth Circuit has held that "Rule 11 sanctions should be applied if a competent attorney, after reasonable inquiry, would not have a good faith belief in the merit of a legal argument." *Amwest Mortg. Corp. v. Grady*, 925 F.2d 1162, 1164 (9th Cir. 1991).

"Rule 11 is an extraordinary remedy, one to be exercised with extreme caution" and "reserve[d] . . . for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344-45 (9th Cir. 1988).

### B. Motion for Reconsideration/Revision

Unless already the subject of a separate final judgment, any order of the Court "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). In the Central District of California, the vehicle for requesting such revision is a motion for reconsideration. Local Rule 7-18 governs motions for reconsideration:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

L.R. 7-18. A motion for reconsideration is an "extraordinary remedy, to be used sparingly." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). Indeed, "[m]otions for reconsideration are generally unwelcome." Schwarzer, Tashima, et al., *California Practice Guide: Federal Civil Procedure Before Trial* (2013) § 12:158.1. Reconsideration is generally only appropriate where the Court is presented with newly-discovered evidence, where the Court "committed clear error or the initial decision was manifestly unjust," or where there is an intervening change in controlling law. *See School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

## III. Analysis

### A. *The Court Denies Sorensen's Motion for Rule 11 Sanctions*

Sorensen's Rule 11 Motion is based on Homeland's filing of an allegedly fraudulent declaration by Joe Meyer, allegedly misleading arguments about the prosecution history of the

'460 patent, and allegedly misleading filing of portions of the prosecution history. The Court addresses each in turn.

### 1. The Allegedly Fraudulent Meyer Declaration

In support of its successful motion for summary judgment of noninfringement, Homeland filed a declaration from Joe Meyer that provided the foundation for the results of "short shots" and "dye tests" that Homeland submitted in support of its motion. Docket 140 at 8-10. The Court held that the two tests demonstrated that the accused products did not have "flow chambers," which is a limitation of the asserted claims. *Id.* at 9. In accepting Homeland's evidence, the Court noted that Sorensen did not present even a scintilla of evidence demonstrating infringement, and that Sorensen admitted that it conducted no testing whatsoever to demonstrate that the accused products did have flow chambers. *Id.* at 9-10. Instead, Sorensen merely argued that Homeland's dye tests were inaccurate because the viscosity of the dye is different from that of the plastic, argued that the short shots in fact showed that the accused products had flow chambers, and raised evidentiary objections to the tests. *Id.* at 9-10.

Sorensen now argues that the Meyer declaration was fraudulent in six ways: (a) the dye in the dye tests was easily removable, and not fixed with the plastic; (b) Meyer did not personally perform the dye tests or have physical custody of them; (c) Homeland's counsel, not a person of skill in the art, formulated the methodology of the dye tests; (d) Homeland's expert referred to the dye tests as a "tool and die maker's trick;" (e) Meyer did not "direct the testing," since Plaintiff's counsel provided the instructions; and (f) Meyer's representations about the manufacturing parameters for the short shots were false. Rule 11 Mot. at 7-11. The Court finds that only the last issue has any merit. The Court addresses each in turn:

#### a. The Dye in the Dye Test Was Easily Removable

That the dye in the dye test was easily removable is irrelevant in the absence of any evidence that it was removed. A variation of this issue was already presented to the Court at summary judgment: Sorensen's opposition was in part based on its argument that the plastic was not mixed with the dye, and so was not probative. *See* Docket No. 140 at 9. And, Sorensen presented this exact same issue to the Court in its October 26, 2012 Notice of Intention to Not Depose Plaintiff Witness Joe Meyer. Docket No. 152 at 2 ("Chen Min tells David Hiu and Joe Meyer . . . this dye in cup is very easy to erase, the plastic and dye are not fix together"). Sorensen identifies no false representation that Homeland made concerning the removability of the dye. And Homeland has submitted a sworn declaration that dye shots have never been tampered with, manipulated or altered in any way. Trojan Decl. In Supp. of Homeland's Opp'n. To Rule 11 Mot., ¶ 6. The Court holds that this is not a Rule 11 issue.

#### b. Meyer Did Not Personally Perform the Dye Tests

Meyer never claimed to have personally performed the dye tests; his declaration stated that he had "personal knowledge of the injection molding process that is used to make the accused products" and that he "directed the testing that is described herein." Docket 120, ¶ 1. It is true that the Court's ruling, while correctly noting that Meyer directed the tests, in one place mistakenly stated that he personally conducted them. Docket 140 at 9. But that small, and read

in context, inconsequential error (nobody's perfect) was not the result of anything that Homeland did. And again, Sorensen presented this very same issue to the Court in its Notice of Intention to Not Depose Plaintiff Witness Joe Meyer. Docket No. 152 at 1 ("It has just been discovered that Joe Meyer did not personally conduct either the "dye tests" or create the "short shots" as Homeland has lead the Court and parties to believe."). The Court holds that this is not a Rule 11 issue.

### c. The Idea for the Dye Test Originated with Counsel

That the idea for the dye test came from counsel does not demonstrate any falsehood, since Meyer never claimed to have independently conceived of the tests. There is nothing sinister, as Sorensen argues, in counsel's statement that he "conceived of these color test shots as being the best way to put an end to the case." Rule 11 Mot. at 9. Presumably, most testing done in support of litigation is performed with the ultimate aim of "putting an end to the case." Further, Sorensen presented this very same issue to the Court in its Notice of Intention to Not Depose Plaintiff Witness Joe Meyer. *Id.* The Court holds that this is not a Rule 11 issue.

### d. The Dye Tests are a "Trick"

Sorensen's characterization of the dye tests as fraudulent because Homeland's expert referred to it as "a tool and die maker's trick" is a gross misinterpretation of the expert's statement, which merely explained that it would not be published in a scientific journal because it was a well known "trick of the trade" that nobody would be interested in publishing. Rule 11 Mot. at 9. Indeed, Sorensen's own expert admitted at deposition that he has seen dye testing used in the industry to "confirm . . . if material flows into a certain place or a certain direction." Trojan Decl. In Support of Homeland's Opp'n. To Rule 11 Mot., Ex. 3. at 55-5:15.[1] The Court holds that this is not a Rule 11 issue.

### e. Meyer's Claim that He Directed the Testing

Meyer's statement that he "directed the testing" is not false merely because the instructions for the testing came from counsel. Once again, Sorensen presented this exact issue to the Court in its Notice of Intention to Not Depose Plaintiff Witness Joe Meyer. The email traffic that Sorensen cites shows that Meyer was indeed the person who directed the factory floor workers to perform the testing. Kramer Decl. in Support of Rule 11 Mot., Docket 183-1 at 16-21. And Meyer has submitted a supplemental declaration explaining that he visited with the individual who ran the tests in person and spoke with him on the phone about the production of the short shots, and reviewed the results to ensure that they were produced appropriately. Meyer Decl. In Support of Homeland's Opp'n. to Rule 11 Mot., Docket 188-1. ¶¶ 5-7. The Court holds that this is not a Rule 11 issue.

---

[1] Sorensen argued at the hearing that the Court should not rely on Sorensen's expert's testimony on this point because the Court struck the portions of Sorensen's expert's report that fully explained and put into context his statements about the dye tests. But the Court is here considering the cited testimony to evaluate Sorensen's claim that Homeland committed a fraud on the Court. That is an extraordinary allegation, and Homeland is entitled to rely on record evidence to refute it. That Sorensen's expert's report might have created genuine issues of fact as to infringement if it had been timely submitted is a different question which the Court does not here consider.

### f. Meyer's Representations About the Manufacturing Parameters of the Short Shots

This issue is the only one in which Sorensen actually identifies a false statement. The Meyer declaration stated that "'short shots' were made according to the same injection molding process used to make the accused products (*i.e.* using the same parameters of injection pressure, injection speed, and injection time) as set forth below." Docket No. 120, ¶ 9. Meyer then provided the following table:

| | Number marked on cup | | | | | |
|---|---|---|---|---|---|---|
| | 40 | 45 | 50 | 55 | 60 | 70 |
| Injection Pressure (kg/N) | 40 | 45 | 50 | 55 | 60 | 70 |
| Injection Speed (cm3/s) | 40 | 45 | 45 | 45 | 50 | 50 |
| Injection time (second) | 2 | 2 | 2.5 | 3.5 | 3.5 | 4 |

*Id.* But, the recently disclosed emails submitted by Sorensen show that someone at the factory told Meyer that:

> The data for the normal injection of the tall cup is:
> Injection pressure, kg/N: 100-120
> Injection speed, cm3/[ ]s: 35
> Injection time, seconds: 4

Kramer Decl. Ex. 1 at HH000291. Meyer passed that information along to Homeland's counsel. *Id.* But, that information was not presented in the Meyer declaration, which instead recited that the short shots "were made according to the same injection molding process used to make the accused products (*i.e.* using the same parameters of injection pressure, injection speed, and injection time)." Docket No. 120, ¶ 9. In light of the email providing the normal injection parameters, the statement in the Meyer declaration is false.

But, it does not appear that anyone was mislead by that false statement. First, the table provided in the Meyer Declaration, on its face, shows different parameters for each of the short shots, so at most, only one of them could even have possibly have been made using the "same parameters of injection pressure, injection speed, and injection time" as the normal product molding process. Second, Sorensen was aware of this issue, and in its opposition to summary judgment, specifically objected to the fact that the short shots were not made according to the directions that Sorensen provided. Docket No. 140 at 10 (citing Sorensen Decl., Docket No. 130-2, ¶¶ 9-10). Sorensen asked Homeland to:

> Make a series of short shots samples in approximately 5 mm increments of flow length with all parameters being held constant during the production injection molding process as step d, above, including: same plastic material, same injection speed, same injection pressure, and same cooling time. The only correct change in making these short shots is injection time.

-5-

Sorensen Decl., ¶ 9. Sorensen specifically complained that the short shots submitted by Homeland did not follow that process, and instead made short shots "using its own, largely undocumented, process." *Id.*, ¶ 10. In granting summary judgment, the Court noted that Sorensen declined to run its own tests to contradict Homeland's short shots, and thus had presented no evidence that the accused products have flow chambers. Docket No. 140 at 10.

Homeland notes, somewhat confusingly, that "to put to rest any doubts that Sorensen may have had concerning how the short shots were made, Homeland's counsel asked Mr. Meyer to confirm that the short shots were made according to the same parameters used to make the accused products," and that Meyer did so, as stated in his declaration. Homeland's Opp'n. to Rule 11 Mot., Docket 188 at 6. As discussed above, the "same parameters" statement appears to be the false portion of the Meyer declaration, so it is not clear why that should be reassuring.

Homeland further argues that:

> The short shots were made according to the same *process* used to make the Homeland products . . . . The short shots are, by definition, incomplete or abbreviated injections using the normal set up conditions . . . . The parameters . . . are truncated for the short shots because the short shots are incomplete moldings, but this does not change the process . . . . the parameters are smaller because the mold is not completely filled. But if the process were run to make a complete mold, the parameters would be the same.

Homeland's Opp'n. to Rule 11 Mot., Docket No. 188 at 14. That does not make much sense. Homeland is arguing that the process is the same, other than the parameters. But the parameters were exactly what was meant by "process" in the Meyer declaration, which stated that the "'short shots' were made according to the same injection molding process used to make the accused products (*i.e.* using the same parameters of injection pressure, injection speed, and injection time)." Docket No. 120 ¶ 9. The only part of the "process" that is the same in the short shots is that the same mold is used and plastic is injected. But, again, that is not what the Meyer declaration said. Homeland's attempted explanation here is unconvincing.

The Court wishes that Homeland's counsel had been more careful in preparing the Meyer declaration, and more candid, or coherent, in responding to the issue in the context of this motion. However, while the lapse is not praiseworthy, it did not deceive the Court. The Meyer declaration on its face showed that the short shots involved variations to all three parameters. Sorensen clearly understood that and objected to the difference between the way it wanted the short shots performed and the way Homeland performed them. And, the Court understood in granting summary judgment of noninfringement that the parameters were not precisely as Sorensen had prescribed. Docket No. 140 at 10.

Finally, Sorensen also argues that the Court was "hampered in addressing the falsity of Mr. Meyer's testimony" because Homeland allegedly misrepresented that Meyer lived abroad despite now living in New York. Docket No. 193 at 20. Sorensen offers as evidence a screen shot from a web service that provides the following "locations" for a Joseph Meyer, Age 67: Rhinecliff, NY, Port Ewen, NY, Beacon, NY, and Stuart, FL, as well as the fact that Meyer's most recent declaration was executed in New York. *Id.*, Suppl. Kramer Decl., Ex. 1, Docket

193-3. But Meyer's declaration states that he retired in December 2012, so Sorensen has produced no evidence whatsoever that Homeland's prior representations concerning Meyer's residence were untrue. Docket No. 188-1. And, Sorensen *repeatedly* declined to depose Meyer. Docket No. 188 n.9.

### 2. The Allegedly Misleading Prosecution History

Sorensen argues that it was somehow misleading for Homeland to have noted that "during prosecution, the Patent Office rejected the claims [of the '460 patent] as being obvious in view of the Allen and Smith patents. Rule 11 Mem. at 12 (quoting Homeland's Mem. In Supp. of Mot. for Summary Judgement of Invalidity, Docket No. 158-2 at 10). Sorensen believes that it was a Rule 11 violation for Homeland to have only included that non-final rejection, without including the PTO's later, final finding that the patent was not obvious in view of Allen and Smith.

That is a bizarre argument. Of course the PTO eventually allowed the patent; if it had not, this case would not exist. The Court fully understands the prosecution history, including the addition of the threshold rate limitation that the applicant used to overcome the rejection over Allen and Smith, and discussed it extensively in the *Markman* Order, Docket No. 113, and in the Order Denying Sorensen's Motion for Reconsideration of *Markman* Ruling re Claim Construction of "Threshold Rate," Docket No. 140. This is now at least the third time Sorensen has raised the issue. Sorensen's argument that this is a Rule 11 violation is frivolous.[2]

### B. *The Court Denies Sorensen's Motion for Reconsideration or Revision*

Sorensen's Motion to Revise the Court's Order of Summary Judgment of Non-Infringement [Doc. #140] Because it Was Procured Through Fraud, Docket No. 186 ("Mot. to Revise") is based on the same attacks on the Meyer declaration that Sorensen made in its Rule 11 Motion. Sorensen requests that the Court "revise and vacate the Court's order of summary adjudication of non-infringement (Doc. #140) and, at a minimum, allow Sorensen the opportunity to complete discovery and present its case against Homeland for infringement." *Id.* at 2.

For the reasons discussed above, the Court has entirely rejected five out of the six bases on which Sorensen attacks the Meyer declaration.[3] As to the sixth – the question of whether the short shots were made by "the same process" as the accused products – the Court has explained above how the inaccuracy in the description did not affect the result reached. Further, the Court nowhere relied on any distinction between short shots in which only injection time was varied,

---

[2] The Court also notes that Sorensen's reliance on the fact that Homeland's counsel was sanctioned for a Rule 11 violation *20 years ago* highlights the weakness of its position. Docket No. 182 at 19-20.

[3] Sorensen argued at the hearing that counsel's conception of the dye tests runs afoul of *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008). *Sundance* held that it was improper to admit the testimony of a patent attorney who was not a person of skill in the art. In arguing that *Sundance* applies here, Sorensen ignores that counsel did not testify; all the testimony on the dye tests came from Mr. Meyer and Plaintiff's expert, Mr. Tobin.

and those in which injection time, pressure, and speed were all varied.[4]

Sorensen also argues that it is entitled to discovery on the basis that the Court rejected the Rule 56(d) motion stating, "Had Sorensen stated that it knew, for one reason or another, that the dye or short shot tests were fabricated, and could elicit that fact in discovery, that might present a different scenario [on the Court's Rule 56(d) motion ruling]." Docket No. 186 at 4-5. But a more complete quotation of the Court's opinion is:

> To be clear, while the Court rests largely on Sorensen's lack of diligence in discovery in denying the Rule 56(d) motion, the court could just as equally rest on its lack of asserted specific facts that could aid its cause. Had Sorensen stated that it knew, for one reason or another, that the dye or short shot tests were fabricated, and could elicit that fact in discovery, that might present a different scenario. Had Sorensen stated that it could and would promptly run its own tests that would contradict the results of the dye or short shot test, that too might present a different scenario. Instead, after more than a year of opportunities to take discovery and run tests, Sorensen has presented no evidence whatsoever showing that the Accused Products do in fact contain all the claim limitations, and has not even suggested what type of evidence it might present in that regard.

Docket No. 140 at 14-15. Read in context, the Court relied on Sorensen's lack of diligence and failure to assert specific facts as required by Fed. R. Civ. P. 56(d). There is still no evidence that the tests were fabricated, and still no independent testing by Sorensen.

Sorensen is still unable to point to any affirmative evidence of infringement, so there is no basis to reach a different conclusion as to infringement. In granting summary judgment of noninfringement, the Court repeatedly held that Homeland offered evidence, which the Court was "not weighing the credibility of . . . which would be inappropriate on summary judgement motion," and that Sorensen put forward *no* evidence that the Accused Products met the limitations. Docket No. 140 at 10, 12. Once again, Sorensen relies on argument where facts – here, *new* facts – are required.

At the hearing on this motion, Sorensen argued that the reason it did not produce evidence in opposition to summary judgment was that it only had "seven days to respond" to Homeland's motion for summary judgment of noninfringement. In so arguing, Sorensen ignores that it in fact had months – not days – to develop evidence showing genuine issues that could have prevented summary judgment of noninfringement. Homeland first filed its motion on March 21, 2012. Docket No. 76. But the Court took it off calendar, Docket No. 95, and Homeland refiled it on July 26, 2012. Docket No. 118. Further, discovery had been open since

---

[4] Further, Sorensen's argument that the change in injection pressure and speed matter here undercuts Sorenson's entire theory of the '460 patent. Sorensen believes, and asserts, that increasing the thickness at less than a threshold rate controls whether gaseous voids will form in thin-wall injection molding. Docket No. 164 at 18-22 ("The '460 patent makes no reference to the speed at which fluid plastic is injected into a mold cavity."). But by arguing that injection speed and pressure materially affect the behavior of the plastic formation, Sorensen endorses the theory put forth by Homeland's expert, Dr. Tobin, who stated that it is fact those parameters, not the rate of increase in thickness of the thin wall portion, that control void formation. Docket No. 160 at 9-10.

July 2011. Docket No. 140 at 14. Sorensen also argues at the hearing that it was unfair to expect it to develop expert testimony when it had "just gotten" the Court's claim construction ruling. The Court issued its claim construction order on July 5, 2012. Docket No. 113. Even if Sorensen was somehow justified in not lifting a finger to establish infringement until after the Court's claim construction ruling, which it was not, it still had about a month after that ruling before its opposition to summary judgment was due. Sorensen still provides no adequate excuse for not having come forward with evidence of infringement in response to Homeland's motion for summary judgment of noninfringement.

### C. *The Court Denies Sorensen's Request to Strike*

Sorensen requests – sort of – that the Court strike the declarations of Joseph Trojan, Chen Min, and Joe Meyer submitted by Homeland in opposition to Sorensen's Rule 11 Motion, arguing that they constitute an attempt to inappropriately pack the record for appeal with material the Court did not have before it when ruling on the underlying issues: the same rationale that led the Court to strike portions of Osswald's expert report. Docket No. 194-1; *see Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077-78 (9th Cir. 1988) (proper to strike from record on appeal papers that were filed in district court after judgment from which appeal was taken). Sorensen's request is only "sort of" because it actually requests different treatment of the declarations for purposes of each of the pending motions. Regarding the Rule 11 Motion, Sorensen "requests that the Court strictly limit any use of these three declarations as further evidence of falsity of the challenged pleadings, but for no other purpose." Docket No. 194-1 at 2. The Court would indeed only consider the declarations for that purpose. Regarding the Motion to Revise, Sorensen "requests the Court to strike all of the declarations as being after-the-fact evidence submitted on the issue of infringement offered without permission of the Court." *Id*. The Court need not do so, because, as Sorensen states, "the factual setting overlaps between the [Motion to Revise] and the co-pending [Rule 11 Motion], these two motions were not combined because Fed.R.Civ.P. Rule 11(c)(2) requires that they be separate." Docket No. 194 at 3. The Court has only considered them to evaluate the propriety of Homeland's earlier submissions, and not to bolster the Court's prior orders. Further, as Homeland only filed the declarations once, as attachments to Docket No. 188, it is not even clear how the Court could, as Sorensen requests, consider them in one context and "strike" them in another.

Even if the Court could grant the relief Sorensen seeks, it would not do so. The situation here is very different than that presented by Sorensen's submission of the entire Osswald report. In opposing invalidity, Sorensen submitted evidence that was only relevant to noninfringement: an issue the Court had already decided. Docket No. 191. Here, Sorensen moved for Rule 11 sanctions, accusing Homeland's counsel of fraud via the submission of the Meyer declaration. The signed declarations directly address the very basis of Sorensen's motion.

Sorensen also argues that the declarations raise additional complications because Chen Min appears to be a Chinese National working in mainland China. Docket No. 194-1 at 5-7. In particular, Sorensen discusses the difficulty in deposing a Chinese citizen in China, and argues that said difficulty should trigger the application 35 U.S.C. § 295, which provides:

-9-

In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds –

(1) that a substantial likelihood exists that the product was made by the patented process, and

(2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine,

the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

But Sorensen has completely failed to produce evidence that there is "a substantial likelihood" that the accused products are "made from a process patented in the United States." The Court has repeatedly noted Sorensen's failure to produce any such evidence. *See, e.g.*, Docket No. 140 at 15 (Sorensen again has "presented no evidence whatsoever showing that the Accused Products do in fact contain all the claim limitations, and has not even suggested what type of evidence it might present in that regard.").

## IV. Conclusion

For the above reasons, the Court DENIES Sorensen's Motion for Rule 11 Sanctions and Motion to Revise Court's Order of Summary Judgment of Non-Infringement Because It Was Procured through Fraud.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOMELAND HOUSEWARES, LLC, a California company, | CASE NO. CV 11-3720-GW(JEMx) |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF HOMELAND HOUSEWARES, LLC'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 and DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF MARKMAN RULING RE: CLAIM CONSTRUCTION OF "THRESHOLD RATE"** |
| SORENSEN RESEARCH AND DEVELOPMENT TRUST, | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS. | Hon. George H. Wu Courtroom 10 |
| | Hearing: August 23, 2012 at 8:30 a.m. |

-1-                                    Civ. Action No. 2:11-cv-03720-GW-JEMx

These matters came before the Court on Plaintiff/Counter-defendant Homeland Housewares, LLC and Counter-defendant Capital Brands, LLP's (collectively, "Homeland") Renewed Motion for Summary Judgment of Non-infringement of U.S. Patent No. 6,599,460 (hereinafter "the '460 Patent"), and Defendant/Counter-claimant Sorensen R&D Trust's (hereinafter "Sorensen") Motion for Reconsideration of Markman Ruling re: Claim Construction of "Threshold Rate."

The Court, having considered all papers and oral arguments submitted in support of, and in opposition to, Homeland's Renewed Motion for Summary Judgment, and for good cause appearing, finds that Homeland has demonstrated there is no genuine issue of material fact as to the non-infringement of the '460 Patent.

The Court further having considered all papers and oral arguments submitted in support of, and in opposition to, Sorensen's Motion for Reconsideration, finds that Sorensen has failed to present newly discovered evidence, or otherwise demonstrate that the Court committed clear error or that the initial Markman construction of "threshold rate" was manifestly wrong.

**IT IS HEREBY ORDERED THAT:**

1.  Plaintiff Homeland's Renewed Motion for Summary Judgment on its First Count for Declaratory Judgment of Non-Infringement of the '460 Patent is

TROJAN LAW OFFICES
BEVERLY HILLS

GRANTED.

2.     Defendant Sorensen's Counterclaim for Infringement of the '460

Patent is hereby DISMISSED WITH PREJUDICE.

3.     Defendant Sorensen's Motion for Reconsideration of Markman

Ruling re: Claim Construction of "Threshold Rate" is DENIED.

**IT IS SO ORDERED.**

Dated: August 30, 2012                    _George H. Wu_
                                          _____
                                          Hon. George H. Wu
                                          United States District Judge

Presented by:
Trojan Law Offices

/s/ R. Joseph Trojan
R. Joseph Trojan
Dylan C. Dang
Attorneys for Plaintiff
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone (310) 777-8399
Facsimile (310) 777-8348

TROJAN LAW OFFICES
BEVERLY HILLS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-3720-GW(JEMx) | Date | August 23, 2012 |
|---|---|---|---|
| Title | *Homeland Housewares, LLC v. Sorensen Research and Development Trust* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Laura Elias | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| R. Joseph Trojan | Joseph McAvoy |
| Dylan C. Dang | Patricia A. Shackelford |

**PROCEEDINGS:**     **PLAINTIFF/COUNTER DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,599,460 (filed 07/26/12);**

**DEFENDANT'S MOTION FOR RECONSIDERATION OF MARKMAN RULING RE CLAIM CONSTRUCTION OF "THRESHOLD RATE" (filed 07/16/12);**

**STATUS CONFERENCE**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's final ruling. The Court **GRANTS** Homeland's motion for summary judgment as to non-infringement. This ruling will also be dispositive of Sorensen's counterclaim for infringement. The case will move forward as to Homeland's invalidity/unenforceability declaratory judgment claim. Counsel for plaintiff will file a proposed order forthwith. Defendant's Motion for Reconsideration of Markman Ruling re Claim Construction of "Threshold Rate" is **DENIED.**

The status conference is continued to **August 30, 2012 at 8:30 a.m.** Parties may appear telephonically provided that counsel advise the clerk by August 28, 2012.

| | : | 20 |
|---|---|---|
| Initials of Preparer | JG | |

***Homeland Housewares v. Sorensen Research and Dev. Trust***, Case No. CV 11-3720
Tentative Rulings on: (1) Defendant Sorensen's Motion for Reconsideration of Markman
Hearing and (2) Plaintiff Homeland Housewares' Motion for Summary Judgment & Defendant's
Rule 56(d) Motion

## I. Background

    Plaintiff Homeland Housewares LLC ("Plaintiff" or "Homeland") filed suit against
Sorensen Research and Development Trust ("Defendant" or "Sorensen") on April 29, 2011,
seeking a declaratory judgment as to the invalidity and unenforceability of a patent held by
Sorensen, U.S. Patent No. 6,599,460 (the "'460 Patent"), and a declaratory judgment of non-
infringement of that patent. *See* Compl., Docket No. 1.  Sorensen, in its Answer, asserted a
counterclaim of infringement of the '460 Patent. *See* Docket No. 14.  Plaintiff manufactures and
sells food blenders called the "Magic Bullet" and the "Baby Bullet" (collectively the "Accused
Products") which are sold along with "an assortment of plastic cups and mugs."  Docket No. 124
at 6.

    The '460 Patent claims a method of injection molding that prevents "gaseous voids" from
developing in "thin wall" plastic products as they are molded.  SUF, SDF ¶ 1.[1]  It teaches that
gaseous voids can be avoided using the following process.  Fluid plastic is injected into a mold
cavity through what is known as a gate.  SUF ¶ 32.  The fluid plastic is directed through "flow
chambers" and then spreads to "thin wall" sections between the flow chambers.  SUF, SDF ¶ 4.
The thickness of the thin wall sections increases in the direction of the flow. *Id.*  Importantly, the
rate of increase in thickness of the "thin wall" sections cannot surpass a "threshold rate" above
which unwanted, problematic "gaseous voids" will form.  The "threshold rate" is to be
determined empirically by conducting test strips.  SUF, SDF ¶ 17.

    The parties are now before the Court for Defendant's motion for reconsideration of one of
the terms constructed at the Markman hearing held by this Court on May 7, 2012, as well as
Plaintiff's renewed motion for summary judgment and Defendant's Rule 56(d) request.

## II. Legal Standards

### A. Motion for Reconsideration

    A motion for reconsideration is an "extraordinary remedy, to be used sparingly." *Kona
Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).  Indeed,
"[m]otions for reconsideration are generally unwelcome."  Schwarzer, Tashima, et al., California
Practice Guide: Federal Civil Procedure Before Trial (2011) § 12:158.1, at 12-60.  Reconsidera-
tion is generally only appropriate where the Court is presented with newly- discovered evidence,
the Court "committed clear error or the initial decision was manifestly unjust," or where there is
an intervening change in controlling law. *See School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255,

---

[1] Plaintiff Homeland's statement of undisputed facts is found at Docket No. 118-3 and shall be referenced as
"SUF."  Defendant Sorensen's statement of disputed facts is found at Docket No. 129-1, and shall be referenced as
"SDF."

1263 (9th Cir. 1993). Local Rule 7-18 of the Central District of California imposes similar requirements:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

C.D. Cal. L.R. 7-18.

### B. Summary Judgment

Summary judgment shall be granted when a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798-99 (9th Cir. 2010). Further,

> [i]f the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment [, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted). At the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and views all evidence and draws all inferences in the light most favorable to the non-moving party. *See id.* at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

As applied in the context of a patent infringement claim, a mere disagreement between experts is not sufficient to raise a triable issue of fact; rather, an expert's opinion must present "sufficient detail for the court to determine whether that factual foundation would support a finding of infringement under the claim construction adopted by the court, with all reasonable

inferences drawn in favor of the non-movant." *Rambus Inc. v. Hynix Semiconductor Inc.*, 628 F. Supp. 2d 1114, 1122 (N.D. Cal. 2008) (quoting *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046-48 (Fed. Cir. 2000)).

### C. Rule 56(d)

In response to a summary judgment motion, a nonmoving party may obtain relief pursuant to Fed. R. Civ. P. 56(d) ("Rule 56(d)") if it "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." A party seeking relief under Rule 56(d) in the Ninth Circuit must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The party must also show that it "diligently pursued its previous discovery opportunities, and . . . demonstrate that allowing additional discovery would . . . preclude[ ] summary judgment." *Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 843 F. Supp. 2d 1018, 1027 (N.D. Cal. 2012).

### III. Analysis

#### A. The Court Denies Defendant Sorensen's Motion for Reconsideration.

Sorensen seeks reconsideration of the term "threshold rate" as constructed by this Court at the Markman hearing. The Court's analysis of why Homeland's construction of that term should be adopted was, in pertinent part, as follows:

> Sorensen argues that the term "threshold rate" needs no more specific construction than the term's everyday meaning . . . It explains that once the threshold rate "exceeds a certain mathematical value, which value depends on variables including mold cavity geometries and the type and amount of plastic used, void-based irregularities can form in that thin-wall cavity section." Docket No. 69 at 21.
>
> . . . Homeland argues that the "threshold rate" should be constructed as the rate "as determined by conducting test strips at the time the mold is made" such that gaseous voids do not form. *See* Docket No. 63 at 13. Homeland persuasively notes that the patent specification itself dictates that the threshold rate can only be determined by conducting such empirical tests. *Id.* Indeed, Sorensen also notes that the specification envisions that the threshold rate for a given product would be determined by conducting empirical tests as to that specific product. Docket No. 57 at 22.
>
> Given the language of the specification, and Sorensen's admission that the "value" of the "threshold rate" for a given item would vary based on "mold cavity geometries and the type and amount of plastic used," it is hard to see how they can plausibly

> argue that the "threshold rate" of the Accused Products should not be
> construed so as to involve an empirical test to see *what that rate is . .*
> *. [.]*

Markman Order, Docket No. 113 at 13. The Court had also discussed how the concept of a
"threshold rate" appeared to be the novel aspect of the '460 Patent, as compared to two prior
patents, the Smith patent and the Allen patent. Sorensen in its motion for reconsideration asserts
that the Court has made two factual errors and two legal errors in its construction of the term
"threshold rate." The Court would consider each in turn.

    First, Sorensen argues that the Court erred in finding that the Allen and/or Smith patents
taught anything at all regarding the prevention of gaseous voids. The Court determined in its
Markman Order that "The Allen patent taught that 'thin walled' sections are necessary to prevent
gaseous voids, and the Smith patent taught that the 'thin walled' sections must increase in
thickness in the direction of the flow of plastic." *Id.* Sorensen argues that there are "no
teachings whatsoever" in Allen or Smith regarding gaseous voids. Yet the "summary of the
invention" section of the Allen patent refers to how the "thin panel section" must be positioned
"so that there are no voids in the plastic." Allen, at column 2, lines 53-55 (Docket No. 110, Exh.
B at 14). Sorensen does not explain away this reference. As for the Smith patent, the "summary
of the invention" section states that "[a]s the thickness . . . increases, the flow of plastic will
move uniformly." Smith, column 3, lines 46-48 (Docket No. 110, Exh. C at 25). No
reconsideration of the construction of "threshold rate" is warranted based on the Court's analysis
of the relevance of the Allen or Smith patents.

    Second, Sorensen argues that the Court erred in interpreting the prosecution history of the
'460 patent. The Court found that the Examiner had tentatively rejected the patent as obvious in
light of the Allen and Smith patents, and found that fact supported the notion that threshold rate
must involve some empirical testing, because the Examiner needed some grounds upon which it
eventually determined that the '460 was non-obvious and thus allowable; as discussed above,
without the component of empirical testing, "threshold rate" is a circular concept that would not
have allowed the examiner to reach a finding of non-obviousness. Sorensen provides the
Examiner's statement of reasons for allowance, after considering the potential obviousness in
light of Smith and Allen, which was:

> The prior art does not teach or suggest the thickness of the thin
> wall section increasing in the direction of flow *at less than a*
> *threshold rate* to prevent injected fluid plastic directed into the
> zone from at any time surrounding any gaseous void within the
> zone . . . The declaration [submitted by the inventors] . . . is
> sufficient to overcome the rejection of claims 1-34 based upon
> Smith . . . The declaration shows that increase in thickness of the
> thin wall cavity is *not at a rate* to prevent injected fluid plastic
> directed into the zone from at any time surrounding any gaseous
> void within the zone.

Docket No, 114 at 7. In other words, the Examiner eventually allowed the claims of the '460 because, unlike Smith, the '460 Patent teaches that the wall thickness increases at less than a threshold rate, whereas the Smith patent had not so taught. But then, the Court is back to its original conclusion: if what distinguishes the '460 patent is the threshold rate, then the threshold rate cannot simply be constructed as "whatever rate below which gaseous voids do not form," as that would be an entirely circular definition that would not have reasonably permitted the Examiner to change the tentative rejection to a final allowance decision.

Sorensen's third and fourth arguments (taken together) are that the Court improperly inserted a step of empirical testing into a claim that did not require it, since only the specification, not the claims, mentions empirical testing to determine the threshold rate. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (the claim, not the specification, sets the parameters of the patentee's right to exclude). Yet, again, there is no other way for the term to be constructed, because without the use of empirical testing to determine the threshold rate, in Homeland's words, "it is impossible to determine whether this claim limitation is met by [any] accused product." Docket No. 128 at 8. Sorensen has simply never responded adequately to this Court's finding that any construction of "threshold rate" that lacks a component of empirical testing would be entirely circular.

Sorensen analogizes to the boiling point of water, saying that just as the boiling point of water will vary based on altitude (actually based on barometric pressure), the threshold rate below which gaseous voids will not form will vary based on the particular product and mold cavity. *See* Docket No. 114 at 10. However, this example proves precisely the opposite point: unlike Sorensen's proposed construction of threshold rate, there is a *formula* by which the boiling point of water can be determined at each different altitude. The boiling point of water is not simply defined as "the threshold temperature above which water turns from liquid to vapor" - there is a mathematical formula according to which a person can know for sure whether or not, at any given altitude and any given temperature, the water will boil. In other words, the mere fact that a threshold value is variable does not mean it can only be defined in a circular manner - *i.e.*, "the value above which [the relevant event] occurs." On the contrary, just as in the case of boiling water, a variable threshold value can be meaningfully defined through a mathematical formula or by reference to the empirical testing necessary to determine the threshold value in a specific set of circumstances

In sum, the Court should deny Sorensen's motion for reconsideration as to the term "threshold rate."[2]

### B. The Court will grant Homeland's motion for summary judgment

Summary judgment of non-infringement requires a two-step analysis. First, the claims of the patent must be construed to determine their scope, as a question of law. *Pitney Bowes, Inc. v.*

---

[2]Sorensen complains that the Court, in its final Markman order, did not cite to the supplemental briefing it submitted, uninvited, during the period between the Markman hearing and the Court's issuance of the Markman order. The Court would find that first, the arguments presented therein are virtually identical to those raised in the motion for reconsideration, thus they have now been addressed, and second, that the supplemental briefing was improper because the Court had indicated that the matter had been taken under submission on the basis of the initial Markman briefs and argument, and had not invited supplemental briefing.

*Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (internal citation omitted). Second, "a determination must be made as to whether the properly construed claims read on the accused device." *Id.* To find infringement, "the court must determine that every claim limitation is found in the accused device." *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 909 (Fed. Cir. 2005) (internal citations omitted). The determination of infringement is generally a question of fact. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). Since the ultimate burden of proving infringement rests with the patentee, an accused infringer may establish that summary judgment is proper "either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001); *see also Pixion v. Citrix Sys., Inc.*, No. C 09-03496 SI, 2012 U.S. Dist. LEXIS 113929, at *16 (N.D. Cal. Aug. 13, 2012).

Homeland argues that summary judgment in its favor is warranted because the Accused Products do not infringe on the '460 Patent. There are four claim limitations that Homeland argues are not found in the Accused Products: 1) the Accused Products do not suffer from the problem of "gaseous voids" because they are not "thin-walled"; (2) the Accused Products do not have "flow chambers"; (3) the Accused Products do not have "exit/entrance positions" or "inscribed sphere dimensions"; (4) the Accused Products do not have walls that increase in thickness at a rate less than a "threshold rate". The Court will discuss each in turn, before considering Sorensen's 56(d) motion.

As a general matter, Sorensen has nowhere in its papers identified which *components* of Plaintiff's products infringe the '460 Patent. Sorensen's Preliminary Infringement Contentions ("Contentions") list "Magic Bullet Hi-Speed Blender/Mixer System" and "Baby Bullet Baby Food Making System" as the Accused Products. *See* Decl. of R. Joseph Trojan ("Trojan Decl."), Docket No. 121, Exh. 8 at 2. Then, the Contentions present three drawings, allegedly depicting Homeland's products. Sorensen has not disclosed which component cup the drawings found in its Contentions claim to depict. Homeland, though, has ventured guesses as to which products allegedly infringe the '460 Patent, given the drawings. *See* Docket No. 124 at 8. It is on this shaky ground that the Court must tread in evaluating whether there is a genuine issue of material fact as to whether the Accused Products infringe upon the '460 Patent.

### 1. There is a genuine issue of material fact as to whether the Accused Products are "thin walled."

Homeland argues that since "gaseous voids" do not form in their products, "there would be no reason to employ the injection molding process claimed in the '460 patent to prevent a problem that does not exist." Docket No. 124 at 10. The evidence Homeland proffers in support of the fact that gaseous voids do not form in their products is a declaration by Mr. Joe Meyer (the "Meyer Declaration"), who is the Managing Director of the non-party Chinese company Capital Bay Ltd., which "supervises production and quality control of the two third-party Chinese factories" that manufacture the Accused Products. Meyer Decl., Docket No. 120, ¶ 1. He testifies that he has personal knowledge of "the injection molding process that is used to make the accused products" and that gaseous voids "have never been a problem in the accused products." *Id.* ¶¶ 1, 15. Additionally, Homeland argues that gaseous voids have never posed a

problem in manufacturing the Accused Products because the Accused Products do not have "thin walls" - instead, Homeland argues that its products feature thick walls which are two to three times thicker than what Homeland dubs the "standard" definition of "thin" - 1mm or less.

As noted by Sorensen, this Court rejected Homeland's construction of "thin" as 1mm at the recent Markman hearing. *See* Markman Order, Docket No. 113 at 5-6. Homeland appears to be trying to get around the Court's rejection of its construction by claiming that the walls simply must be thick, because if they were thin, then the problem of "gaseous voids" would have arisen during manufacturing. Yet neither side appears to argue that in *every* thin-walled product ever manufactured, the issue of gaseous voids *must* arise; the patent merely teaches one method of preventing the voids. Thus, Homeland has failed to show that there is no genuine issue of material fact as to whether the Accused Products contain "thin walls," because that question cannot be answered by consulting either the 1mm standard this Court already rejected, or, merely by pointing to the lack of gaseous voids. In other words, there is a genuine issue of material fact as to whether the Accused Products are "thin walled."

All that said, the Court would note that Sorensen has presented no evidence to counter Mr. Meyer's testimony that gaseous voids have never been a problem in manufacturing the Accused Products. Sorensen does, though, object to the above-quoted paragraphs of the Meyer Declaration, calling Mr. Meyer's testimony concerning why gaseous voids do not form (namely his conclusion that the walls are "thick enough" that they do not occur) a mere parroting of Homeland's rejected construction of "thin wall" and impermissible expert testimony by a lay witness. *See* Docket No. 129-2 at 5. The Court would not find that these objections constitute grounds to exclude Mr. Meyer's testimony that gaseous voids *simply were never a problem* in manufacturing the Accused Products, leaving aside *why* they were never a problem. Mr. Meyer, as head of the company supervising the manufacturing of the Accused Products, obviously has personal knowledge as to what problems arise on the factory floor. Thus, the Court would note as background for the remaining analysis that Sorensen has offered no evidence that gaseous voids, the problem the '460 Patent purports to solve, have ever been an issue in the manufacturing of the Accused Products, whereas Homeland has offered evidence that gaseous voids have never been a problem.[3]

### 2. There is no genuine dispute that the Accused Products lack flow chambers.

Homeland asserts that the Accused Products do not include "flow chambers," which this Court has constructed to mean (in pertinent part) "sections of a mold cavity that adjoin to opposite edges in a thin wall cavity section for at least directing injected fluid plastic material . . ." Markman Order, Docket No. 113 at 6-7. The Court rejected Homeland's proposed construction which would have required a flow chamber to be attached to a "gate" (*i.e.* the point where

_____

[3]For instance, Sorensen has uncovered zero documents that show Homeland grappling with this problem, and Sorensen has not elicited testimony in depositions or otherwise from employees at Homeland with personal knowledge of the problem of gaseous voids ever having been encountered in the Accused Products.

the fluid plastic is injected).[4]  *Id.*  Sorensen contends that the "ribs" (*i.e.* protrusions emanating vertically along the plastic cups to which the blender attaches) of the Accused Products are actually flow chambers; Homeland asserts that the ribs are there to "create turbulence in the blending process" and "have no function in the molding process," as Mr. Meyer testifies. Meyer Decl., Docket No. 120, ¶ 16.

Homeland also presents the results (in photographic form) of two empirical tests which appear to show that the flow chambers do not direct the flow of plastic: a "dye test" and a "short shot test." First, Homeland injected dye into the mold, and photographed the results. Again, the Court has constructed "flow chamber" such that it must "direct[] injected fluid plastic material." When dye is injected *into the gate* (the point where the plastic is normally injected), the photographs show that the dye scatters every which way, not into the ribs. *See* Meyer Decl., Docket No. 120, Exh. 12. If the ribs were flow chambers, argues Homeland, then the flow of the dye would have been directed by the ribs instead of scattering about willy-nilly. Further, Homeland argues, if the ribs were flow chambers, then the dye would not only direct the flow, but would direct the flow into the (possibly thin) wall sections; in contrast, when the dye was injected directly *into the ribs* (as opposed to through the gate), the dye continued to flow along the rib, and did not spill out into the (possibly thin) wall sections. *See* Meyer Decl., Docket No. 120, Exh. 12; Docket No. 124 at 12.

Homeland also presents the results of another test, called "short shot testing." This test was conducted by Homeland allegedly *at the request of Sorensen* (Docket No. 124 at 14), and is a series of photographs taken during the formation of the product when made according to the same injection process as is used to make the Accused Products; in other words, the "short shots" are still photographs of unfinished Accused Products, taken during the molding process and showing what the Accused Products look like at different stages during their metamorphosis from liquid plastic to (for example) a Magic Bullet Blender cup. *See* Meyer Decl., Docket No. 120, ¶ 9.[5]  These photographs show that the walls of the Accused Products form by the plastic flowing down at an even rate as to the ribs and the walls, away from the gate. In other words, the walls of the cup appear to be forming evenly without regard for the location of the ribs. If the ribs were directing the flow of the plastic, as the claim limitation requires, then (in Homeland's words) "there would be gaps in the wall sections where the plastic had not yet joined together."

---

[4]Sorensen argues that Homeland is now impermissibly resting upon its rejected construction, in arguing that the ribs are not flow chambers. If Homeland had argued that the ribs are not flow chambers *solely* because they are not connected to the gate, then the Court would be persuaded by Sorensen's reasoning. However, that is not Homeland's argument. Homeland argues that leaving aside the issue of whether the ribs are attached to the gate or not, the photographs from the dye test and the short shot test show that the ribs do not function to direct the flow of the plastic. Instead, the plastic flows evenly all around the cup's forming edge, and the location of the ribs is irrelevant to the molding of the cup. The ribs function only to aid the blending process performed by the finished product, not aid in the molding process as the cup is formed.

[5]Sorensen's evidentiary objection that the short shot test is unauthenticated because it is only a single set of shots which Homeland allegedly did not identify "which of the two products it is, when and where they were made, by whom they were made, whether they were made with the same test or production molds, who verified whether they were made with the same injection process as used in production" (Docket No. 129-2 at 6) is denied; the Meyer Declaration addresses each of these issues.

Docket No. 124 at 15.

In sum, Homeland has presented photographic evidence from two tests, the dye test and the short shot test, which appear to conclusively show that the Accused Products do not feature "flow chambers," because what Sorensen had argued were flow chambers are in fact merely ribs that assist in the blending process once the completed product is used, but which play no role whatsoever in the molding or manufacturing process. Unless Sorensen can present more than a scintilla of evidence that the ribs do in fact function as flow chambers (or otherwise show that the flow chambers taught by the '460 Patent are present in the Accused Products), then summary judgment in favor of Homeland is warranted.

Has Sorensen, then come up with any evidence that the ribs are in fact flow chambers, even a scintilla? It appears that the answer is no. Sorensen does not deny that it has conducted no testing whatsoever that could show how the Accused Products do in fact utilize flow chambers. Nor do they refer to any photographs of the Accused Products and illuminate for the Court where the flow chambers must be found. Instead, Sorensen argues that (1) the dye test is inaccurate because the viscosity of dye is different from that of plastic; (2) the short shot test does in fact show that the ribs direct the flow of plastic. Sorensen also raises evidentiary objections to both tests.

As to the dye test, Sorensen merely states conclusorily that dye and plastic do "not flow at the same rate or direction" and thus concludes that the dye test is not an accurate indicator of the flow of plastic. Crucially, Sorensen backs up this assertion only a declaration from inventor Jens Ole Sorensen, who testifies that "they [Homeland] have not mixed the plastic with the dye, so each substance would flow according to its own viscosity. Therefore, the dye and plastic would not flow at the same rate or direction as the other." Decl. of Jens Ole Sorensen ("Sorensen Decl."), Docket No. 130-2, ¶ 14. Yet Sorensen never ran its own tests showing dye (or anything) doing anything different, despite having had access to the physical samples used to create the photographs here. Indeed, when Homeland demanded that Sorensen "produce the documents of whatever it did that would support its infringement claim," Sorensen offered only "drawings that document its measurements and analysis of infringement . . . and additionally offered to make available the physical samples." SUF, SDF ¶ 42. In other words, Sorensen has only presented the three drawings found in the Contentions, as the sum total of documents evidencing testing they did to support the infringement claim; they have thus presented no evidence that the results of the dye and short shot tests are in genuine dispute.

Perhaps realizing that its infringement claim could not withstand summary judgment with merely this flimsy dispute as to the facts, Sorensen then offers evidentiary objections to the dye test, contending that Meyer is not an expert witness and thus cannot offer scientific or technical knowledge; even as an expert, Sorensen contends, Meyer's dye test should be excluded because it is not clear that his opinions are the product of reliable principles and methods. The Court would not agree. Meyer is offering his personal knowledge of a test he personally "directed," and regardless of whether the Court takes note of his conclusion that the photographs show that the ribs are not flow chambers for purposes of the '460 Patent (which may indeed be improper expert opinion testimony), the Court has no reason to exclude the photographic results of the dye test he personally conducted and no reason to decline to make common sense deductions from those photographs. The results of the dye test show that the flow of the *dye* was not directed by

-9-

the ribs, this is not contested. Sorensen has offered less than a scintilla of evidence that dye would flow in a different direction than would plastic, in fact it has offered only the word of Jens Ole Sorensen without any further substantiation. Thus, the result of the dye test, that the ribs do not direct the flow of plastic, is not a matter of genuine dispute.

Proceeding to the next test, the short shot test, Sorensen raises similar arguments as those discussed above in an attempt to form a smoke screen around the fact that it has conducted zero experiments of its own that contradict the results of the simple tests put forward by Homeland. First, Sorensen attempts to argue that the short shot photographs do in fact show that the plastic flowed from the ribs into the wall sections, because one (and only one, out of many) of the short shots show an inverted circular line, with the ends of the line being located along a rib. However, Sorensen does explain how this inverted circular line indicates that the ribs direct the flow of plastic, nor does Sorensen attempt to explain away the fact that all of the other short shot samples do not feature this inverted circular line.

Thus, again, lacking any evidence to support its infringement claims and lacking any comprehensible argument or evidence contradicting Homeland's evidence of non-infringement, Sorensen resorts to evidentiary objections to the short shot test. Sorensen argues that the tests lack foundation, but the tests were conducted at Sorensen's behest (even if the instructions for the test were, it appears, not followed to the letter, *see* Sorensen Decl., Docket No. 130-2, ¶¶ 9-10), the short shots were produced to Sorensen in November 2011 (thus Sorensen had ample time to inspect the pictures and run its own, similar tests, if it so desired), and the samples themselves were inspected in person by Sorensen on November 7, 2011. *See* Supplemental Trojan Decl., Docket No. 135, ¶ 10. Moreover, the declaration of Joe Meyer suffices to authenticate the photographic results of the short shot test. *United States v. Workinger*, 90 F.3d 1409, 1415 (9th Cir. 1996) ("A document can be authenticated by the testimony of a witness with knowledge.").

In sum, Sorensen has presented no evidence[6] that the ribs (or any other feature of the Accused Products) are flow chambers, whereas Homeland has submitted argument and evidence that they are not flow chambers. Thus, there is no *genuine* dispute as to the fact that the Accused Products lack flow chambers. Therefore, there is no genuine dispute as to whether the Accused Products infringe the '460 Patent. Summary judgment would thus be granted in Homeland's favor.[7]

### 3. There is no genuine dispute as to the Accused Products' lack of exit/entrance positions and inscribed spheres.

Given that the Court would find it undisputed that the Accused Products lack flow chambers, it follows that the Accused Products also lack "exit positions" and "entrance positions," two key claim limitations, as the Court's construction of those terms (which adopted Sorensen's proposed construction) defines the exit/entrance positions by reference to the flow

---

[6]Jens Ole Sorensen, incredibly, even testified at his deposition that no testing has ever been performed to determine whether the plastic flowed "from the ribs" or "from the gate down between the ribs." Trojan Decl., Docket No. 121, Exh. 9.

[7]The Court will discuss the other arguments raised in the motion for summary judgment despite finding that the undisputed lack of "flow chambers" is ample grounds upon which the motion should be granted.

chambers. Similarly, the "inscribed spheres" limiting the claims are to be inscribed at the exit/entrance positions, thus without exit/entrance positions, the Accused Products cannot contain inscribed spheres as the term is used in the '460 Patent.

Sorensen presents diagrams purporting to show where the exit/entrance positions are, and where the inscribed spheres should be drawn. Sorensen Decl., Docket No. 130-2, Exh. 2. However, those drawings all assume that the ribs are flow chambers, a contention this Court has now found is not a matter of genuine dispute. Where Homeland makes the logical argument that without flow chambers, there can be no entrance/exit positions and no inscribed spheres due to this Court's construction of the terms at the Markman hearing, Sorensen merely presents a drawing where it, itself, drew entrance/exit positions and inscribed spheres onto a drawing it itself made of one of the Accused Products. Obviously, Homeland has the better argument here, and summary judgment is warranted for the additional reason that along with flow chambers, there is no genuine dispute as to Accused Products' lack exit/entrance positions and inscribed spheres.

### 4. There is no genuine dispute as to whether the Accused Products feature walls that increase in thickness at less than a threshold rate.

Homeland next argues that the Accused Products do not have "thin wall cavity sections" that increase in thickness, away from the flow of the plastic, at less than a "threshold rate" above which gaseous voids will form. Homeland accurately observes that even if you leave aside the contested construction of "threshold rate," in order for a product to include this claim limitation, the walls would need to increase in thickness; Homeland's products, it argues, have walls of uniform, not increasing, thickness. Sorensen does not appear to argue that a product with walls of uniform thickness could infringe the '460 Patent.[8]

Homeland presents engineering drawings that show the specifications of the Accused Products (Meyer Decl., Docket No. 120, Exhs. 2-7, filed under seal), and then compares the specifications in those drawings to three actual samples of the Accused Products, by means of using an electronic caliper to discern the wall thickness of the samples. Meyer Decl., Docket No. 120, Exh. 9 (filed under seal). This process showed that the thickness of the walls of the product do not vary by more than 0.1mm, which Homeland argues is the tolerance (allowable limit of variation) of its plastic molded parts. *See id.*; Decl. of William J. Tobin, Docket No. 119, ¶ 19 & Exh. B.[9] These photographs and the engineering specifications are properly authenticated by the Meyer Declaration. Both the engineering drawings and the photographs of the caliper

---

[8] Such a contention, though, is not unimaginable. Walls of uniform thickness presumably increase in thickness at a rate of zero. Zero must be below any threshold rate. Thus it appears *logically* possible for a product with walls of uniform thickness to still increase in thickness at less than a threshold rate. Sorensen did not make this argument, however, and more importantly, an argument that walls of uniform thickness "increase in thickness" at a rate of zero would represent a strange interpretation of the words "increasing in thickness" at odds with the term's everyday meaning, and would impermissibly expand the realm of products excluded by the patent.

[9] The Court should find that Sorensen's objections to the expert testimony of William J. Tobin is largely moot as the only point relied upon therein by this Order is the fact that the "tolerance" of the accused products is 0.1mm; Sorensen does not challenge this specific fact (but instead argues that there is a variation in the Accused Products' wall thickness that exceeds this accepted tolerance).

measurements were produced to Sorensen by October 2011. *See* Supplemental Trojan Decl., Docket No. 135-1, ¶¶ 8-9.

However, Sorensen produced to Homeland during discovery photographs that purport to depict one of the Accused Products, which show a variation of more than 0.1mm. *See* Trojan Decl., Docket No. 121, Exh. 17. Unlike Homeland's photographs, though, Sorensen's photographs are unauthenticated: none of the declarations Sorensen cites in its brief authenticate them. The photographs were submitted by Homeland as Exhibit 17 to the Trojan Declaration, and are identified by Homeland as "documents produced by Sorensen." Sorensen did not attach these photographs an exhibit to any of their own submitted declarations. Neither Sorensen, nor Paul Philip Brown (who aided Sorensen in research prior to the filing of the lawsuit, *see* Decl. of Melody A. Kramer, Docket No. 130-1, Exh. 4) nor Sorensen's counsel Melody Kramer has testified as to where or when the photographs were taken, or what the photographs depict. Thus, the photographs found at Exhibit 17 of the Trojan Declaration are unauthenticated, inadmissible, and cannot create an issue of genuine dispute as to the thickness of the walls of the Accused Products.

Sorensen also submitted drawings in its Contentions that depict a product with walls that increase in thickness. *See* Trojan Decl., Docket No. 121, Exh. 8. As for these drawings, Jens Ole Sorensen and Paul Philip Brown (who collected the data Sorensen used to make the drawings) testified that they did not record any measurements other than those displayed on the drawings themselves; there are no logs of which product the drawings depict, when the measurements were made, or how many measurements were taken. *See* Kramer Decl., Docket No. 130-1, Exhs. 3 & 4 (transcripts of Mr. Brown's deposition). All in all, again, Sorensen has failed to present even a scintilla of evidence to counter the weighty evidence put forward by Homeland, this time in regards to the question of whether the walls of the Accused Products are of uniform thickness.[10]

The Court is not weighing the credibility of the evidence put forth by both sides as to this matter, which would be inappropriate on summary judgment motion. Instead, Sorensen has put forward *no* admissible evidence indicating that the walls are *not* of uniform thickness, and given that Homeland has put forth authenticated photographic evidence of the Accused Products as well as the engineering specifications for the Accused Products, all indicating that the walls *are* of uniform thickness, the Court would find that there is no genuine dispute as to this issue. Therefore, it is not genuinely disputed that the walls do not increase in thickness at less than a threshold rate, since there is no evidence that they increase in thickness at all. Thus, the Accused

---

[10]One underdeveloped argument raised by Sorensen is that Jens Ole Sorensen states in his declaration that "[t]o get a proper measurement of wall thicknesses you should take the average across from the axis of two readings across from each other on the product." Sorensen Decl., Docket No. 130-2, ¶16. If Sorensen contends that Homeland's method of measuring wall thickness is invalid, and that accounts for the discrepancy between the testing, the Court would agree that summary judgment is not warranted as dueling experts would be required to show which method properly shows the wall thickness. Yet Sorensen does not fully flesh out this argument, instead resting on unauthenticated photographs that use *the same method as that used by Homeland*, and argues that the photographs establish a dispute of genuine fact. Indeed, Sorensen does not submit any photographs or data logs of any tests performed showing wall thickness of the Accused Products using Sorensen's own suggested averaging technique. Thus, the Court is not convinced that Sorensen has shown there is any method that could be used that would reach a different result from that reached by Homeland: the walls of the Accused Products are of uniform thickness.

Products lack this claim limitation. Summary judgment is warranted based on the absence of an increase in thickness of the Accused Products' walls, then, as well.

 Homeland also argues that summary judgment is warranted because no empirical testing was ever conducted to determine what the "threshold rate" of increase of wall thickness would be such that gaseous voids were never formed. Homeland asserts that no testing was ever done to determine the threshold rate for the Accused Products. Mr. Brown testifies that Sorensen also never determined the threshold rate for the Accused Products. Trojan Decl., Docket No. 121, Exh. 16 (transcript of Mr. Brown's deposition). Given that the Court constructed "threshold rate" as a rate that must be determined using test strips, and given that Homeland contends (and Sorensen does not deny) that no such tests were ever performed by Homeland (or anyone), summary judgment of non-infringement is warranted on this grounds as well. That said, this is merely an additional grounds for granting summary judgment, as is clear from the discussion *supra* as to flow chambers and walls that do not increase in thickness at less than a threshold rate.

 In sum, the Court would GRANT Homeland's motion for summary judgment as to non-infringement.[11]

### C. The Court would deny Defendant's Rule 56(d) request for a deferred ruling on Plaintiff's summary judgment motion.

 Sorensen argues, in less than two pages of its brief, that the Court should defer ruling on this renewed summary judgment motion because it "cannot present the full set of facts essential to justifying its opposition at this time" (Docket No. 129 at 9), in that Sorensen has not yet taken the deposition of Mr. Meyer or Mr. Tobin, Sorensen had not, prior to briefing its opposition: (1) taken Mr. Meyer's desposition; (2) taken Mr. Tobin's declaration; (3) taken a Rule 30(b)(6) deposition of Homeland Housewares, or (4) completed additional discovery related to the Court's construction of the term "threshold rate."

 As to the depositions, Sorensen has not identified in its briefing any specific facts it hopes to elicit from these deponents that could defeat summary judgment here, let alone set forth those specific facts in affidavit form, as required. *See Family Home and Fin. Cent., Inc.*, 525 F.3d at 827 ("The requesting party must show: (1) it has set forth in affidavit form the *specific facts* it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.") (emphasis added). Morever, it appears that Sorensen has been far from diligent in noticing and taking these three depositions, each in different ways.

 As for the deposition of non-party Mr. Meyer, a resident of China, Sorensen noticed the deposition on April 30, 2012. *See* Supplemental Trojan Decl., Docket No. 135, Exh. 3. However, Sorensen did not follow the requisite procedures for deposing a non-party foreign national, and also rejected Homeland's offer for his deposition to be taken by videoconference, citing admissibility concerns. *Id.* at Exh. 5. It appears that Sorensen demanded that Homeland transport Mr. Meyer to the United States for his deposition on its own dime, and Sorensen did

---

[11]Sorensen contends that Homeland's motion for summary judgment did not comply with the local rules because Homeland did not wait ten days after the parties' in-person meet-and-confer session. *See* C.D. Cal. L.R. 7-3. Homeland, though, notes persuasively that this is a *renewed* motion for summary judgment; any meet-and-confer session that occurred recently was extraneous to the session timely held on November 7, 2011 before the motion was originally filed in March 2012. *See* Docket No. 135 at 6.

not take any steps necessary to take his deposition according to the Hague Convention protocols. *Id.* The Court would not find that Sorensen has been diligent in taking this deposition, given that it was aware of the challenges of deposing a non-party foreign national as early as four months ago, and has taken no steps towards a compromise of a videotaped deposition or meeting the requirements of conducting an in-person deposition.

As to the deposition of Mr. Tobin, Sorensen represents that it was waiting until the date of expert discovery cutoff and until Mr. Tobin's report was made final. The Court has some sympathy for this line of reasoning. However, Mr. Tobin was identified as a declarant in the original summary judgment motion Homeland filed in March 2012, and Homeland told Sorensen that he would be available between April 9 and May 18, 2012. *See* Suppl. Trojan Decl., Docket No. 135, Exh. 6. Sorensen did not serve him with a deposition notice until July 31, 2012, and a deposition date was set for August 17, 2012. *See* Suppl. Trojan Decl., Docket No. 135 ¶ 7. The Court would not find that Sorensen was sufficiently diligent in taking this deposition as would be necessary to justify a delay pursuant to Rule 56(d). It was only after the motion was refiled that Sorensen noticed his deposition; meanwhile, Sorensen had been aware for months that the motion was pending and would involve Tobin's testimony.

Lastly, as to the 30(b)(6) deposition, even though discovery has been open in this case since June 2011, Sorensen did not notice Homeland until July 31, 2012, after the filing of this summary judgment motion, noticing the deposition for August 17, 2012. *See* Suppl. Trojan Decl., Docket No. 135, Exh. 1; Kramer Decl., Docket No. 130-1, Exh. 2. This sort of last minute scramble to notice a deposition is completely incompatible with the level of diligence required of a party moving for relief under Rule 56(d). Even though Sorensen claims that it has not been able to take a 30(b)(6) deposition because of "a claimed emergency of the deponent," that does not excuse the late noticing of the deposition. *See* Kramer Decl., Docket No. 130-1, ¶ 6. In fact, even though discovery has been open for more than a year, Sorensen had taken zero depositions in this case before briefing its opposition to this motion. *See* Suppl. Trojan Decl., Docket No. 135, ¶ 2.

As to the Court's construction of "threshold rate," which Sorensen contends will necessitate "previously unanticipated discovery on facts relating to every detail of how the molds in question were made to determine what types of testing was done in the design process" (*see* Docket No. 129 at 9), this new discovery could not support a deferral of the summary judgment ruling, because the finding that there is no genuine issue of material fact as to whether the Accused Products have flow chambers (to take just one example of a claim limitation not found in the Accused Products) is completely irrelevant to the matter of the empirical testing that must be done to determine the threshold rate. Therefore, no discovery that Sorensen might take concerning empirical testing used to determine a "threshold rate" could change the result of this summary judgment ruling in Homeland's favor.

To be clear, while the Court rests largely on Sorensen's lack of diligence in discovery in denying the Rule 56(d) motion, the Court could just as equally rest on its lack of asserted specific facts that could aid its cause. Had Sorensen stated that it knew, for one reason or another, that the dye or short shot tests were fabricated, and could elicit that fact in discovery, that might present a different scenario. Had Sorensen stated that it could and would promptly run its own tests that would contradict the results of the dye or shot shot tests, that too might present a

different scenario. Instead, after more than a year of opportunities to take discovery and run tests, Sorensen has presented no evidence whatsoever showing that the Accused Products do in fact contain all the claim limitations, and has not even suggested what type of evidence it might present in that regard. Relief under Rule 56(d) is not warranted here.

### III. Conclusion

The Court would GRANT Homeland's motion for summary judgment as to non-infringement.[12]  This ruling would also seem to be dispositive of Sorensen's counterclaim for infringement.  The case will still move forward as to Homeland's invalidity/unenforceability declaratory judgment claim.

---

[12]The Court would note that it has ignored the parties' dispute as to whether Sorensen is a "patent troll" and has disregarded all argument and evidentiary objections related to that issue; the Court has ruled on this motion without regard to other actions filed by either party or events that transpired therein. *See, e.g.*, Kramer Decl., Docket No. 130-1, ¶ 5.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-3720-GW(JEMx) | Date | July 5, 2012 |
|---|---|---|---|

| Title | *Homeland Housewares, LLC v. Sorensen Research and Development Trust* |
|---|---|

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **(IN CHAMBERS): RULING ON MARKMAN HEARING**

Attached hereto is the Court's ruling on the Markman Hearing. The Court would adopt Homeland's proposed construction of the terms "threshold rate." The Court would adopt Sorensen's proposed construction of the terms "flow chambers," "thin wall," "exit/entrance positions," and "inscribed spheres."

A Status Conference is set for **July 19, 2012 at 8:30 a.m.** Counsel may appear telephonically provided that notice is given to the clerk by July 17, 2012.

Initials of Preparer    JG

*Homeland Housewares v. Sorensen Research and Dev. Trust*, Case No. CV-11-3720
Ruling on Markman Hearing

## I. Background

Plaintiff Homeland Housewares LLC ("Plaintiff" or "Homeland") filed suit against Sorensen Research and Development Trust ("Defendant" or "Sorensen") on April 29, 2011, seeking a declaratory judgment as to the invalidity and unenforceability of a patent held by Sorensen, U.S. Patent No. 6,599,460 (the "'460 Patent"), and a declaratory judgment of non-infringement of that patent. *See* Compl., Docket No. 1. Homeland additionally seeks attorney's fees. Compl. ¶ 16. Sorensen, in its Answer, asserted a counterclaim of infringement of the '460 Patent. *See* Docket No. 14.

Sorensen sent a cease and desist letter to Homeland on March 18, 2011, accusing Homeland of infringing the '460 Patent on account of Homeland's manufacture and sale of certain blenders (the "Accused Products") that, according to Sorensen, infringed upon a plastic injection molding method claimed by its '460 Patent. Compl. ¶ 9. Homeland's counsel promptly responded to the cease and desist letter denying any infringement and differentiating Homeland's product from the '460 Patent. Compl. ¶¶ 11-13. The '460 Patent claims a method of injection molding that prevents "gaseous voids" from developing in "thin wall" plastic products as they are molded; Homeland argues that the walls of its product are thick enough that it "has none of the characteristic problems of gaseous voids described in the '460 Patent." Compl. ¶ 15.

The '460 Patent teaches that gaseous voids can be avoided using the following process. Fluid plastic is injected into a mold cavity through what is known as a "gate". The fluid plastic travels through "flow chambers" and then spreads to "thin wall" sections between the flow chambers. The thickness of the thin wall sections increases in the direction of the flow. Importantly, the increase in thickness of the "thin wall" sections cannot surpass a "threshold rate" above which unwanted, problematic "gaseous voids" will form in at the thin wall cavity section.

The parties are now before the Court for a claim construction hearing.

## II. Legal Standard

The scope of a patent is delineated by its claims, namely the numbered paragraphs at the end of the patent's specification. *Markman v. Westview Instruments, Inc.*, 517 U.S. 371, 373 (1996). Patent infringement analysis involves two steps: (1) claim construction; and (2) application of the properly construed claim to the accused product. *See TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). Stated otherwise: first, the scope of the claims are determined as a matter of law, and second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device. *See Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002).

Claim construction is an issue of law for the Court to decide. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc) (*Markman I*), *aff'd*, 517 U.S. 370 (1996). It is a procedural step intended to clarify the legal meaning of claim language in the

-1-

context of a particular case so that a jury can make a simple factual determination as to infringement or invalidity. *See Markman*, 517 U.S. at 370, 384-85. Indeed, before a jury can determine if patents are invalid or if they have been infringed, the Court must determine the meaning and scope of the patent claims at suit through claim construction. *See Markman I*, 52 F.3d at 976; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-24 (Fed. Cir. 2005) (setting forth in detail the process and rules governing claims construction), *cert. denied sub. nom, AWH Corp v. Phillips*, 546 U.S. 1170 (2006). Only after claim construction can the jury compare the allegedly infringing device against the claims. *See Markman I*, 52 F.3d at 976. The Court's hearing on the parties' proposed claims construction is called a "Markman hearing."

In conducting a Markman hearing, the words of an asserted claim are looked to first and are to be given their ordinary meaning, unless a special meaning is clearly defined in the specification. *See Phillips*, 415 F.3d at 1312; *Markman I*, 52 F.3d at 979-80; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The meaning is that which would be understood by a person having ordinary skill in the art. *See Markman I*, 52 F.3d at 979. Some cases have implied that if the claim terms are clear and unambiguous as to their ordinary meaning one need look no farther; however, "the specification is always highly relevant to the claim construction analysis." *Vitronics*, 90 F.3d at 1582. "Claims must be read in light of the specification of which they are a part." *See Markman I*, 52 F.3d at 979. However, a limitation should not be read into the claim from the preferred embodiment. *See, e.g. Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). The Court may also consult the public record of the patent's prosecution history in construing the scope and meaning of the claim terms. *See Markman I*, 52 F.3d at 979-80. But, as with the specification, the prosecution history should not be used to enlarge, diminish, or vary the claim limitations. *See id.* In addition to the plain words of the patent claims, the specification and the prosecution history, the Court is authorized to consult extrinsic evidence, "including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F. 3d at 1317. That said, "[a]fter Phillips, there is no question that the intrinsic evidence is the most important source for claim construction." Edward D. Manzo, <u>Patent Claim Construction in the Federal Circuit</u> § 1:32 (2011 ed.).

## III. <u>Analysis</u>
### A. Identification of Disputed Terms
The parties have submitted a Joint Claim Construction Report ("JR")[1], opening briefs and respective replies in connection with the upcoming Markman hearing. Homeland requests that

---

[1]It appears as though Sorensen has not fully participated in the preparation of the JR as instructed by the Court in the April 9, 2012 minute order, where the parties were ordered to prepare a report with "1) identified terms, 2) each side's proposed definitions, 3) listed explanations in terms of importance, and 4) explanation why terms need to be interpreted and what impact on either the case or aspects of the construction." Docket No. 102. Sorensen's sections merely refer to the relevant sections of its opening and reply briefing. Sorensen did prepare a summary chart, and but it merely recites each side's proposed construction and cursorily summarizes Sorensen's arguments; Sorensen also does not dispute Homeland's accusation that "[Homeland] was unable to participate in the preparation of this summary chart as [Sorensen] did not provide it until after 8 pm the night before this brief was due." Docket No. 105 at 4.

the Court construe seven terms in Claim 1 of the '460 Patent: 1) "thin wall"; 2) "thin wall cavity section"; 3) "flow chambers"; 4) "exit positions"; 5) "entrance positions"; 6) "inscribed-sphere dimensions; and 7) "threshold rate". Sorensen contends that only "threshold rate" requires judicial construction; the Court will consider the parties' arguments as to all seven terms.

Claim 1 of the '460 patent states (with disputed terms bolded):

1. A method of injection-molding a product that includes at least one **thin wall**, comprising the steps of:

(a) combining a plurality of mold parts to define a mold cavity for forming the product and at least one gate from which fluid plastic material may be injected into the mold cavity, wherein the mold cavity includes at least one **thin-wall cavity section** and at least two opposed **flow chambers** that adjoin opposite edges of the thin-wall cavity section for directing injected fluid plastic material from **exit positions** of the said at least two opposed flow chambers into corresponding **entrance positions** of the at least one thin-wall cavity section to thereby form at least one thin-wall portion of the product, wherein the at least one thin-wall cavity section includes at least one zone that is located between said at least two opposed flow chambers, and wherein within the at least one zone **inscribed-sphere dimensions** at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber; and

(b) injecting fluid plastic material from the gate into the mold cavity to form the product;

wherein step (a) comprises combining mold parts that define a said mold cavity in which within said at least one zone of the at least one thin-wall cavity section the thickness of the at least one thin-wall cavity section increases in the general direction of flow within the flow chambers adjoining said zone, with said increase being at less than a **threshold rate** to thereby prevent injected fluid plastic material so directed into the at least one zone from at any time surrounding any gaseous void within the at least one zone.

JR, Docket No. 105, at 2.

### B. Rule of definiteness

Before the Court proceeds to evaluate the parties' competing interpretations of the disputed terms, the Court would address an issue common to many of their arguments: the appropriate standard and application of the law of definiteness. Homeland argues in briefing that many of the terms in the '460 Patent "cannot be construed because they are indefinite," since the terms do not have a precise mathematical definition but instead are relative, such as "thin" and "threshold rate." *See* Docket No. 63 at 3, 6, 14. Sorensen, of course, denies that the terms are indefinite, and also contests Homeland's argument on the grounds that Homeland has applied the

wrong legal standard for determining definiteness. As a general matter, the Court would agree to some extent with Sorensen.

In order for a patent to properly "claim" an invention, the claims must be sufficiently definite. *See* 35 U.S.C. § 112 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention"). The burden is on party asserting invalidity to prove indefiniteness. 35 U.S.C. § 282 ("A patent shall be presumed valid"). The evidentiary burden on such a party is to show indefiniteness by means of clear and convincing evidence. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345 (Fed. Cir. 2007). The standard for determining whether a claim is impermissibly indefinite on account of the use of relative terms is set forth in a recent Federal Circuit case: "Claims using relative terms such as 'near' or 'adapted to' are insolubly ambiguous only if they provide no guidance to those skilled in the art as to the scope of that requirement." *Power-One, Inc. v. Artesyn Tech., Inc.* 599 F.3d 1343, 1348 (Fed. Cir. 2010).

Homeland argues that the "primary purpose" of the definiteness requirement is to "provide clear warning to others as to what constitutes infringement of the patent." Docket No. 63 at 4. However, a review of recent Federal Circuit caselaw discloses that in fact, "the test for indefiniteness does not turn on whether a potential infringer could determine infringement, but instead on whether the claim delineates to a [person of ordinary skill in the art] the bounds of the invention." Edward D. Manzo, Patent Claim Construction in the Federal Circuit § 4:2 (2011 ed.); *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1371 (Fed. Cir. 2008) (disapproving any test where "claim definiteness requires that a potential infringer be able to determine if a process infringes"); *see also Invitrogen Corp v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("'The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention'") (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005)).

Homeland argues that if a claim's key term is "completely relative, having no precise meaning, then the claim would be indefinite ... it must have a definite meaning," and also assails terms as indefinite because their mathematical definition as applied to a particular embodiment of the patent "can only be determined empirically on a case-by-case basis." Docket No. 63 at 6-7, 14. Homeland's argument misses the mark. Time after time, courts have held patent terms to be sufficiently definite even if they do not provide mathematical specificity, but only are defined in relation to other parts of the patented invention or its environs. *See, e.g., Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45 (1923) ("Expressions quite as indefinite as 'high' and 'substantial,' in describing an invention or discovery, in patent specifications and claims, have been recognized by this court as sufficient"); *Invitrogen Corp. v. Biocrest Mfg., L.P.* 424 F.3d 1374, 1383 (Fed. Cir. 2005) (holding that "improved" is a sufficiently definite term); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007) (holding that "near" is a sufficiently definite term); *see also Andrew Corp. v. Gabriel Elec., Inc.*, F.2d 819, 821 (Fed. Cir. 1988) (holding that "close to," "substantially equal" and "closely approximate" are sufficiently definite terms).

Thus, the Court rejects Homeland's contention that relative terms, simply by virtue of being relative, are insufficiently definite to render the patent valid.

-4-

## C. The Parties' proposed constructions of the disputed terms

*1. "Thin wall" and "thin wall cavity section"*

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| **thin wall** | a wall portion having a thickness of less than 1mm | a wall portion that is formed within a thin-wall cavity section of the mold cavity |
| **thin wall cavity section** | a section of the mold cavity that has a thickness of 1mm or less | a section of the mold cavity that includes one or more zones and adjoins to at least two opposed flow chambers |

Homeland and Sorensen appear to be speaking over each other, to a certain extent, as to whether it is necessary to construe "thin wall" separately from and in addition to "thin wall cavity section"; the key point as to that dispute is that neither party appears to argue that the term "thin wall" should be constructed differently if standing alone than in the context of the term "thin wall cavity section."[2] Thus, the Court would consider the construction of these two terms at once.

Sorensen contends that neither term requires any construction whatsoever, because Homeland "improperly seeks to impose a precise mathematical range of 1mm onto the term ["thin wall"], contrary to the context of the patent specification itself, deposition testimony of a co-inventor of the subject patent, as well as Homeland's own cited articles." JR, Docket No. 105 at 10. Sorensen additionally argues that the stand-alone term "thin wall" requires no construction because it is found only in the preamble to Claim 1, not in the body of the Claim. In both contexts (standing alone and embedded in "thin wall cavity section"), then, the parties disagree as to whether "thin wall" should be defined as a precise mathematical range of less than 1mm, as proposed by Homeland, or as a "term of degree that is inherently contextual" as proposed by Sorensen. JR, Docket No. 105, at 13.

The construction of the term "thin wall cavity section" is of great moment in this case; if the Court finds that Homeland has proposed the proper construction, Sorensen's argument that Homeland is infringing its patents will be largely eviscerated:

> It is Homeland's contention that the accused products are not "thin wall" products because they are approximately 3 to 4 times thicker than the standard definition of the thickest "thin wall" [*i.e.* 1 mm,

---

[2]According to Homeland, "Sorensen attempts to distinguish 'thin wall' as it appears in the preamble from its usage in the body of the claim (e.g. 'Thin wall cavity section')." JR, Docket No. 105 at 5. However, nowhere in the briefing or the JR can the Court find any arguments put forth by Sorensen that "thin wall" as used in the preamble (standing alone) should have a different definition than when the term is embedded in the phrase "thin wall cavity section" - in both contexts Sorensen resists Homeland's suggested construction of a mathematical range.

> according to Homeland]. Therefore, Homeland's products would
> not infringe the '460 patent for the simple reason that they are not
> "thin wall" products that suffer "gaseous voids," and thus there
> would be no reason to use the claimed method to prevent a
> problem that does not exist in the first place.

JR, Docket No. 105 at 9.

Homeland turns to extrinsic evidence, and points to articles by persons of ordinary skill in the art of plastic injection molding stating that a "thin wall" is generally defined as a wall of 1mm or less; Homeland presents four such articles. *See* Docket No. 63 at 7, 8 n.2; Trojan Decl., Docket No. 105, Exhs. 7, 8, 9, 10. Homeland also notes that the preferred embodiment of the patent defines the thin wall as 0.15mm, and also notes that its suggested interpretation, *i.e.* less than 1mm, is not inconsistent with Sorensen's proposed interpretation of the term "thin wall," provided the flow chambers are thicker than the less-than-1mm-thick thin wall. *See* Docket No. 64 at 3-4.

Sorensen argues that all of the intrinsic evidence available, such as the specification, make clear that the term "thin wall" is relative, and should not be interpreted to have a mathematically precise definition such as the one proposed by Homeland. *See* Docket No. 57 at 5. Sorensen presents its own interpretation: "A person of ordinary skill in the art of injection molding reading the patent would understand that the term 'thin wall' refers to the relative nature between a thin-wall cavity section and the relatively thicker walled cavity sections of the flow chambers." Docket No. 69 at 5. Sorensen then argues that at least two of the four articles presented by Homeland "explicitly acknowledge that thin wall is a relative term." Docket No. 69 at 3. As to the article by Guojun Xu, both parties are, in part, correct: "Thin wall injection molding ... is conventionally defined as molding parts that have a nominal wall thickness of 1 mm or less .... Thin wall is relative, however. It can also be named 'thin wall' as the flow length/thickness is above 100 or 150." Trojan Decl., Docket No. 105, Exh. 7 at 1. As to the article by Kurt Weiss, again, both parties can find some support for their interpretation of the term: "These days, 'thin wall' is generally defined by portable electronics parts having a wall thickness less than 1mm. For large automotive parts, 'thin' may mean 2mm." Trojan Decl., Docket No. 105, Exh. 8 at 1. Sorensen also cites various patents (unrelated to the suit) claiming thin-wall molding techniques that contain only relative definitions of "thin wall." Docket No. 69 at 4.[3]

In sum, whether a person of ordinary skill in the art of plastic injection molding would understand the bounds of the '460 Patent if the term "thin wall" has only a relative definition presents a close question. However, Sorensen has presented sufficient evidence to show that in

---

[3]Sorensen also presents deposition testimony of an inventor of the '460 Patent, Jens Ole Sorensen; Homeland, however, has presented caselaw indicating that the "inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008). While not all of the quoted testimony can fairly be said to touch upon Mr. Sorensen's "subjective intent," the remaining quoted sections presented by Sorensen is not dispositive or particularly helpful to deciding the issue in any event. *See, e.g.*, Docket No. 57 at 6 ("Q: Is there anywhere in the '460 Patent that defines thin-wall cavity section in relation to the thick-wall section? A: I think it's inherent in the whole patent.").

-6-

some contexts, a term can be defined relatively and still be sufficiently definite that the patent is valid.[4] In contrast, Homeland's argument fails because it assumes that any relative definition must by nature fail for indefiniteness. Thus, the Court would adopt Sorensen's proposed construction of "thin wall," and that definition should also be used to construe "thin walled cavity section".[5]

### 2. *"Flow chambers"*

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| **flow chambers** | "Opposed flow chambers… for directing injected fluid plastic material" are channels, located on opposite sides of the thin wall cavity section, which are connected to the gate for "directing" injected fluid plastic material from the gate into the thin-wall cavity section. The flow chambers "direct" the flow of the fluid plastic material in that the plastic material must flow through the channels before spreading to the thin-wall cavity section. | sections of a mold cavity that adjoin to opposite edges of a thin-wall cavity section for at least directing injected fluid plastic material from exit positions into corresponding entrance positions located in the thin-wall cavity section, wherein in a zone of the thin-wall cavity section the inscribed-sphere dimensions of the exit positions are larger than the inscribed sphere dimensions of the corresponding entrance positions |

The construction of "flow chambers" is an important issue because Homeland contends that the Accused Products do not, in fact, have flow chambers, if that term is properly construed. Homeland says that flow chambers direct the flow of the plastic during the injection process, and as such, they must be attached to a "gate," which is the point where the plastic is injected into the mold. Homeland avers that what Sorensen deems to be "flow chambers" in the Accused

---

[4]An interpretation could be adopted between the positions of the parties - *i.e.*, a definition that is both relative, in that it defines a wall as "thin" only in relation to the thickness of the other elements of the product, and also mathematically precise, such as limiting a "thin wall" for purposes of the '460 Patent to those where the ratio of cavity wall thickness to flow chamber is less than a certain number. This is different from Homeland's suggestion because it does not consider the thinness of the "thin wall" in a vacuum.

[5]Homeland states in the Joint Report: "there is no material distinction between 'thin wall' and 'thin-wall cavity section' as discussed below, since if 'thin wall' is defined to be 1 mm or less, then 'thin-wall cavity section' means a section of the cavity that is 1 mm or less in thinness." JR, Docket No. 105 at 7.

Products, are in fact merely "ribs" that assist in the already-made Accused Product's operation in that they "create turbulence in the blending process .... Their function relates to how the device is used, not how it is made." JR, Docket No. 105 at 16.

Sorensen rejoins that a flow chamber does not need to be attached to a gate; a flow chamber merely has to "at least" direct the flow of the plastic from an exit position in one thin walled cavity section to the entrance position of another, where the exit position is larger than the entrance. Sorensen points out that the patent specification discusses an alternative embodiment where a flow chamber is not attached to a gate; therefore, intrinsic evidence suggests that the proper interpretation of a flow chamber would not include a requirement that it is attached to a gate. *See* Docket No. 69 at 9.

Homeland argues that the construction of "flow chambers" is also relevant to the validity of the patent in the following manner. If a flow chamber is not attached to a gate, then Homeland argues the flow chamber cannot work, and "the claim is invalid for lack of enablement under 35 U.S.C. § 112." JR, Docket No. 105 at 17. The reason Homeland says the flow chambers cannot function unless attached to a gate is that "the fluid plastic would flow directly into the 'thin-wall cavity section' instead flowing [*sic*] though the 'flow chambers' thus defeating the intended purpose of the invention." Docket No. 64 at 9. Since a proper construction preserves the validity of the patent (*see Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1369 (Fed. Cir. 2002)), Homeland argues that "flow chamber" must be construed so as to be attached to a gate.

Sorensen emphasizes that it is Homeland's burden to show a lack of enablement by clear and convincing evidence and they have failed to present anything other than attorney arguments[6] as to enablement. Docket No. 69 at 9; *see Morton Intern., Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1469 (Fed. Cir. 1993). Sorensen asserts that the plain language of the specification indicates that a flow chamber is not always attached to a gate, and additionally points to the testimony of co-inventor Jens Ole Sorensen purportedly indicating that a flow chamber can function without a gate. *See* Docket No. 69 at 10. However, such testimony is far from clear as to the issue of whether a flow chamber can exist without being attached to a gate:

> Q: So in the case of the Magic Bullet, you can at least
> agree that the plastic fills the space between the ribs both from the
> gate between the ribs and also from flowing from one rib to the
> other, correct?
>
> A: Yes, but not everywhere between the flow channels -
> flow chambers do we get any plastic from the gate. At the bottom
> of the flow chambers, we get between - at the bottom between the
> flow channels we get some flow from the gate. Up higher we only
> get flow from the flow chambers.

---

[6]Homeland has also argued that the preferred embodiment of the '460 Patent states that the flow chamber must be attached to a gate. *See* Docket No. 63 at 9. However, the preferred embodiment cannot be used to limit the claim, thus such argument carries little force. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 ("it is improper to read limitations from a preferred embodiment described in the specification-even if it is the only embodiment-into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited").

Docket No. 69 at 11.

Given that the patent specification expressly contemplates flow chambers unconnected to a gate, and that a patent specification "acts as a dictionary" for the terms of a patent, the Court would adopt Sorensen's interpretation of the term "flow chambers." *See Victronics Corp.*, 90 F.3d at 1582. While this finding would, it seems, preclude Homeland from arguing that the Accused Products do not contain flow chambers based only on the "ribs" being unattached to a gate, it would of course not prevent Homeland from asserting its enablement arguments at a different procedural juncture, so as to argue that the patent is invalid based on the adopted construction.[7]

### 3. *"Exit positions" and "entrance positions"*

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| at least two opposed flow chambers that adjoin opposite edges of the thin-wall cavity section for directing injected fluid plastic material from **exit positions** of the said at least two opposed flow chambers into corresponding **entrance positions** of the at least one thin-wall cavity section | **Exit positions** are discrete points in the flow chambers where the fluid plastic material exits the flow chambers and enters the thin-wall cavity section. | An **exit position** is a flow path for injected plastic that is situated in a flow chamber and leading to a corresponding entrance position that is situated in another section of the mold cavity. |
| | **Entrance positions** are discrete points in the thin-wall cavity section where the fluid plastic material enters from the flow chambers. | An **entrance position** is a flow path for injected plastic that is situated in a thin-wall cavity section and leading from a corresponding exit position that is situated in different section of the mold cavity |

The main point of contention between the parties is whether an "exit position" and/or "entrance position" can consist of a "flow path," as advocated by Sorensen, or whether an exit/entrance position must be a discrete point within the flow chamber, *i.e.* the specific point at which the fluid plastic exits the flow chamber or enters the thin-walled cavity section, as

---

[7]At the Markman hearing, Homeland suggested that the Court adopt its construction of "flow chambers" excising the portion of it requiring the flow chamber to be attached to a gate, because Homeland's definition would be easier for a jury to comprehend. The Court would decline to do so, because any eventual jury will need to understand all of the terms and phrasing of the patent's claims in any event, and Sorensen's construction merely parrots the claim language.

proposed by Homeland.

Again, the construction of these terms will have a significant impact on the case as a whole. Homeland contends that the ribs in the Accused Products, which Sorensen argues are flow chambers, have no openings that could constitute "discrete points of exit" for the fluid plastic, and thus, do not infringe the '460 Patent. *See* Docket No. 105 at 20. Sorensen thus construes "exit position" to be simply a "path" leading to another section of the mold cavity, which definition could encompass the entire flow chamber. Similarly, Homeland asserts that an entrance position must be a discrete point in the thin walled cavity section, whereas Sorensen argues that the thin-walled cavity section as a whole can be an entrance position.

Homeland seems to be correct in noting that Sorensen's construction could essentially equate exit and entrance positions with, respectively, flow chambers and thin-walled cavity sections, and thus would improperly read out some limitations in the claim. *See Callicrate v. Wadsworth Mfg, Inc.*, 427 F.3d 1361, 1369 (Fed. Cir. 2005). However, the patent's diagrams indicate that the entrance and exit positions are not specific points or holes, as Homeland appears to suggest, but instead merely sections along the thin walled cavity section (in the case of an entrance position) or flow chamber (in the case of an exit position). Moreover, Sorensen made clear at the Markman hearing that the fluid plastic exits the flow chambers and enters the thin walled cavity section all along the sides of these sections of the mold cavity, not at one specific point in each.

An additional argument raised by Homeland is that the grammar of the claim supports their interpretation of the terms exit/entrance positions; they argue:

> The claim expressly recites 'exit positions' and 'entrance positions'
> in the plural, so there must be more than one exit and more than
> one entrance position .... Under Sorensen's construction there can
> be only one long exit position and one long entrance position,
> which clearly contradict the language of the claim.

Docket No. 64 at 5. The Court would not find this argument particularly helpful, as the language of Claim 1 belies Homeland's simplistic grammatical conclusions; it speaks of "directing injected fluid plastic material from **exit positions** of the said at least two opposed flow chambers into corresponding **entrance positions** of the at least one thin-wall cavity section." Homeland's argument fails to lend much support to their argument because the plural nature of the term is likely due to the fact that it corresponds to the "at least two" opposed flow chambers, which would necessarily lead to plural exit positions out of them and plural entrance positions into the thin walled chambers.

Sorensen raises the argument that "designing 'discrete and distinct points' into a mold cavity requires that there be a steel mold part that surrounds the 'discrete and distinct points' prohibiting this portion of the mold cavity from being filled with plastic." Docket No. 69 at 14. This argument appears to mischaracterize Homeland's proposed construction; the Court does not understand Homeland to suggest that an entrance/exit point is an additional aperture within the thin walled cavity section or the flow chamber, but instead, a specific point in each where the fluid plastic exits or enters, as the case may be.

In sum, given the overall workings of the patent and the diagrams thereof, the Court would adopt Sorensen's construction of "entrance/exit positions", since a person of ordinary skill

in the art would not understand these terms to speak of discrete openings, but instead the lengths of the flow chambers and thin walled cavity sections through which the fluid plastic flows.

### 4. *"Inscribed sphere dimensions"*

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| ...and wherein within the at least one zone **inscribed-sphere dimensions at each entrance position** are smaller than **inscribed-sphere dimensions at the corresponding exit position** of the adjoining flow chamber; | The spherical diameter of each discrete point where the fluid plastic material enters the thin-wall cavity section is smaller than the spherical diameter of each corresponding discrete point where the fluid plastic exits the flow chamber. | An **inscribed-sphere dimension at an entrance position** is the diameter of the largest sphere that will fit into the mold cavity at the entrance position. An **inscribed-sphere dimension at an exit position** is the diameter of the largest sphere that will fit into the mold cavity at the entrance position. |

The parties' disagreement over these terms is largely just a restatement of the argument over the proper definitions of entrance/exit positions. Homeland argues:

> [T]he diameter of the exit opening is not synonymous with the width of the flow chambers (which is what Defendant's proposed construction would mean). Nor is the diameter of the entrance opening synonymous with the width of the thin wall cavity section. Sorensen has argued that the respective "inscribed-sphere dimensions" are calculated by measuring the flow chambers and the thin wall sections themselves. In other words, according to Sorensen, the spherical diameter at the exit position is just the thickness of the flow chamber, and the spherical diameter at the entrance position is just the thickness of the thin wall section. By this logic, the limitation – "inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber"—means only that the thin wall section is smaller (i.e. thinner) than the adjoining flow chamber .... Under Sorensen's construction the claim is incredibly broad because it would cover all products having a thin wall section that is smaller (i.e. thinner) than an adjoining flow chamber.

JR, Docket No. 105 at 25. This argument has some appeal; again, Sorensen's construction seems to read out the limitations of the "exit/entrance position" terms.

However, Sorensen directs the Court to the diagrams in the specification, where it does appear that the inscribed spheres are the largest spheres that can be drawn in the thin walled

cavity chambers and flow chambers. Docket No. 57 at 19. Sorensen also presents the testimony of Jens Ole Sorensen, which is (again) not entirely clear, but appears to support its construction since he tries to put the "inscribed sphere" term into layman's terms as follows: "[Y]ou can think of putting a small balloon into that position and blowing it up until it starts its changing shape, because the walls will change the shape of it." Docket No. 57 at 19.

Homeland appears to argue in briefing that the term also fails for indefiniteness, but presents only cursory argument on the matter (*see* Docket No. 63 at 10) and does not provide any case citations, so the Court would not find that it have met its evidentiary burden; Homeland's indefiniteness argument really boils down to a reiteration of their proposed construction of exit/entrance positions:

> [S]ince the 'exit positions' and 'entrance positions' cannot be precisely determined, it is impossible to determine whether the 'inscribed-sphere dimensions at each entrance position are smaller than inscribed-sphere dimensions at the corresponding exit position of the adjoining flow chamber.' Therefore the claim is indefinite[.]

Docket No. 63 at 11 (quoting Claim 1 of the '460 Patent). While Sorensen seems plainly correct in noting that "an inscribed sphere is a readily understood mathematical concept," (Docket No. 69 at 17), the point remains that *where* these spheres are to be inscribed remains a thorny issue. Sorensen repeats again and again that it is perfectly simple to just inscribe the spheres "at a pair of corresponding exit and entrance positions" (*id.*), but as Homeland notes, that would render identical a) the maximum width of the thin walled cavity chambers and the inscribed sphere at the entrance position thereof, and b) the maximum width of the flow chamber and the inscribed sphere at the exit position thereof.

Since the patent diagrams and the text of the claim makes clear that what is key about the inscribed spheres is that the sphere inscribed at the entrance point to the thin wall cavity section is smaller than that inscribed at the exit position of flow chamber, and since the Court has adopted Sorensen's construction of entrance and exit positions, the Court would similarly adopt Sorensen's construction of "inscribed spheres."

### 5. "Threshold rate"

| Disputed Term or Phrase in '460 Patent, Claim 1 | Homeland's Proposed Construction | Sorensen's Proposed Construction |
|---|---|---|
| **threshold rate** | the rate of increase in the thickness of the thin wall section as empirically determined by conducting test strips at the time the mold is made in order to prevent gaseous voids. | the increase in the thickness of the thin-wall cavity section within a zone below which void-based irregularity formation between the adjoining flow chambers is prevented |

The construction of the term "threshold rate" is another critical issue in this case. During the patent prosecution process, the '460 Patent was initially rejected as being obvious in light of

two other, similar patents, the "Allen" and "Smith" Patents. *See* JR, Docket No. 105 at 31. The Allen patent taught that "thin walled" sections are necessary to prevent gaseous voids, and the Smith patent taught that the "thin walled" sections must increase in thickness in the direction of the flow of plastic. *See id.* However, what is purportedly new about the '460 Patent is that the increase in the thickness of the thin walls, which must increase in the direction of the flow of fluid plastic, must be at a certain rate, the "threshold rate," if gaseous voids are to be prevented. Indeed, Sorensen distinguished its application from the Allen and Smith patents by noting that "There is nothing in the applied references that suggest that void-based irregularities can be prevented ... by limiting the rate of the thin-wall-cavity-section-thickness increase in said general direction to less than a threshold rate." Trojan Decl., Exh 2; *see* Docket No. 63 at 12. In other words, in order for gaseous voids to be prevented in plastic injection molding technique, the Allen patent's key teaching was that the walls must be thin, the Smith patent's key teaching was that the thin sections should increase in thickness in the direction of the plastic, and the '460 Patent's key teaching is that such increase must not occur at more than a threshold rate.

Sorensen argues that the term "threshold rate" needs no more specific construction than the term's everyday meaning, and cites the dictionary definition of threshold as well as testimony where Jens Ole Sorensen states, "Threshold is a common English word and it is not defined, it is not used in any special sense in this patent." Docket No. 57 at 22. It explains that once the threshold rate "exceeds a certain mathematical value, which value depends on variables including mold cavity geometries and the type and amount of plastic used, void-based irregularities can form in that thin-wall cavity section." Docket No. 69 at 21.

Unlike in the dispute regarding the term "thin wall," Homeland here does not attempt to construct a relative term to have one precise, across the board mathematical meaning. Instead, Homeland argues that the "threshold rate" should be constructed as the rate "as determined by conducting test strips at the time the mold is made" such that gaseous voids do not form. *See* Docket No. 63 at 13. Homeland persuasively notes that the patent specification itself dictates that the threshold rate can only be determined by conducting such empirical tests. *Id.* Indeed, Sorensen also notes that the specification envisions that the threshold rate for a given product would be determined by conducting empirical tests as to that specific product. Docket No. 57 at 22.

Given the language of the specification, and Sorensen's admission that the "value" of the "threshold rate" for a given item would vary based on "mold cavity geometries and the type and amount of plastic used," it is hard to see how they can plausibly argue that the "threshold rate" of the Accused Products should not be construed so as to involve an empirical test to see *what that rate is*, in the case of the Accused Products. The Court would thus adopt Homeland's proposed construction.

Homeland neatly sums up the difficulty in construing this term when it argues: "The logic of the claim is circular: gaseous voids are prevented by increasing the thickness of the thin wall at less than a threshold rate, but the threshold rate itself can only be determined by repeated testing until gaseous voids are prevented." Docket No. 63 at 13. This is, in essence, a definiteness argument, since a person of ordinary skill in the art would not know what the threshold rate is until that person conducted testing on the particular product to see at what rate of increase gaseous voids are prevented; once that testing is complete, however, the person need

not have referred to a "threshold rate" at all, but has instead, in some senses, discovered for herself that rate. If the threshold rate is just the rate of increase at which gaseous voids do not occur, then it is difficult to see how the '460 Patent is different from that of Smith; while Smith's patent did not speak of a threshold rate, any product lacking gaseous voids would (according to Sorensen's definition) have been made at below such a rate.[8]

## IV. Conclusion

The Court would adopt Homeland's proposed construction of the terms "threshold rate". The Court would adopt Sorensen's proposed construction of the terms "flow chambers", "thin wall", "exit/entrance positions", and "inscribed spheres".

---

[8]The Court would note that these worries of circularity do not appear to be cured by Homeland's construction, as discussed above.

-14-